# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 7960 | **DATE** | AUG 0 2 2004 |
| **CASE TITLE** | | Zurich Capital vs. Coglianese | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The Coglianese Defendants motion to dismiss ZCM's amended complaint (R. 50-1) is denied. The Vorisek's motion to dismiss the amended complaint (R. 35-1) is granted in part and denied in part. The Landmark Defendants' motion to dismiss the amended complaint (R. 45-1) is also granted in part and denied in part. The motions are denied with respect to Counts I, II, III, VIII, IX (in part), X, XIV (in part) and XVI. They are granted without prejudice with respect to Counts IV, V, VI, IX (in part) and XIV (in part). Plaintiffs have until 30 days after the Court rules on Defendant Oceanic's motion to dismiss (R. 34-1) to file a Second Amended Complaint.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** | |
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | AUG 0 2 2004 | | |
| | Notified counsel by telephone. | | date docketed | | |
| ✓ | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | docketing deputy initials | | 72 |
| | Copy to judge/magistrate judge. | | | | |
| | | | date mailed notice | | |
| TH ✓ | courtroom deputy's initials | U.S. DISTRICT COURT CLERK 2004 AUG -2 PM 12: 59 | | mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ZURICH CAPITAL MARKETS INC., et al., | ) ) ) |
| Plaintiffs, | ) ) No. 03 C 7960 |
| v. | ) ) |
| MICHAEL COGLIANESE, et al., | ) ) |
| Defendants. | ) |

**DOCKETED**

AUG 0 2 2004

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiffs commenced this action against Defendants alleging violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78j(b), Rule 10b-5 promulgated thereunder, the Investment Advisers Act of 1940, 15 U.S. §§80b-6 and 80b-15, and various state law claims. Plaintiffs base their claims on an alleged fraudulent investment scheme carried out by Defendants through a Bahamian mutual fund called M.J. Select Global Fund, Ltd.

Defendants[1] have moved to dismiss this securities fraud amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 9(b). They also seek to dismiss Plaintiffs' federal securities law claims for failure to comply with the mandates of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b). As discussed in detail below, the motions are granted in part and denied in part.

---

[1] This opinion addresses the motions to dismiss filed by the Vorisek Defendants, the Landmark Defendants and the Coglianese Defendants. The Court will address Oceanic's motion to dismiss for lack of jurisdiction in a separate opinion.

1

# BACKGROUND

Plaintiffs allege that Defendants engaged in a complex scheme to defraud Plaintiffs out of over $24 million . They contend that Defendants orchestrated an elaborate scheme to defraud ZCM and other investors out of millions of dollars by fraudulently inducing Plaintiffs to invest in highly risky and illiquid funds, while defrauding Plaintiffs into believing that they were actually investing in an extremely safe and liquid fund.

## I. The Parties

Plaintiff Zurich Capital Markets Inc. ("ZCM Inc.") is a Delaware corporation and was one of the world's largest custodians of hedge funds. (R. 15-1, Am. Compl. ¶ 21.) Plaintiff ZCM Matched Funding Corp., a Delaware corporation, ("ZCM MFC") is a wholly owned subsidiary of ZCM Inc., and specializes in the offering and sale of derivative instruments. (*Id.* ¶ 24.) Plaintiff ZCM Bermuda is a Bermuda corporation and an affiliate of ZCM Inc. that operates as a holding company for offshore investments. (*Id.* ¶ 22.) Plaintiff ZCM Asset Holding Company LLC ("ZCM Asset") is a Delaware corporation and a wholly owned subsidiary of ZCM Inc. that operates as a holding company for offshore investments. (*Id.* ¶ 23.) (collectively, the Plaintiffs are referred to as "ZCM.")

### A. The Coglianese Defendants

Defendant Michael Coglianese ("Coglianese") is a certified public accountant licensed under the Illinois Public Accounting Act. (*Id.* ¶ 25.) Defendant Michael Coglianese, CPA, PC is an Illinois professional corporation of which Coglianese is the President, Secretary and sole owner. (*Id.* ¶ 26.) Gina Coglianese, Coglianese's wife, is a bookkeeper. (*Id.* ¶ 31.)

Defendant CCS Financial Services, Inc. f/k/a Commodity Compliance Services, Inc.

2

("CCS Inc."), is an Illinois corporation controlled by Coglianese. Gina Coglianese is the President and sole record owner of CCS, Inc. (*Id.* ¶ 27.) Defendant Commodity Compliance Services, International, Ltd. ("CCS Int'l") is a Bahamian corporation organized by Coglianese, David Lunn and John Burrows. (*Id.* ¶ 28.) (collectively, MC C.P.A., CCS Inc., and CCS Int'l are referred to as the "Coglianese Accounting Entities").

Defendant GLC Services, Corp., a/k/a GLC Services, Inc. f/k/a CCS Financial Services, Inc. ("GLC Services") is an Illinois corporation engaged in the business of making investment referrals for a fee and selling modified Microsoft software products. (*Id.* ¶ 30.) Gina Coglianese is the President and Secretary of GLC Services. (*Id.* ¶ 31.) (collectively, the Court refers to these Defendants as the "Coglianese Defendants").

## B. The Oceanic Defendants

Defendant Oceanic is the administrator, registrar, and transfer agent of M.J. Select, with its principal place of business in the Bahamas. (*Id.* ¶ 32.) ZCM alleges that Oceanic transacted business through its agents in Illinois, and had systematic and continuous contacts with Illinois. (*Id.*)

Defendant Terah Rahming, a citizen of the Bahamas, was a director of M.J. Select and was employed by Oceanic as the Manager of the Funds Department. (*Id.* ¶ 33.) ZCM alleges that Rahming transacted business through her agents in Illinois and had systematic and continuous contacts with Illinois. (*Id.* ¶ 33.)

Defendant Kenneth Clowes, also a citizen of the Bahamas, was a Director of M.J. Select and the Chief Operating Officer of Oceanic. (*Id.* ¶ 34.) ZCM alleges that he transacted business through his agents in Illinois, and had systematic and continuous contacts with Illinois, in his role

3

as M.J. Select Director and Oceanic's Chief Operating Officer. (*Id.* ¶ 34.) (Collectively, Oceanic, Rahming and Clowes, are referred to as the "Oceanic Defendants.") (*Id.* ¶ 35.)

### C. The Vorisek Defendants

Defendant Vorisek & Company LLC is an Illinois limited liability company. (*Id.* ¶ 36.) Defendant Jeffrey Allen Vorisek, a certified public accountant licensed under the Illinois Public Accounting Act, founded Vorisek & Co. (Collectively, the Court refers to Vorisek and Vorisek & Co. as the "Vorisek Defendants"). (*Id.* ¶ 37.)

### D. The Landmark Defendants

Defendant Relms Limited ("Relms") is a Bahamian corporation owned by David Lunn, a citizen of the Bahamas and employee of the New World Group. (*Id.* ¶¶ 43, 44.) Lunn incorporated Relms on or about February 20, 1998. (*Id.*) Relms' directors were Ambassador Directors Limited, followed by Marcus Mahy and other officers or directors of Landmark Bermuda or its affiliated law firm. (*Id.*)

Defendant Millennium Fund I, Ltd. ("Millennium") is a foreign investment company organized by David Lunn under the laws of the Commonwealth of the Bahamas. From its February 27, 1998 incorporation until approximately April 2000, Millennium's principal place of business was that of its administrator, Landmark Monaco in Monte Carlo, Monaco. (*Id.* ¶ 40.) From April 2000 to at least November, 2003, its principal place of business was located in Bermuda.

Defendant Global Arbitrage Development Limited ("GAD") is a foreign investment company, originally organized under the laws of the British Virgin Islands in 1995, and re-organized in or about February 2001 under the laws of the Commonwealth of the Bahamas. (*Id.*

4

¶ 39.) Ambassador Directors Limited and then John Caseley and Ian Ledger served as its directors. (*Id.* ¶ 39.)

Defendant Landmark Management, S.A.M. ("Landmark Monaco") is the successor-in-interest to New World Trust Corporation, NWT Gestion S.A.M. ("New World Monaco"), and provides administrative services to various off-shore funds including GAD and Millennium. (*Id.* ¶ 45.) Defendant Landmark Trust (Bermuda) Limited ("Landmark Bermuda") provides administrative services to various off-shore funds including Millennium and Relms with its principal place of business in Bermuda. (*Id.* ¶ 48.)

Defendant Ambassador Directors Limited ("Ambassador") is a present or former director of GAD and Millennium. Defendants Caseley, Ledger and/or Mahy were its directors. (*Id.* ¶ 50.)

Defendant John Caseley is a citizen and resident of Monaco. (*Id.* ¶ 46.) He is a principal of Landmark Monaco and former employee of the New World Group. Caseley also serves as a director of GAD, and a present or former director, principal, agent or representative of Millennium. (*Id.* ¶ 46.)

Defendant Ian Ledger is a citizen and resident of Monaco. He serves as the President of Landmark Monaco, a director of GAD and a present or former director, principal, agent or representative of Millennium. (*Id.* ¶ 47.)

Defendant Marcus J. Mahy ("Mahy") is a citizen and resident of Bermuda. He is the President and Managing Director of Landmark Bermuda, and a director of Millennium and Relms. (*Id.* ¶ 49.)

(Collectively, Defendants Relms, Millennium, Mahy, Landmark Bermuda, Caseley,

5

Ambassador, Ledger and Landmark Monaco are the "Landmark Defendants.")

## II.   M.J. Select Global, Ltd. ("M.J. Select")

On February 3, 1994, Coglianese sent a letter to Lunn directing him to form M.J. Select as a multi-unit fund, with minimum capitalization, and to provide directors for M.J. Select. (¶ 81.) As a result, on approximately February 7, 1994, M.J. Select was incorporated, at the direction of Coglianese, under the International Business Companies Act of the Commonwealth of the Bahamas. (*Id.* ¶ 82.) Initially, two corporations served as M.J. Select's directors. (*Id.* ¶ 83.) In 1999, Rahming and Clowes served as M.J. Select's directors. (*Id.*)

Asset Allocation Fund, L.P. ("Asset Allocation") was M.J. Select's first and largest investor. (*Id.* ¶ 94.) Martin James Capital Management, Inc. ("Martin James") served as the general partner of Asset Allocation. (*Id.* ¶ 77.) Martin Allamian, a personal friend and business associate of Coglianese, was the sole owner and principal of Martin James. (*Id.* ¶ 77.) Martin James also invested two other partnerships under its control – M.J. Diversified Fund, L.P. ("MJD") and M.J. Financial Arbitrage, L.P. ("MJFA") – in M.J. Select. (*Id.* ¶ 94.)

Plaintiffs allege that Coglianese essentially directed and ran M.J. Select. They contend that M.J. Select's administrator and directors forwarded the majority of requests for fund information to Coglianese. Coglianese, in turn, sometimes instructed them how to respond to the request (including telling them not to respond) and sometimes responded himself. (*Id.* ¶ 95.) Furthermore, Coglianese approved all transfers of funds into and out of M.J. Select's bank account at Barclays Bank in the Bahamas. (*Id.* ¶ 96.) Similarly, he instructed Oceanic regarding the amount and timing of funds transfers, including accounting fees to CCS, management fees to Martin James, administrative fees to Oceanic, and investments made by M.J. Select in various

funds. (*Id.* ¶ 97.) In approximately March 1996, at Coglianese's direction, the Vorisek Defendants were retained, at Coglianese's direction, to audit M.J. Select. (*Id.* ¶¶ 76, 97.)

## A. The 1994 Offering Memorandum

Plaintiffs allege that Coglianese, on behalf of himself, the Coglianese Accounting Entities, Delta, GAD, and their officers, directors and administrators, together with Martin James, created the offering documents for M.J. Select, including the Offering Memoranda and the accompanying subscription and redemption documents. (*Id.* ¶ 84.) Specifically, on November 25, 1994, Coglianese and Martin James promulgated M.J. Select's Offering Memorandum (the "1994 Offering Memorandum"). (*Id.* ¶ 85.) In that document, they represented that: (1) Rawson Trust, as Administrator, Registrar and Transfer Agent would have responsibility for M.J. Select's daily business affairs; (2) M.J. Select's objective was to "achieve long term capital appreciation utilizing investment advisers that would trade security options, bonds, mutual funds, and related investments applying a 'market neutral' trading approach utilizing arbitrage trading strategies;" (3) Global Arbitrage Development, Ltd. would serve as M.J. Select's initial trading adviser; (4) M.J. Select's shares were "redeemable by Shareholders at the Net Asset value per Share as of the end of any month with 15 days prior written notice to the Fund;" and (5) Martin James would "select and allocate the Fund's trading assets among the trading advisers . . . and continuously monitor and analyze the performance and trading characteristics of current and prospective advisers." (*Id.* ¶ 85.)

Although the 1994 Offering Memorandum represented that M.J. Select initially would invest only in GAD and would engage in "market neutral" trading, ZCM alleges that Coglianese directed and caused M.J. Select to invest in other funds, including Delta, Millennium, Dominion,

Sovereign, VC Capital Advantage, and Worldmark One. (*Id.* ¶ 98.) Dominion, Sovereign and V.C. Advantage, according to ZCM, were Reg D and/or highly illiquid venture capital funds, not "market neutral" funds as represented in M.J. Select's Offering Memorandum. (*Id.* ¶ 99.) Plaintiffs allege that Coglianese directed and controlled the investments in M.J. Select in order to profit from the undisclosed management and incentive fee sharing agreements that he had negotiated. (*Id.* ¶ 101.)

### B. The Transfer Agency Agreement

In approximately March 1995, M.J. Select entered into an Administration, Registrar & Transfer Agency Agreement with New World. The parties supplemented that agreement on September 24, 1997. Collectively, these agreements are referred to as the "ART Agreement." (*Id.* ¶ 89.) Coglianese reviewed, negotiated and approved the terms of the ART agreement in Illinois. (*Id.*) Under the ART Agreement terms, New World agreed to act for the benefit of M.J. Select's investors as Administrator, Registrar and Transfer Agent. (*Id.* ¶ 90.) In this position, New World assumed various duties, including the redemption of shares upon request. With Coglianese's approval, Defendant Oceanic acquired New World and assumed all of its rights, duties and obligations under the ART Agreement and the Offering Memorandum, effective May 1, 1998. (*Id.* ¶ 92.)

### C. The 2000 Offering Memorandum

On approximately April 1, 2000, a subsequent version of M.J. Select's Offering Memorandum was issued (the "2000 Offering Memorandum"). (*Id.* ¶ 102.) The 2000 Offering Memorandum represented that M.J. Select's "shares are redeemable by shareholders at the net asset value per share as of the end of any Calendar Quarter with thirty (30) days prior written

notice to the Fund. Each shareholder shall be paid the amount of its redemption as soon as practicable following the effective date of the redemption." (*Id.* ¶ 102(a).) It further represented that Martin James would "continuously monitor and analyze the performance and trading characteristics" of M.J. Select's trading advisers, that M.J. Select's investment strategy was to engage in "market neutral" arbitrage techniques, and that M.J. Selects shareholders could obtain its net asset value on a daily basis. (*Id.* ¶ 102.) Plaintiffs allege that the statements in the 2000 Offering Memorandum were fraudulent because Coglianese controlled M.J. Select and its investment activities. They further allege that M.J. Select invested its capital in highly risky funds, rather than market neutral, safe and liquid funds as the M.J. Select documentation and Coglianese represented to M.J. Select's investors. Plaintiffs further allege that Coglianese carried out this scheme to defraud because New World, Rawson and Oceanic, as M.J. Select's administrators, gave Coglianese unfettered discretion in running M.J. Select, without properly supervising him.

**III.     ZCM Invests in M.J. Select, MJD and MJFA**

In May 2000, ZCM MFC agreed to provide Asset Allocation with leveraging for Asset Allocation's investments through a derivative instrument known as a call option transaction. (¶ 106.) Under the call option, Asset Allocation's return was linked to the performance of a "Reference Portfolio," or a group or basket of hedge funds selected by Martin James. ZCM MFC contributed $2 for every $1 contributed by Asset Allocation to the transaction. Upon termination of the transaction, if the Reference Portfolio's value exceeded the amount contributed by ZCM MFC (plus interest), Asset Allocation had the right to acquire the value of the Reference Portfolio in exchange for payment of ZCM MFC's contribution amount plus interest. (*Id.* ¶ 106.)

ZCM MFC agreed to accept an assignment of Asset Allocations' interests in various investments, including M.J. Select, MJD and MJFA, as an initial premium payment to acquire the option transaction only if Martin James, Oceanic (M.J. Select's administrator at the time) and an independent accountant of MJD and MJFA provided ZCM MFC with written confirmations that they would recognize these assignments and ZCM MFC as the sole owner of 100% of the interests in these entities formerly held by Asset Allocation. (*Id.* ¶¶ 109, 110.) In response, Coglianese arranged for Rahming to sign the confirmation on behalf of M.J. Select and Oceanic. Furthermore, on or about May 31, 2000, Coglianese, as President of CCS Financial Services, signed two assignment confirmation letters. (*Id.* ¶ 111.) He signed one confirmation letter for MJD and one for MJFA. Each of these letters provided that he would recognize ZCM MFC as the sole owner of 100% of the shares of MJD and MJFA that were invested under the name of Asset Allocation, as of June 1, 2000. (*Id.* Exs. 2 & 3.) Plaintiffs allege that Coglianese knew that the representations in these letters were false. They contend that Coglianese was not the President of CCS, that neither he nor CCS served as accountants for or had any oversight over MJD or MJFA, and that neither he nor CCS had any intention of insuring that ZCM was recognized and treated as the sole owner of the MJD and MJFA partnership interests. (*Id.* ¶ 112.)

Based on the assignment confirmations and the representations in the Offering Memoranda, ZCM MFC accepted an assignment of Asset Allocations interests in M.J. Select, MJD and MJFA and permitted the inclusion of these interests in the Reference Portfolio as Eligible Interests (the "Option Transaction"). (*Id.* ¶ 114.) ZCM MFC's investments in M.J. Select, both direct and through MJD and MJFA, constituted 32.55% of the Reference Portfolio. (*Id.* ¶ 114.)

10

ZCM maintained its interests in M.J. Select, MJD and MJFA and acquired additional interests based on the representations in the assignment confirmations and the representations made in the Offering Memoranda. (*Id.* ¶ 115.) ZCM MFC subsequently assigned its interests to ZCM Asset and ZCM Bermuda. (*Id.* ¶ 115.)

Plaintiffs allege that the Coglianese Defendants issued false financial statements to M.J. Select's shareholders. (*Id.* ¶ 137.) They further allege that the Vorisek Defendants issued fraudulent audited financial statements confirming the results on the financial statements from the inception of the fund through year-end 2000. (*Id.* ¶ 138.)

## IV.    ZCM's Requests for Redemption

The value of M.J. Select, MJD and MJFA substantially decreased in or before April 2001. In April 2001, ZCM issued requests to Martin James, as general partner of MJD and MJFA, to fully redeem its interests in MJD and MJFA. (*Id.* ¶ 122.) Martin James liquidated ZCM's interests in MJD and MJFA, but failed to transfer the proceeds to ZCM. (*Id.* ¶ 123.) Instead, ZCM alleges that Martin James transferred $7.45 million of the redemption proceeds to Asset Allocation's bank account, and paid approximately $5 million of these proceeds to Asset Allocation's limited partners, even though neither Martin James nor Asset Allocation had any right to these funds. (*Id.* ¶ 123.) ZCM further alleges that Coglianese and CCS Inc. falsely represented that they were independent accountants with supervisory powers over MJD and MJFA. Instead, ZCM alleges that Martin James exercised sole and exclusive control over ZCM's limited partnership interests in M.J. Select, MJD and MJFA, which enabled Martin James to convert them to its own use and the benefit of Asset Allocation and its shareholders. (*Id.* ¶ 126.)

ZCM Bermuda also contends that it instructed Defendant Oceanic, M.J. Select's administrator, to redeem its positions in various accounts in 2001. Oceanic failed to do so, and instead, according to ZCM, honored subsequently submitted redemption requests on behalf of Coglianese's and Martin James' friends, family and business associates. (*Id.* ¶¶ 127-130.)

## V.  The 2001 Complaint

In August 2001, ZCM commenced a lawsuit in the Northern District of Illinois premised on violations of federal securities laws. *See ZCM v. Martin James Allamian, et al.*, 01 C 6250 (N.D. Ill.)  Plaintiffs sued various entitled allegedly involved in the scheme, including Oceanic, M.J. Select, MJD, MJFA, Martin James, and Martin Allamian.  For a discussion of the facts in that case, as well as those in a companion case, *766347 Ontario Ltd., et al. v. Zurich Capital Markets, Inc., et al.*, (02 C 3223), *see 766347 Ontario Ltd. v. Zurich Capital Markets, Inc.*, 249 F.Supp.2d 974 (N.D. Ill. 2003), and *ZCM Asset Holding Co. (Bermuda) Ltd. v. Allamian*, 2002 WL 31870162, *1 (N.D. Ill. Dec. 20, 2002).

## ANALYSIS

On November 7, 2003, ZCM filed an eighteen count complaint against Defendants.  ZCM filed an Amended Complaint on December 1, 2003.  Counts I, II and IV allege securities fraud violations, in violation of Section 10b and Rule 10b-5 of the Exchange Act.  Count I is against the Coglianese Defendants, Count II is against Coglianese and Rahming, and Count IV is against Delta, GAD, Millennium and Sonic.  Counts III and V allege control person liability in violation of Section 20(a) of the Exchange Act.  In Count III, ZCM names Rahming, Clowes, and Oceanic as Defendants.  The allegations in Count V are against Defendants Lunn, Relms, Landmark Bermuda, Mahy, Landmark Monaco, Caseley, Ledger, and Ambassador.  Count VI alleges a

violation of Sections 206 and 215 of the Investment Advisers Act of 1940, 15 U.S.C. §§ 80b-6 and 80b-15, against Delta, GAD, Millennium, and Sonic.

Counts VII though XVIII are based on state law violations. Count VII alleges a violation of the Illinois Securities Law of 1953, 815 Ill. Comp. Stat. 5/12-13, against Defendant Oceanic. In Count VIII, ZCM alleges that Coglianese, CCS Inc., Gina Coglianese, Rahming, Clowes, and Oceanic committed common law fraud under Illinois law. Count IX alleges a conspiracy to defraud against all Defendants, and Count X alleges unjust enrichment against all Defendants. Count XI is based on conversion against Defendant Oceanic. In Count XII, ZCM alleges breach of the M.J. Select Subscription Agreement and Administration, Registrar & Transfer Agency Agreement against Defendant Oceanic. Count XIII alleges intentional interference with contract against Oceanic and Rahming, and Count XIV alleges breach of fiduciary duty against Defendants Coglianese, the Coglianese Accounting Entities, Oceanic, Rahming, Clowes, Lunn, Delta, Millennium, Mahy, GAD, Caseley, Ambassador Directors Limited, Ledger, Landmark Monaco, and Landmark Bermuda. ZCM alleges in Count XV that Defendants Coglianese, CCS Inc., CCS International, Vorisek and Vorisek & Co. committed accounting malpractice. Count XVI is premised on breach of contract against Coglianese, CCS Inc., Oceanic, Vorisek and Vorisek & Co.

Counts XVII and XVIII are based on Bahamian law. ZCM asserts both counts against Defendants Oceanic, Rahming, and Clowes.

The Coglianese Defendants have moved to dismiss the Amended Complaint in its entirety. The Vorisek Defendants have moved to dismiss the claims against them on the ground that ZCM does not have standing to assert them, the statute of limitations has run, ZCM cannot

13

assert state claims based on pre-investment reliance on the audit reports and Plaintiffs have failed to state a claim for unjust enrichment.[2] The Landmark Defendants also have moved to dismiss the complaint in its entirety.

## I.    Legal Standard

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of a complaint, not the merits of the case. *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989); *Majchrowski v. Norwest Mortgage, Inc.*, 6 F.Supp.2d 946, 952 (N.D. Ill. 1998). When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court considers "whether relief is possible under [any] set of facts that could be established consistent with [the] allegations." *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992).

The Court views all the facts alleged in the complaint, as well as any reasonable inferences drawn from those facts, in the light most favorable to Plaintiff. *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000). Dismissal of a complaint is appropriate only where it appears beyond doubt that under no set of facts would the plaintiff's allegations

---

[2] The Vorisek Defendants also attempt to move to dismiss Counts IX, XV and XVI by "incorporating by reference" the arguments they made in support of their motion to dismiss the complaint in *John H. Waldock, et al. V.M.J. Select Global, Ltd., et al*, No. 03 C 5293. ZCM, however, is not even a plaintiff in that case. Because the Vorisek Defendants' have not particularized their arguments on these counts to the allegations in the amended complaint before the Court in this case, the Court will not consider these arguments. They are essentially asking this Court to read their arguments in the *Waldock* case and figure out how to apply them to the allegations in ZCM's Amended Complaint. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ( "Judges are not like pigs, hunting for truffles buried" in the papers). The Vorisek Defendants' attempts to raise arguments to dismiss these counts for the first time in their reply brief are futile. Accordingly, the Vorisek Defendants' motion to dismiss Counts IX, XV and XVI is denied.

entitle him to relief. *Hishon v. King & Spalding*, 104 S. Ct. 2229 (1984). The Complaint, however, must allege that each element of a cause of action exists in order to withstand a motion to dismiss. *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). Furthermore, a plaintiff "cannot satisfy federal pleading requirements merely by attaching bare legal conclusions to narrated facts which fail to outline the bases of their claims." *Collins v.. Snyder*, No. 02 C 4493, 2002 WL 31749173, at *1 (N.D. IL. Dec. 2, 2002) (citations and quotations omitted).

## II.     The Statute of Limitations for Federal Securities Fraud Claims

The Coglianese Defendants and the Landmark Defendants seek to dismiss ZCM's federal securities claims[3] as barred by the statute of limitations. If a "plaintiff pleads facts that show its suit [is] barred by a statute of limitations, it may plead itself out of court under a Rule 12(b)(6) analysis." *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995) (affirming district court's dismissal of federal securities fraud claim on inquiry notice issue). "[B]ecause the question of whether a plaintiff had sufficient facts to place it on inquiry notice of a claim for securities fraud is one of fact, it may be 'inappropriate for resolution on a motion to dismiss under Rule 12(b)(6).'" *Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 669-70, (citing *Marks v. CDW Computer Centers, Inc.*, 122 F.3d 363, 367 (7th Cir. 1997)).

### A.     The Sarbanes-Oxley Act

On July 30, 2002, Congress enacted the Sarbanes-Oxley Act. Section 804 of the Sarbanes-Oxley Act provides, in pertinent part: "a private right of action that involves a claim of

---

[3] The Landmark Defendants also move to dismiss Plaintiffs' claim under the Investment Advisers Act of 1940, 15 U.S.C. §§ 80b-6 and 80b-15 (Count VI), under this same argument. Their motion based on the statute of limitations is denied for the same reasons addressed in detail in this section.

fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement

concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of

1934 (15 U.S.C. § 78c(a)(47)), may be brought not later than the earlier of –

>   (1) 2 years after the discovery of the facts constituting the violation; or

>   (2) 5 years after such violation."

28 U.S.C. § 1658 (emphasis added). The Coglianese Defendants and the Landmark Defendants

argue that Counts I, II and III are time barred by the two-year statute of limitations.

### B.   Accrual

Because it is often difficult for a plaintiff to know that he or she has been the victim of

securities fraud until years after the commission of the fraud, the statute of limitations for federal

securities fraud claims commences under the doctrine of "inquiry notice." *Fujisawa*

*Pharmaceutical Co., Ltd., v. Kapoor, Law*, 115 F.3d 1332, 1334 (7th Cir. 1997). Under inquiry

notice, the two-year "statute of limitations applicable to suits under Rule 10b-5 begins to run not

when the fraud occurs, and not when the fraud is discovered, but when (often between the date of

occurrence and the date of the discovery of the fraud) the plaintiff learns, or should have learned

through the exercise of ordinary diligence in the protection of one's legal rights, enough facts to

enable him by such further investigation as the facts would induce in a reasonable person to sue

within a year." *Id.*, citing *Law v. Medco Research, Inc.*, 113 F.3d 781, 785 (7th Cir. 1997). For

inquiry notice, more than "merely suspicious circumstances" must exist. *Fujisawa*, 115 F.3d at

1337. "The facts constituting such notice must be sufficiently probative of fraud – sufficiently

advanced beyond the stage of a mere suspicion, sufficiently confirmed or substantiated – not only

to incite the victim to investigate but also to enable him to tie up any loose ends and complete the

investigation in time to file a timely suit." *Id.* at 1335.

One important factor courts consider in determining when the statue of limitations begins is a party's ease of access to evidence that would trigger an appropriate inquiry. *See Marks v. CDW Computer Centers, Inc.*, 122 F.3d 363, 368 (7th Cir. 1997). Additionally, "[t]here must also be a suspicious circumstance to trigger a duty to exploit the access; an open door is not by itself a reason to enter a room.... *How* suspicious the circumstance need be to set the statute of limitations running ... will depend on how easy it is to obtain the necessary proof by a diligent investigation aimed at confirming or dispelling the suspicion." *Id.* at 1335 (emphasis in original).

The Coglianese Defendants and the Landmark Defendants argue that the ZCM Plaintiffs were on inquiry notice of their federal claims against them before November 7, 2001. Given that ZCM filed this suit on November 7, 2003, Defendants contend that the two year statute of limitations expired before ZCM filed this suit. Defendants rely heavily on ZCM's August 14, 2001 lawsuit against M.J. Select and others. They also cite ZCM's June 30, 2001 redemption request, ZCM's alleged creditor status as of June 30, 2001, the Coglianese July 2001 account and financial statements reflecting a write-down, the August 1, 2001 letter from Oceanic and Rahming, and the M.J. Select directors' September 9, 2001 liquidation petition as evidence of ZCM's inquiry notice.

Defendants argue that under *Whitlock Corp. v. Deloitte & Touche, L.L.P.*, 233 F.3d 1063, 1065 (7th Cir. 2000), the statute of limitations for the federal securities fraud claims commences at the same time with respect to all potential defendants. Because the August 14, 2001 lawsuit evidences Plaintiffs' knowledge of a claim against certain defendants, Defendants here argue that

Plaintiffs were on notice of their claim against all potential Defendants.

In *Whitlock*, the Seventh Circuit held that the statute of limitations for Illinois tort claims accrues on an "injury-by-injury" basis, not a "defendant-by-defendant" basis. The court noted the difference in cases where "the commencement of the limitations period with respect to one injury does not start the time with respect to a different injury caused by a different person through a different fraudulent means." *Id.* at 1066.

Defendants' reliance on *Whitlock* is misplaced. *Whitlock* addressed the accrual law regarding Illinois tort claims. Federal accrual laws, however, apply to federal securities fraud claims. *Ferguson v. Roberts*, 11 F.3d 696, 704 (7th Cir. 1993). Therefore, *Whitlock* is not determinative. Instead, as outlined above, Rule 10b-5 claims commence under the doctrine of inquiry notice. Contrary to the Landmark Defendants' assertion that all federal discovery rules are governed by the same concepts, the Seventh Circuit expressly noted in *Fujisawa* that "[i]n most fields [the discovery rule] refers to discovery just of the plaintiff's injury.... In the securities field it has a broader, a more generous meaning." *Fujisawa*, 115 F.3d at 1336-37 (citations omitted). It is possible under the inquiry notice doctrine for a plaintiff to have notice sufficiently probative of fraud with respect to some defendants, but not all. Accordingly, the statue of limitations for securities fraud can accrue on a defendant-by-defendant basis. *See Stephenson v. Deutsche Bank AG*, 282 F. Supp.2d 1032, 1067 (D. Minn. 2003); *In re Arm Fin'l Group, Inc. Sec. Litig.*, 2002 WL 1586397 at *3 (W.D. Ky. July 18, 2002); *Nappier v. PriceWaterhouseCoopers, LLP*, 227 F.Supp. 2d 263, 274 (D. N.J. 2002); *Great Neck Capital Appreciation Inv. P'ship v. PriceWaterhouseCoopers, LLP*, 137 F.Supp.2d 1114, 1126 (E.D. Wis. 2001). This defendant-by-defendant approach to accrual is particularly appropriate in a

18

securities fraud case given the short statute of limitations period and the particularity mandates of Rule 9(b) and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b) (the "PSLRA").

Given that the statute of limitations accrues on a defendant by defendant basis, the Court cannot conclude as a matter of law that ZCM knew of the facts constituting the alleged violations by Defendants more than two years before they filed this case. Defendants have failed to identify any allegations of misconduct by these Defendants that would have put Plaintiffs on inquiry notice prior to this time. The Court will not impute ZCM's notice as to the alleged involvement of other players to their notice of the participation of these Defendants. ZCM simply has not pled itself out of court.[4] Accordingly, Defendants' motions to dismiss Counts I, II, III, IV, V and VI as time barred are denied.

## III.  Securities Fraud Pleading Requirements

In order to state a claim for securities fraud under Section 10(b) and Rule 10b-5, Plaintiffs must allege that Defendants (1) made a false statement or omission; (2) of a material fact; (3) with scienter; (4) in connection with the purchase or sale of securities; (5) upon which Plaintiffs justifiably relied; and (6) the reliance proximately caused Plaintiffs' damages. *In re HealthCare Compare Corp.*, 75 F.3d 276, 280 (7th Cir. 1996). These allegations must comply with both Federal Rule of Civil Procedure 9(b) and the PSLRA.

### A.  Rule 9(b) and the PSLRA

Plaintiffs' allegations are sounded in fraud and thus the heightened pleading requirements of Rule 9(b) apply. Rule 9(b) requires that a plaintiff plead "the circumstances constituting fraud

---

[4] The Court need not address Plaintiffs' equitable estoppel arguments.

19

... with particularity." *In re HealthCare Compare Corp. Sec. Litig.*, 75 F.3d at 281. As the Seventh Circuit has explained, "this means the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990). These mandates require "the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999).

In addition to Rule 9(b), the strict pleading mandates of the PSLRA apply to Plaintiffs' complaint. In order to meet the PSLRA's dictates for a securities fraud claim, "the complaint shall specify each statement alleged to have been misleading, the reasons or reasons why the statement is misleading, and if an allegation regarding the state or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. §78u-4(b)(1). In addition, under the PSLRA, "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

### 1. Count I

In Count I, Plaintiffs allege that Coglianese made false statements and omissions in two May 31, 2000 assignment-recognition agreement letters that Coglianese signed in connection with the purchase and sale of MJD and MJFA limited partnership interests. Coglianese urges the Court to dismiss this count on the ground that the amended complaint fails to identify an affirmative material misrepresentation.

Plaintiffs allege that Coglianese falsely represented himself as President of CCS Inc.,

20

falsely represented that he and/or CCS Inc. was an independent accountant performing services for MJD, MJFA and Asset Allocation, failed to disclose that Martin James handled its own accounting for these entities without any independent oversight or supervision, falsely represented that Coglianese and CCS Inc. would recognize ZCM MFC as the sole owner of the MJD and MJFA securities it was purchasing from Asset Allocation, and failed to disclose that the Assignment Agreements issued by MJD and MJFA's purported accountant were for the express purpose of misleading ZCM as to the nature of Coglianese's relationship with Martin James, MJD, MJFA and Asset Allocation. (R. 15-1, Am. Compl. ¶ 155.)

Coglianese argues that the letters do not explicitly represent him as an independent accountant for MJFA, MJD or Asset Allocation. Plaintiffs allege, however, that they told Asset Allocation that they would only agree to accept an assignment of Asset Allocation's interest in these funds if ZCM received written confirmations from an independent accountant representing that they would recognize the various assignments and ZCM MFC as the sole owner of 100% of the interests in MJD and MJFA. (*Id.* ¶ 110.) In response to this request, Coglianese signed the assignment agreements as President, CCS Financial Services, Inc., Accountant, and sent them to Plaintiffs. (*Id.* ¶ 111. Exs. 2 & 3). These representations caused ZCM to believe that Coglianese was an independent accountant for Asset Allocation, MJD and MJFA. (*Id.* ¶¶ 114, 155b, 158.) Coglianese subsequently admitted that he never served as an independent account for these entities. (*Id.* ¶ 113.) These factual allegations provide sufficient particularity to support Plaintiffs' alleged misrepresentation that Coglianese falsely represented himself as an independent accountant for MJFA, MJD and Asset Allocation.

Coglianese further contends that Plaintiffs do not allege that CCS ever failed to recognize

21

ZCM MFC as the 100% owners of the interests in MJD and MJFA, as stated in the letters. In viewing the totality of the circumstances and ZCM's allegations regarding the impact of this representation in the context of the circumstances in which Coglianese made it, this literal accuracy argument fails. *See In re Neopharm, Inc. Sec. Litig.*, 02 C 2976, 2003 WL 262369 at *11 (N.D. Ill. Feb. 7, 2003).

Coglianese also contends that his admittedly false representation that he was the President of CCS Inc. was not material. Given the significance ZCM alleges it placed on an independent accountant for M.J. Select, the Court cannot make this materiality determination on a motion to dismiss. *See Marks v. CDW Computer Centers, Inc.*, 122 F.3d 363, 370 (7th Cir. 1997) ("[a] materiality determination is rarely appropriate at the summary judgment stage, let alone on a motion to dismiss.").

### 2. Count II

Regarding Count II, Coglianese argues that ZCM has failed to allege particular facts that would make him liable for the alleged misstatements and omissions of the 1994 and 2000 Offering Memoranda. Regarding the 1994 offering documents, Coglianese contends that ZCM does not allege that it received or relied upon them. To the contrary, ZCM alleges that Coglianese and Martin James created the M.J. Select offering documents, including the Offering Memorandum and the accompanying subscription and redemption documents. (R. 15-1, Am. Compl. ¶ 84.) They also detail the alleged misrepresentations and omissions in these documents, including that M.J. Select invested in highly illiquid funds, directly contrary to the Offering Memorandum's representations. (*Id.* ¶¶ 98-99.) ZCM further alleges that it received the offering *memoranda* and relied on the representations in these documents. (*Id.* ¶¶ 114, 181 & 183.)

22

Based on the allegations in the complaint, it is clear that ZCM's allegations refer to both the 1994 and 2000 offering memoranda. Coglianese's argument that ZCM did not invest in M.J. Select until May 31, 2000, thus any misrepresentations in the 1994 Memorandum cannot serve as the basis for his liability is belied by the allegations in the complaint. At this stage of the litigation, ZCM's allegations regarding the 1994 Offering Memorandum satisfy the particularity mandates of the PSLRA and Rule 9(b).

Coglianese further contends that the complaint fails to allege particular facts that would make him liable for the alleged misrepresentations in M.J. Select's 2000 Memorandum. It alleges that Coglianese made various false and misleading statements through the M.J. Select Offering Memorandum. (*Id.* ¶¶ 170b, 170c, 170d.) These allegations sufficiently allege Coglianese's responsibility for the statements. Furthermore, the Amended Complaint alleges with sufficient particularity when and how Coglianese had knowledge of the truth. (*Id.* ¶¶ 95-96, 98-99, 101, 175-177.)

### 3. The Coglianese Defendants' Duty to Disclose

Defendant Coglianese contends that ZCM's allegations regarding fraudulent omissions fail because ZCM does not allege that Coglianese had a duty to disclose the information he allegedly omitted. Coglianese relies on *Chiarella v. United States*, 445 U.S. 222, 228, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980), in support of his position. In *Chiarella*, the Supreme Court held that "silence in connection with the purchase or sale of securities may operate as a fraud actionable under § 10(b)" when there is "a duty to disclose arising from a relationship of trust and confidence between parties to a transaction." *Id.* Thus, Plaintiffs must allege that Coglianese had a duty to disclose the omitted information. *Basic Inc. v. Levinson*, 485 U.S. 224,

239, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). "One way such a duty can arise is if omitting particular facts makes some existing statement misleading." *Anderson v. Abbott Laboratories.* 140 F.Supp.2d 894, 903 (N.D. Ill. 2001) (citing 17 C.F.R. § 240.10b-5). Indeed, "[i]f one speaks, he must speak the whole truth." *Stransky*, 51 F.3d 1329, 1331 (7th Cir. 1995).

ZCM alleges that Coglianese made representations to ZCM in the Assignment Agreements and in the Offering Memoranda, and therefore had a duty to disclose the omitted information because such information was necessary to make Coglianese's statements not misleading. At this stage, these allegations are sufficient to survive a motion to dismiss. *See Friedman v. Rayovac Corp.*, 295 F.Supp.2d 957, 988 (N.D. Ill. 2003).

### 4. Count IV

In Count IV, Plaintiffs allege that Delta, GAD, Millennium and Sonic created and made false and misleading statements and omissions of material fact in connection with the purchase and sale of M.J. Select securities. Millennium and GAD argue that the Court should dismiss Count IV against it because ZCM has failed to allege any misrepresentation or omission attributable to it. They contend that ZCM has not alleged any facts showing that Millennium and/or GAD prepared or disseminated the M.J. Select offering materials.

ZCM premised Millennium's and GAD's liability under Count IV on an agency theory. ZCM alleges that Coglianese acted as Millennium's agent and GAD's agent, and therefore Millennium and GAD, as the principals, face Section 10(b) and Rule 10b-5 liability.

The parties do not challenge that a principal may be liable under Rule 10b-5 for

misrepresentations of its agent.[5]  Instead, Millennium and GAD argue that ZCM has not

sufficiently alleged an agency relationship between Coglianese and Millennium or GAD.  They

contend that ZCM has failed to allege any facts to support the contention that Millennium or

GAD acted as an investment adviser or trading adviser to M.J. Select.  They further contend that

ZCM has not alleged that Millennium or GAD had the ability to control Coglianese regarding his

actions relating to M.J. Select.

ZCM alleges that Coglianese served as the agent of both Millennium and GAD.  (R. 15-1,

Am. Compl. ¶ 51.)  Plaintiffs allege that these Defendants have admitted that Coglianese served

in this capacity, and that Coglianese has admitted to being their agent.  (*Id.* ¶ 51, 68.)  ZCM

further alleges that Millennium and GAD retained Coglianese to act as their agent/investment

adviser "whereby [Coglianese] agreed to perform due diligence on their behalf and to refer them

to new investment opportunities."  (*Id.* ¶ 60.)  The mere use of the label "agent" does not

sufficiently establish an agency relationship in order to impose liability under Rule 9(b) or the

---

[5]  Although Millennium has not challenged the viability of an agency theory of liability
under Rule 10b-5, the Court notes that courts disagree on whether such a theory remains viable
after *Central Bank of Denver, N.A. v. First Interstate Bank*, 511 U.S. 164, 114 S.Ct. 1439, 128
L.Ed.2d 119 (1994).  *Compare Krieger v. Gast*, No. 98 C 3182, 1998 WL 677161, at *9 (N.D.
Ill. Sept. 22, 1998) (noting "strong reservations about the use of allegations of agency to avoid
the result of *Central Bank*"); *Warden v. Crown Am. Realty Trust*, No. Civ. A. 96-25J, 1999 WL
476996, at *4 (W.D. Pa. July 6, 1999) (rejecting agency theory of liability), *with Suez Equity
Investors, L.P. v. The Toronto-Dominion Bank*, 250 F.3d 87, 101 (2nd Cir. 2001); *Angel
Investments, L.L.C. v. Purizer Corp.*, 2002 WL 23822 (N.D. Ill. Jan. 7, 2002),(agency theory of
liability remains viable after *Central Bank*); *In re Centennial Techs. Litig.*, 52 F.Supp.2d 178,
185-86 (D.Mass. 1999) (same).  This Court agrees with those courts holding that agency liability
survives *Central Bank*.  As Judge Crabb has noted "construing *Central Bank* to preclude agency
liability would essentially exempt corporations from liability under Rule 10b-5, because such
entities can act only through their agents.  The Supreme Court could not have intended such a
result."  *MBI Acquisition Partners, L.P. v. Chronicle Publishing Co.*, 301 F.Supp.2d 873, *890
(W.D. Wis. 2002).

PSLRA where the agency relationship and the fraud claims are intertwined. A plaintiff must plead facts showing the existence and scope of the agency relationship in order to establish primary liability under Section 10(b), especially where, as here, the agency relationship is not based on the classic corporation/employee model where a corporation can only acts through its employees and agents. *See Lachmund v. ADM Investor Services, Inc.*, 191 F.3d 777, 783 (7th Cir. 1999). Such allegations are essential to imputing Coglianese's conduct to Millennium and GAD, and establishing Millennium's and GAD's primary liability for the alleged acts of Coglianese. *See Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250-52 (D. Md. 2000) (general allegations of agency insufficient because "fail to indicate with particularity the factual predicate for the agency relationship"). ZCM's conclusory agency allegations fail to meet this standard.

### 5. Millennium's Duty to Disclose

Millennium argues that ZCM has failed to allege that it had a duty to disclose. ZCM bases its duty to disclose arguments on the alleged agency relationship between Millennium and Coglianese. Because ZCM has failed to sufficiently allege such a relationship, they also cannot establish a duty to disclose.

### B. Scienter Allegations

Under Section 10(b), scienter is either "the intent to deceive, manipulate or defraud," *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), or the "reckless disregard of the truth" of the material asserted. *S.E.C. v. Jakubowski*, 150 F.3d 675, 681 (7th Cir. 1998). "Reckless conduct is, at least, conduct which is highly unreasonable and which represents an extreme departure from standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware

26

of it." *Rehm v. Eagle Fin. Corp.*, 954 F.Supp. 1246, 1255 (N.D. Ill.1997)(quotations omitted).

Under the PSLRA, Plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). As the Court has previously held, a plaintiff may use "motive and opportunity" or "circumstantial evidence" to establish scienter under the PSLRA, as long as the allegations support a strong inference that the defendants acted recklessly or knowingly. *766347 Ontario Ltd. v. Zurich Capital Markets, Inc.*, 249 F.Supp.2d 974, 987 (N.D. Ill. 2003). *See also Chu v. Sabratek Corp.*, 100 F.Supp.2d 815, 823 (N.D. Ill. 2000). Plaintiffs must also make specific allegations regarding each Defendant's scienter. *Johnson v. Tellabs, Inc.*, 303 F.Supp.2d 941, 953 (N.D. Ill. 2004).

Michael Coglianese contends that ZCM has failed to plead particularized facts giving rise to a strong inference that he possessed an intent to defraud, deceive or manipulate in Counts I and II.[6] In addition, Millennium and GAD argue that ZCM has failed to plead scienter with particularity in Count IV. Each argument is addressed below.

### 1.    Count I

In Count I, ZCM has alleged that Coglianese falsely represented that he was the President of CCS Inc., and an independent accountant for MJD, MJFA and Asset Allocation. ZCM alleges that Coglianese admitted under oath that he did not serve as the President of CCS Inc. and that CCS had never served as an accountant for MJD, MJFA or Asset Allocation. Plaintiffs allege that Coglianese admitted he made these false representations to Plaintiffs at the request of Martin

---

[6] Coglianese argues that the allegations fail to meet the heightened pleading requirements of Fed.R.Civ.P. 9(b). Contrary to the PSLRA, however, Rule 9(b) does "not require 'particularity' with respect to the defendants' mental state." *DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990).

Allamian, who asked Coglianese to make these false statements in order to induce ZCM to purchase the MJD and MJFA limited partnership interests. (R. 15-1, Am. Compl. ¶ 157.) Plaintiffs further allege that Coglianese knew that neither he, MC C.P.A. nor CCS Inc. served as the accountant for MJD, MJFA or Asset Allocation, yet the May letters were presented to ZCM as those of an independent accountant. (*Id.* ¶ 158.) ZCM also alleges that Coglianese has admitted that Martin Allamian told Coglianese to sign the false letters "as a personal favor to him" because ZCM MFC would not enter into the Option Transaction Agreement or purchase the securities without the letters. (*Id.* ¶ 159.)

Additionally, ZCM alleges that Coglianese had a motive to defraud Plaintiffs. Namely, ZCM alleges that Coglianese knew that by inducing ZCM MFC to enter into the Option Transaction Agreement and purchase the limited partnership interests, Asset Allocation would triple its investment in M.J. Select. Given his fee sharing and referral arrangements, this increased investment enabled Coglianese and his accounting firm to realize substantial monetary gains. (*Id.* ¶¶ 113, 160.)

These allegations are sufficient to support a strong inference that Coglianese acted recklessly or knowingly. The scienter allegations in Count I therefore stand.

### 2. Count II

With respect to Coglianese's scienter in Count II, ZCM asserts that Coglianese made false and misleading statements in the M.J. Select Offering Memorandum and in connection with the purchase and sale of securities issued by M.J. Select. Contrary to the representations in the Offering Memorandum, Plaintiffs allege that Coglianese knew that M.J. Select's assets were invested in illiquid funds and placed in high risk investments. (*Id.* ¶ 175.) ZCM alleges that

Coglianese knew or recklessly disregarded the falsity of the misrepresentations because Coglianese had access to the relevant books and records, he personally selected certain high risk investments for M.J. Select, he instructed Oceanic and Barclays Bank to wire funds out of M.J. Selects's bank account to the highly illiquid and risky funds, and he negotiated the fee sharing arrangements with the Southridge Entities on behalf of several related entities. (*Id.* ¶¶ 98-100, 176.)

ZCM also alleges that Coglianese's motivation to defraud ZCM arose from the additional fees he could make through increased investments in M.J. Select. (*Id.* ¶ 177.) His fee sharing arrangements further increased his profits. (*Id.* ¶ 177.) When viewed in their entirety, ZCM's allegations regarding Coglianese's scienter meet the PSLRA mandates.

### 3.    Count IV

Millennium and GAD also dispute the sufficiency of ZCM's allegations in Count IV regarding scienter. The Court agrees.

As discussed above, Count IV is premised on an agency theory of liability. Because ZCM has failed to allege facts demonstrating the existence and scope of the agency relationship between Coglianese and Millennium or Coglianese and GAD, they have also failed to provide a basis to impute scienter under this theory. Furthermore, "[k]nowledge and actions of a corporation's employees and agents are generally imputed to the corporation where the acts are performed on behalf of the corporation and are within the scope of their authority." *UCAR Intern., Inc. v. Union Carbide Corp.*, 2004 WL 137073, at *13 (S.D.N.Y. Jan. 26, 2004) (citations omitted). ZCM's allegations fail to plead with the requisite particularity a basis to impute Coglianese's scienter to Millennium or GAD. Count IV is accordingly dismissed without

prejudice.

## C.     Loss Causation

The Coglianese Defendants argue that the Court should dismiss Counts I and II because Plaintiffs have failed to plead loss causation. "To plead loss causation, the plaintiff must allege that it was the very facts about which the defendant lied which caused its injuries." *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir. 1997). "[T]he requirement is straightforward: The plaintiff must allege that is was in fact injured by the misstatement or omission of which it complains." *Id.* at 649.

In Count I, Plaintiffs allege that Coglianese falsely represented that he was the President of CCS, that CCS served as the independent accountant for MJD and MJFA with oversight authority and that Coglianese and CCS would recognize ZCM as the sole owner of MJD and MJFA. (R. 15-1, Am. Compl. ¶¶ 110-112.) Plaintiffs further allege that the complete lack of oversight by an independent accountant allowed Martin James to defraud ZCM by sending it falsified financial statements that failed to disclose Martin James' redemption of MJD's and MJFA's underlying investments, and allowed his subsequent transfer of the redemption proceeds out of MJD and MJFA and into Asset Allocation. (*Id.* ¶¶ 121-126, 130, 143, 161, 167.) ZCM also alleges that Martin James, with the knowledge and cooperation of Coglianese, failed to honor Coglianese and CCS's representations that they would recognize ZCM as the sole owner of MJD and MFA. Rather, he instructed Oceanic *not* to honor ZCM's redemption requests and instead to honor subsequently submitted redemption requests on behalf of Coglianese's and Martin James' friends, family and business associates. (*Id.* ¶ 130.) In other words, ZCM alleges that Coglianese's misrepresentation regarding ZCM's ownership caused ZCM's injury by

30

allowing Martin James to disregard ZCM's redemption requests. (*Id.* ¶ 130). These particularized allegations and the reasonable inferences drawn from them sufficiently allege loss causation at this stage. *See Caremark*, 113 F.3d at 649; *Ventre v. Datronic Rental Corp.*, 1996 WL 681279 at *12 (N.D. Ill. Nov. 21, 1996) (loss causation sufficiently pled where defendant's false statements concealed quality of management and low probability of anticipated cash distributions).

Regarding Count II, the Coglianese Defendants argue that Oceanic's failure to honor ZCM's redemption requests caused Plaintiffs' loss in their M.J. Select investment. Plaintiffs allege that Coglianese made false statements regarding his and CCS's role as an independent accountant. ZCM alleges that Coglianese made specific misrepresentations about M.J. Select's investment objectives and investment types. (R. 15-1, Am. Compl. ¶170.) They also contend that Coglianese failed to disclose the existence of a discriminatory redemption policy through which insider shareholders and their affiliates received accelerated and preferential redemptions of their M.J. Select shares, that he had control over the transfer of funds, and that he stood to profit from certain investments. (*Id.* ¶ 170.) Plaintiffs allege that their loss in M.J. Select resulted from the very risks Coglianese failed to represent and/or falsely represented – the degree of risk associated with the investment, M.J. Select's investments and objectives, and its redemption policy. (*Id.* ¶¶ 170, 181, 184.) These allegations sufficiently allege loss causation in Count II.

## IV.    Control Person Liability – Counts III and V

In Count III, Plaintiffs allege control person liability pursuant to Section 20(a) of the Exchange Act against Michael Coglianese, Rahming, Clowes and Oceanic. In Count V,

Plaintiffs allege a Section 20(a) violation against Defendants Lunn, Relms, Landmark Bermuda, Mahy, Landmark Monaco, Caseley, Ledger and Ambassador. Section 20(a) provides: "Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a).

In order to state a Section 20(a) claim, ZCM must allege the following: (1) a primary securities violation; (2) each of the individual defendants exercised general control over the operations of M.J. Select; and (3) each of the individual defendants "possessed the power or ability to control the specific transaction or activity upon which the primary violation was predicated, whether or not that power was exercised." *Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 881 (7th Cir. 1992). Because Plaintiffs' Section 20(a) claim is one of fraud, Plaintiffs must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Johnson*, 303 F.Supp.2d at 969 (N.D. Ill. 2004). Plaintiffs, however, need not meet the heightened pleading requirements of the PSLRA to establish control person liability.

### A. Michael Coglianese

Coglianese argues that the Court should dismiss Count III for failure to state a claim because ZCM has failed to allege a predicate securities fraud violation. The control person claim against Coglianese, however, is predicated on the primary securities fraud allegation by M.J. Select as alleged in Count III, not on the alleged violations by the Coglianese Defendants. Coglianese does not challenge the sufficiency of the securities fraud allegations in Count III.

Accordingly, this argument fails.

Coglianese also argues that Plaintiffs have failed to plead with the requisite particularity that he had actual control over the M.J. entities. In order to allege "general control" under Section 20(a), Plaintiffs must plead that Coglianese "actually participated in, that is, exercised control over, the operations of [the entity] in general." *Harrison*, 79 F.3d at 614-15. Plaintiffs allege that Coglianese created M.J. Select and agreed to "set up the fund and help manage the day-to-day affairs of the fund." (R. 15-1, Am. Compl. ¶¶ 78, 79.) He directed the formation of M.J. Select, and it was incorporated according to his instructions. (*Id.* ¶¶ 81, 82.) They further assert that Coglianese selected M.J. Select's administrator and Board of Directors, created and promulgated its offering documents, and negotiated and approved the Administration, Registrar & Transfer Agency Agreement. (*Id.* ¶¶ 81-89.) ZCM asserts that M.J. Select's administrator and directors forwarded most information requests about the fund to Coglianese who occasionally instructed them how to respond. (*Id.* ¶ 95.) On numerous occasions, Coglianese instructed them not to respond to the inquiries. (*Id.*) Coglianese also approved the transfer of funds into and out of M.J. Select's account, determined the auditor for M.J. Select, and directed M.J. Select to invest in specific funds in contradiction to the representations in the offering documents. (*Id.* ¶¶ 96-99, 101-102.) Plaintiffs allege that Coglianese prepared and issued account statements to M.J. Select's shareholders. (*Id.* ¶¶ 137-39.) Coglianese also, according to the Amended Complaint, approved and directed M.J. Select's redemption payments, including early payments. (*Id.* ¶¶ 141-143.) These allegations are sufficient to allege that Coglianese had general control over M.J. Select's operations.

For the first time in his reply, Coglianese argues that Plaintiffs have failed to plead that

Coglianese had the power or ability to control the transaction at issue. Arguments raised for the first time in a reply, however, are waived. *Luellen v. City of East Chicago*, 350 F.3d 604, 612 n.12 (7th Cir. 2003). Accordingly, Coglianese has waived this argument.

### B.    The Landmark Defendants

In Count V, Plaintiffs allege that Defendants Relms, Landmark Monaco, Landmark Bermuda, Ambassador, Caseley, Ledger and Mahy[7] are liable as control persons of Millennium, and that Defendants Landmark, Monaco, Ambassador, Caseley and Ledger are also liable as control persons of GAD. These Defendants argue that Plaintiffs have failed to plead any of the elements of control person liability.

First, because Count V fails to allege a primary violation against Millennium or GAD, ZCM has failed to meet one of the essential elements of Section 20(a) liability.

Second, Defendants argue that Plaintiffs allegations of general control fail because they are wholly conclusory and do nothing more than simply recite the applicable Section 20(a) standard. They argue that Plaintiffs have not alleged that Defendants "actually participated in, that is, exercised control over, the operations of [the entity] in general." Defendants correctly note that Plaintiffs must do more than merely allege a defendant's title or statute in order to plead control. *See Johnson*, 262 F.Supp.2d at 958-59.

ZCM alleges that Defendant Relms was a control person of Millennium through its role as a creator and majority owner of Millennium, its selection of the entire board of directors, its selection of the administrator and registered agent for Millennium, its role as investment manager for Millennium, and its participation in the day-to-day management and operations of

---

[7] Count V is also asserted against Defendant Lunn, but he has not appeared in this case.

Millennium. (R. 15-1, Am. Compl. ¶¶ 229, 230.) These allegations give more than Relms' title. They are sufficient to allege Relms' general control over Millennium.

ZCM alleges that Defendants Landmark Monaco and Landmark Bermuda had general control over Millennium because they served as the administrator, registrar and transfer agent of Millennium. (*Id.* ¶ 233.) Although ZCM contends that it has detailed the duties and activities of administrators, registrars and transfer agents which would rise to the level of general control, their contention is not supported by the allegations in the amended complaint.[8] Without more, these general allegations of Landmark Monaco's and Landmark Bermuda's titles do not suffice to allege general control. Accordingly, their motion to dismiss is granted without prejudice.

Similarly, ZCM only alleges that Defendants Ambassador, Caseley and Ledger had general control over GAD and Millennium because they were directors of each entity. (*Id.* ¶¶ 236, 237.) Defendant Mahy, according to ZCM's allegations, had general control because he was a director of Millennium. (*Id.* ¶ 237.) These allegations are insufficient under Rule 9(b) to allege general control, and Defendants Ambassador, Caseley, Ledger, and Mahy's motion to dismiss Count V is granted without prejudice.

Third, the Landmark Defendants also challenge ZCM's allegations of specific control because they have not alleged that each control person possessed the power or ability to control the specific transaction or activity upon which the primary violation was predicated. ZCM has sufficiently alleged Relms's specific control over the allegedly false statements in the M.J. Select offering documents. (*Id.* ¶¶ 225, 230, 231.) As with the allegations of general control, ZCM has

---

[8] ZCM has alleged the duties of the administrator, registrar and transfer agent for M.J. Select, but not for Millennium or GAD.

not particularized the allegations of specific control with respect to Defendants Landmark Monaco, Landmark Bermuda, Ambassador, Caseley, Ledger, and Mahy. This serves as an independent basis to dismiss Count V without prejudice as to these Defendants.

## V.   Count VI – The Investment Advisers Act of 1940

ZCM brings Count VI against Defendants Delta, GAD, Millennium and Sonic pursuant to Sections 206 and 215 of the Investment Advisers Act of 1940 (the "Act"), 15 U.S.C. §§ 80b-6 and 80b-15. They have sued them both derivatively, on behalf of M.J. Select, and independently as third-party beneficiaries of each of the investment advisory contracts between M.J. Select and Delta, GAD, Millennium, and Sonic.

Section 206 of the Act prohibits investment advisers from employing "any device, scheme, or artifice to defraud" a client or prospective client, from engaging in "any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client," and from engaging in "any act, practice, or course of business which is fraudulent, deceptive, or manipulative." 15 U.S.C. § 80b-6. Section 215 of the Act provides that contracts that violate the Act are void. 15 U.S.C. § 80b-15.

Plaintiffs allege that Delta, GAD, Millennium, and Sonic each served as an investment adviser to M.J. Select, Plaintiffs and the other M.J. Select investors. They allege that investment advisory contracts existed between M.J. Select and Delta, GAD, Millennium, and Sonic. Plaintiffs assert that they were the intended third-party beneficiaries of these investment advisory contracts. Plaintiffs contend that Defendants Delta, GAD, Millennium, and Sonic breached their fiduciary duties, as set forth in Section 206 of the Act, to M.J. Select and Plaintiffs. As a result, Plaintiffs seek to rescind the investment advisory contracts, and to recover any fees paid to these

Defendants in connection with the agreements, on behalf of themselves and third-party beneficiaries or, in the alternative, on behalf of M.J. Select.

GAD and Millennium seek to dismiss this count on the ground that it is time barred, the Court does not have subject matter jurisdiction over it, ZCM does not have standing to bring it and ZCM has failed to state a claim. The Court will address each argument below.

### A.    Subject Matter Jurisdiction

The Court will turn to the issue of subject matter jurisdiction over this claim first because it is "axiomatic that a federal court must assure itself that it possesses jurisdiction over the subject matter of an action before it can proceed to take any action respecting the merits of the action." *Cook v. Winfrey*, 141 F.3d 322, 325 (7th Cir. 1998). Defendants argue that the Court lacks subject matter jurisdiction over the Investment Advisers Act claim because M.J. Select and Millennium are both Bahamian entities, and the Court does not have subject matter jurisdiction to grant recession of a contract between foreign parties.

Federal courts have subject matter jurisdiction over securities fraud claims involving foreign transactions where the transaction in question complies with either the "conduct" or the "effects" approach.[9] *Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 665 (7th Cir. 1998). *See Tamari v. Bache & Co.*, 730 F.2d 1103, 1107-08 (7th Cir. 1984). "These two approaches . . . focus on whether the activity in question has had a sufficient impact on or relation to the United States, its markets or its citizens to justify American regulation of the situation. Specifically, one approach focuses on the domestic conduct in question, and the other focuses on the domestic

---

[9] Although most courts refer to the conduct test or the effects test, the Seventh Circuit has noted that "we think that 'test' is too inflexible a term to characterize the present state of the case law.'" *Kauthar*, 149 F.3d at 665. Instead, the Seventh Circuit refers to them as "approaches." *Id.*

effects resulting from the transaction at issue." *Kauthar*, 149 F.3d at 665.

Under the effects approach, "courts have looked to whether conduct occurring in foreign countries had caused foreseeable and substantial harm to interests in the United States." *Tamari*, 730 F.2d at 1108. The conduct analytical approach focuses on actions occurring in this country as they relate to the alleged scheme to defraud. *Id.* (citations and quotations omitted). The Seventh Circuit has articulated the standard for evaluating the conduct analysis: "federal courts have jurisdiction over an alleged violation of the antifraud provisions of the securities laws when the conduct occurring in the United States directly causes the plaintiff's alleged loss in that the conduct forms a substantial part of the alleged fraud and is material to its success. This conduct must be more than merely preparatory in nature; however, we do not go so far as to require that the conduct occurring domestically must itself satisfy the elements of a securities violation."[10] *Kauthar*, 149 F.3d at 667.

In this case, ZCM alleges that Defendants breached their fiduciary duties owed to M.J. Select and Plaintiffs through fraud. Part of that fraud consists of the allegedly fraudulent representations in the M.J. Select offering documents. Plaintiffs allege that Coglianese and/or

---

[10] The Courts of Appeals have established different approaches regarding the extent of conduct in the United States that will trigger subject matter jurisdiction over foreign securities fraud claims. *Compare Bersch v. Drexel Firestone Inc.*, 519 F.2d at 987, 993 (2nd Cir. 1975) (conduct in United States must amount to more than just actions which are "merely preparatory,"and not insubstantial when compared with the conduct committed abroad, and the direct cause of the losses sustained by the foreign investors), and *Robinson v. TCI/US West Communications Inc.*, 117 F.3d 900, 905 (5th Cir. 1997), *with SEC v. Kasser*, 548 F.2d 109, 114 (3rd Cir.), *cert. denied*, 431 U.S. 938, 97 S. Ct. 2649, 53 L.Ed.2d 255 (1977) (jurisdiction where "at least some activity designed to further a fraudulent scheme occurs within this country"); *Kauthar*, 149 F.3d at 666-67; *Travis v. Anthes Imperial Ltd.*, 473 F.2d 515, 524 (8th Cir. 1973) (requiring "substantial acts in furtherance of the fraud committed or in the United States"); and *Grunenthal GmbH v. Hotz*, 712 F.2d 421, 425 (9th Cir. 1983).

Martin James prepared those fraudulent M.J. Select offering documents in Illinois, and that M.J. Select's shares were offered and sold in the United States by the Coglianese Defendants and Martin James to United States investors. They further allege that the fraudulent documents were sent to ZCM MFC in New York in order to induce ZCM MFC to accept shares in M.J. Select. ZCM alleges that Coglianese, a citizen of Illinois, acted as the agent of the Landmark Defendants in carrying out the fraud at issue. They further assert that the Landmark Defendants conspired with Illinois residents, including the Coglianese Defendants and Martin James, to carry out the fraud. In addition, Plaintiffs allege that the Landmark Defendants failed to disclose the extent of Illinois resident Coglianese's control and involvement over the investments of M.J. Select. In essence, Plaintiffs allege that Coglianese played a significant part in orchestrating the fraud from the United States and that the fraudulent documents were prepared here. These allegations give this Court subject matter jurisdiction over Count VI. *Cromer Finance Ltd. v. Berger*, 137 F.Supp.2d 452, 480-81 (S.D.N.Y. 2001). Contrary to Defendants' reliance on *Mak v. Wocom Commodities Ltd.*, 112 F.3d 287 (7th Cir. 1997), Plaintiffs' allegations here involve significantly more contact with the United States.

### B. The Statue of Limitations

Defendants argue that Count VI is time barred for the same reasons ZCM's securities fraud claims are time barred. For the reasons addressed in detail above regarding ZCM's securities fraud claims, the Court cannot conclude that ZCM's Investment Advisers Act claim is time barred at this stage of the litigation.

### C. Standing

The Landmark Defendants argue that Plaintiff ZCM lacks standing to bring a claim under

39

the Act because ZCM was not the actual party to the contracts at issue. Defendants contend that an individual fund investor, such as ZCM, cannot seek recession of an investment adviser's contract to which the fund, not the investor, was a party. They also claim that ZCM has failed to meet the requirements of Rule 23.1 for pleading a derivative claim.

### 1. Individual Standing

Plaintiffs have brought claims under both Section 206 and Section 215 of the Act. Section 206 does not provide for a private right or action. *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 24, 100 S.Ct. 242, 249 (1979). Section 215, however, provides for a limited private cause of action. *Id.* Specifically, in *Transamerica Mortgage Advisors,* the Supreme Court held that "there exists a limited private remedy under the Investment Advisers Act of 1940 to void an investment advisers contract, but that the Act confers no other private causes of action, legal or equitable." *Id.* The Court found that Section 215 of the Act created "a right to specific and limited relief in a federal court." *Id.* at 18. The Supreme Court limited recovery to rescission of the contract and "restitution of the consideration given under the contract, less any value conferred by the other party." *Id.* at 24, n.14.

The Act prohibits an investment adviser from defrauding a client. Defendants argue that ZCM was not the client in the transaction at issue. Instead, M.J. Select served as the client. The Court agrees.

ZCM was an investor, not a party to the contract. In order to sue under the Act and seek rescission of the contract, ZCM must be a party to the contract. *See Shahidi v. Merrill Lynch, Pierce, Fenner & Smith,* Inc., 2003 WL 21488228 at *3 (M.D. Fla. Apr. 28, 2003) ("shareholders have no standing to individually sue either defendant in this case to void the contracts");

40

*Soderberg v. Gens*, 652 F.Supp. 560, 564 (N.D. Ill. 1987) (courts limit claims to "persons actually in an adviser/client relationship"). ZCM argues that it is an investment adviser "client" of Millennium under a broad reading of the Act, and therefore it can bring a cause of action under the Act. Given the restricted reading of claims under the Act by the Supreme Court, the Court refuses to adopt ZCM's broad definition here.

ZCM next argues that it has standing to assert a Section 206 claim as a third-party beneficiary of the investment adviser contract between M.J. Select and Millennium. Even if a third-party beneficiary has standing to assert a claim under the Act,[11] ZCM has failed to plead sufficient facts establishing that it was an intended beneficiary of the contract. "[T]here is a strong presumption that parties to a contract intend that the contract's provisions apply to *only* them and not to third parties." *Quinn v. McGraw-Hill Co., Inc.*, 168 F.3d 331, 334 (7th Cir. 1999) (citations and quotations omitted) (emphasis in original). "Express language in the contract identifying the third-party beneficiary is the best evidence of intent to benefit that party, but the courts have also accepted an implied showing where the implication that the contract applies to third parties is so strong as to be practically an express declaration." *Id.* (citations and quotations omitted). ZCM has not pled sufficient facts to establish its claimed third-party beneficiary status. The Court grants ZCM leave to do so.

### 2. Derivative Claims

ZCM next alleges that it brings its Investment Adviser Act claim derivatively on behalf of M.J. Select. It alleges that "demand on the board of directors of M.J. Select is futile because . . .

---

[11] The Court need not address this question at this time given that Plaintiffs have not sufficiently pled such a claim.

the directors are complicit in the wrongdoing and the Fund is in liquidation in the Bahamas." (R.15-1, Am. Compl. ¶ 243.) It further contends that demand on M.J. Select's Joint Official Liquidators is futile because "after two years of fact discovery they have elected to pursue claims against only the Allamian-affiliated parties, the Coglianese Defendants, and the Vorisek Defendants," not Defendants Delta, GAD, Millennium, and Sonic. (*Id.* ¶ 243.)

Rule 23.1 requires ZCM "to allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors...and the reasons for the plaintiff's failure to obtain the action or for not making the effort." Fed.R.Civ.P. 23.1. " [T]he requirement of a shareholder demand is more than a pleading requirement, it is a substantive right of the shareholder and the directors." *In re Abbott Lab. Derivative S'holders Litig.*, 325 F.3d 795, 804 (7th Cir. 2003), (citing *Kamen*, 500 U.S. at 97, 111 S.Ct. 1711). A "futility exception" allows a shareholder "to circumvent the directors' authority to manage corporate affairs." *Id.* The "law of the state of incorporation ... controls these substantive rights and governs what excuses are adequate for failure to make demand." *Id.*

The parties have not addressed the issue of what law applies in this case to determine whether ZCM is required to make a demand on the directors of M.J. Select and to ascertain what futility excuses would excuse ZCM from making such a demand. Given that M.J. Select was incorporated under the laws of the International Business Companies Act of the Commonwealth of the Bahamas, the answer to that question is not as straight-forward as it would be if M.J. Select had been incorporated in one of the fifty states. The Court need not resolve this issue at this stage, however, because ZCM has failed to meet any of the particularity requirements of Rule 23.1, regardless of what law applies. It is clear that federal courts strictly apply the

particularity standard to derivative actions. *See Harris Bank Libertyville v. Romtech America Corp.*, 1992 WL 396775 (N.D. Ill. Dec. 23, 1995). Accordingly, the derivative claim in Count VI is dismissed without prejudice.[12]

## VI. Standing To Assert State Law Claims (Counts VIII, IX, X, XIV, XV and XVI)

The Coglianese Defendants and the Vorisek Defendants argue that ZCM lacks standing to assert its claims against the Vorisek Defendants because the claims belong to M.J. Select. They contend that the shareholder standing rule precludes ZCM from proceeding with its claims against the Vorisek Defendants because such claims properly belong to M.J. Select. Because ZCM's alleged injuries are indirect and derivative of the direct injuries allegedly incurred by M.J. Select, the Vorisek Defendants argue that M.J. Select is the proper party to assert the claims.

The shareholder standing rule "is a longstanding equitable restriction that generally prohibits shareholders from initiating actions to enforce the rights of the corporation unless the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment." *Cashman v. Coopers and Lybrand*, 251 Ill.App.3d 730, 733, 623 N.E.2d 907, 909, 191 Ill.Dec.317, 319 (2nd Dist. 1993) (citations omitted). Illinois recognizes two exceptions to the shareholder standing rule. First, if the shareholder's injuries are distinct from those of other shareholders, the shareholder has standing to sue. *See Twohy v. First Nat. Bank of Chicago*, 758 F.2d 1185, 1194 (7th Cir. 1985). The mere diminution in the value of corporate assets, however, does not suffice to give the shareholder standing. *Flynn v. Merrick*, 881 F.2d 446, 449 (7th Cir. 1985). Second, if the defendant breached a duty owed directly to the

---

[12] Because ZCM has not established that it has standing to proceed either individually or derivatively on Count VI, the Court need not address whether it has stated a claim under the Act.

shareholder, the shareholder can sue the defendant. *Mann v. Kempter Fin. Cos.*, 247 Ill. App. 3d 966, 973, 187 Ill.Dec., 731, 618 N.E.2d 317, 322 (Ill. App. Ct. 1993). *See also Zokoych v. Spalding,* 36 Ill. App. 3d 654, 663 (Ill. App. Ct. 1976).

ZCM argues that the harm it has suffered is unique and not derivative of the harm suffered by M.J. Select and its other shareholders. Based on the allegations in the Amended Complaint, the Court agrees. ZCM alleges that its investment in M.J. Select was merely incidental to the call option transactions that provided capital to leverage investments in M.J. Select. ZCM alleges that it relied on the audit reports issued by the Vorisek Defendants when it accepted M.J. Selects' overvalued shares as premium payments in exchange for valuable call options. Accordingly, ZCM has standing to pursue its claims against the Vorisek Defendants. Even though M.J. Select is litigating derivative claims against the Vorisek Defendants in state court, *M.J. Select Global, Ltd. v. Allamian, et al.*, 03 LK 191 (Cir. Ct. Kane Co. Ill.), that litigation does not preclude ZCM from pursuing its individual claims here.

## VII.  Statute of Limitations for State Law Claims

Michael Coglianese and the Vorisek Defendants argue that all state claims against them are time-barred under the two year statute of limitations set forth in the Illinois Code of Civil Procedure, 735 ILCS 5/13-214.2(a). Section 214.2(a) provides that "[a]ctions based upon tort, contract or otherwise against any person, partnership or corporation registered pursuant to the Illinois Public Accounting Act, as amended . . . or any of its employees, partners, members, officers or shareholders, for an act or omission in the performance of professional services shall be commenced within 2 years from the time the person bringing an action knew or should reasonably have known of such act or omission." 735 ILCS 5/13-214.2(a).

## A.    The Vorisek Defendants

The Vorisek Defendants argue that the Court should dismiss ZCM's state law claims against them because they are time barred under the two-year statute of limitations set forth in Section 214.2(a). That statute of limitations applies only to individuals who were registered pursuant to the Illinois Public Accounting Act "at the time the alleged act or omission in question occurred." *Polsky v. BDO Seidman*, 293 Ill. App. 3d 414, 426, 688 N.E.2d 364, 373 (Ill. App. Ct. 1997). Although Defendant Jeffrey A. Vorisek was registered pursuant to the act as of July 31, 1990, Defendant Vorisek & Company, LLC was not registered until September 29, 2000.[13] Accordingly, the two-year statute of limitations applies only to events occurring after September 29, 2000 with respect to Defendant Vorisek & Company, LLC. Vorisek completed the 1998-1999 Audit Report at issue on or about May 20, 2000, and issued the 1999-2000 Audit Report at issue on or about May 15, 2001. (R. 54-2, Pl.'s Mem. in Opp'n to 12(b)(6) Mot., Ex. A, ¶ 62). Because Vorisek & Company completed the 1999-2000 Audit Report after the date it registered, that Report qualifies for two-year statute of limitations protection for Defendant Vorisek & Company, LLC. The 1998-1999 Audit Report, however, does not qualify for the two- year statute of limitations and instead is governed by at least a five-year statute of limitations. ZCM filed this case within the five-year period, thus the claims against Vorisek & Company, LLC based on the 1998-1999 Audit Report are not time-barred. Because Defendant Jeffrey Vorisek

_____

[13] ZCM provided this registration information from the Illinois Department of Professional Regulation's files. Because this information is a matter of public record, the Court may take judicial notice of it. *See Henson v. CSC Credit Serv.*, 29 F. 3d 280, 284 (7th Cir. 1994). Additionally, Vorisek & Company, LLC admits that it did not register with the Department of Professional Regulation until September 29, 2000. (R. 64-1, Def.'s Reply Mem. in Supp. of Rule 12(b)(6) Mot., p. 17).

registered in 1990, both Audit Reports at issue are covered by the two year limitations period.

Vorisek argues that the limitations period commenced in August of 2001 when ZCM learned of its injury. "Under Illinois law, the 'discovery rule' governs statutes of limitations, such as 735 ILCS § 5/13-214.2(a), which start to run when the plaintiff 'knew or should have known of the existence of the right to sue.'" *City Nat. Bank of Florida v. Checkers, Simon & Rosner*, 32 F.3d 277, 282 (7th Cir. 1994), (quoting *Rozny v. Marnul*, 43 Ill. 2d 54, 250 N.E.2d 656, 664 (1969)). "[W]hen a party knows or reasonably should know both than an injury has occurred and that it was wrongfully caused, the statute begins to run and the *party is under an obligation to inquire further to determine whether an actionable wrong was committed.*" *Id.* at 283 (quoting *Nolan*, 52 Ill.Dec. 1, 421 N.E.2d 864 (emphasis in original)). Furthermore, "[i]f a claim accrues even though the victim does not know that he has a legal entitlement to recover, *the fact that the victim does not know who would be the right defendant cannot matter.*" *Id.* at 284. (citations omitted) (emphasis in original). In contrast to ZCM's federal securities fraud claims, the Seventh's Circuit's holding in *Whitlock* applies to these state law claims. As noted above, the statute of limitations for Illinois tort claims accrues on an "injury-by-injury" basis, not a "defendant-by-defendant" basis. *Whitlock,* 233 F.3d at 1066.

Here, ZCM's alleged injury occurred when its shares in M.J. Select were unredeemable, illiquid, market dependent and inaccurately valued. Given that ZCM filed a lawsuit on August 14, 2001 alleging this same injury, the Court can conclude as a matter of law that the statute of limitations commenced at least as early as August 14, 2001 when it knew of the injury by its own judicial admission. *See   See ZCM v. Martin James Allamian, et al.*, 01 C 6250 (N.D. Ill.). ZCM's attempt to distinguish *City Nat'l Bank of Fla. V. Checkers, Simon & Rosner*, 32 F.3d 277

(7th Cir. 1994) fails. ZCM relies on factual distinctions that are irrelevant in light of the allegations in ZCM's 2001 complaint.

ZCM argues that the Court should apply equitable tolling to toll the statute of limitations.[14] "Equitable tolling applies when a plaintiff, despite due diligence, is unable to obtain enough information to conclude that there is a basis for a claim." *Brademas v. Indiana Housing Fin. Auth.*, 354 F.3d 681, 687 (7th Cir. 2004). *See also Wilson v. Battles*, 302 F.3d 745, 748 (7th Cir. 2002). *Wheaton v. Suwana*, 341 Ill. Ap.3d 929, 939 (Ill. App. 2003), *rev'd on other grounds*, 206 Ill. 2 642 (Ill. Dec. 2003). "Tolling doctrines stop the statute of limitations from running even if the accrual date has passed." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1991). Given the allegations in the complaint,[15] the Court cannot conclude at this stage that Plaintiffs are unable to invoke the doctrines of equitable tolling. Accordingly, the motion to dismiss is denied.

## B.   Michael Coglianese

Michael Coglianese also argues that the state law claims against him are time-barred under Section 214.2's two year statue of limitations. The parties do not dispute that Coglianese was registered pursuant to the Illinois Public Accountant Act at the time of the allegations in the Amended Complaint. Although Plaintiffs knew of their injury in August 2001 when they filed

----

[14] The Vorisek Defendants address this argument briefly in a footnote.

[15] Although the parties have not raised the argument, the Court notes that based on the allegations in the complaint, the Court cannot rule out the possibility that equitable estoppel also applies. Equitable estoppel tolls the statute of limitations "if the defendant takes active steps to prevent the plaintiff from suing in time," *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450-51 (7th Cir. 1990), "such as by hiding evidence or promising not to plead the statute of limitations." *Speer v. Rand McNally & Co.*, 123 F.3d 658, 663 (7th Cir. 1997) (citations and quotations omitted).

the 2001 complaint, as with the Vorisek Defendants, the Court cannot conclude as a matter of law that equitable tolling or equitable estoppel do not apply to toll the limitations period from running. Coglianese's motion to dismiss the state claims as untimely is therefore denied.

## VIII.   Fraud (Count VIII)

The Coglianese Defendants argue that ZCM has failed to plead the facts constituting fraud in Count VIII with Rule 9(b) specificity. Plaintiffs must allege the following to state a claim for fraud in Illinois: (1) a false statement of material fact; (2) knowledge or belief of the falsity by the party making the statement; (3) intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statements; and (5) damage to the other party resulting from such reliance. *WTM, Inc. v. Henneck*, 125 F. Supp. 2d 864, 869 (N.D. Ill. 2000). The Coglianese Defendants rely on the same arguments presented on Counts I and II. For the reasons discussed above, their arguments fail.

## IX.   Failure to Allege Conspiracy (Count IX)

Count IX is based on a conspiracy to defraud. In order to state a claim for conspiracy to defraud, Plaintiffs must allege "(1) a conspiracy; (2) an overt act of fraud in furtherance of the conspiracy; and (3) damages to the plaintiff as a result of the fraud." *Bosak v. McDonough*, 192 Ill.App.3d 799, 803, 139 Ill.Dec. 917, 549 N.E.2d 643 (Ill.App. 1st Dist.1989). *See also Travelers Indem. Co. of Illinois v. Farmer*, 2003 WL 22964375, at *4 (N.D. Ill. Dec. 16, 2003). Plaintiffs must allege an agreement in order to establish a conspiracy. *Western United Life Assur. Co. v. Fifth Third Bank*, 2003 WL 21800076, at *2 (N.D. Ill. July 29, 2003). Both the Coglianese Defendants and the Landmark Defendants seek to dismiss ZCM's conspiracy to defraud count.

The Coglianese Defendants seek to dismiss Count IX on the basis that it is duplicative of the other counts where Plaintiffs alleged the same torts. In support of their argument, Plaintiffs rely on *Thermodyne Food Service Products, Inc. v. McDonald's Corp.*, 940 F. Supp. 1300, 1310 (N.D. Ill. 1996). In *Thermodyne*, however, the court *permitted* both the civil conspiracy claim and the underlying tort claim to go to the jury, but cautioned that plaintiff could not recover damages against the same defendant on both counts because such a recovery would be duplicative. *Id.* The Coglianese Defendants' motion is denied.

The Landmark Defendants also move to dismiss this count. They argue that ZCM has failed to state a claim for conspiracy to defraud because they do not allege an agreement to participate in a conspiracy. The Court agrees. ZCM's conspiracy allegations against the Landmark Defendants are premised on their role through Defendant Coglianese acting as their agent. Although the PSLRA mandates do not apply to this count, Rule 9(b)'s requirements do apply to this common law claim given that the count in premised on fraud. ZCM's allegations regarding the Landmark Defendants' involvement in the alleged conspiracy to defraud do not meet the particularity mandates of Rule 9(b). Accordingly, Count IX is dismissed without prejudice with respect to the Landmark Defendants.

## X.     Count X – Unjust Enrichment

In Count X, Plaintiffs allege unjust enrichment against all Defendants. Under Illinois law, in order to state a claim for unjust enrichment, Plaintiffs must allege "that the defendant unjustly retained a benefit to the plaintiff's detriment and that the defendant's retention of that benefit violated fundamental principles of justice, equity, and good conscience." *M & O Insulation Co. v. Harris Bank Naperville*, 335 Ill.App.3d 958, 270 Ill.Dec. 673, 783 N.E.2d 635,

639 (Ill.App.Ct. 2002). Plaintiffs need only plead unjust enrichment under the federal notice pleading requirements which only require Plaintiffs to plead a "short and plain statement of the claim showing that the pleader is entitled to relief...." Fed.R.Civ.P. 8(a)(2). *See Shah v. Inter-Cont'l Hotel Chicago Operating Corp.*, 314 F.3d 278, 282 (7th Cir. 2003) ("The civil rules, as both the Supreme Court and this court have emphasized repeatedly, establish a system of notice pleading. The plaintiff is not required to plead facts or legal theories or cases or statutes, but merely to describe his claim briefly and simply.").

The Coglianese Defendants argue that Plaintiffs have failed to allege that any Coglianese Defendant unjustly retained a benefit to the detriment of any Plaintiff. In the Amended Complaint, Plaintiffs allege that each Defendant "improperly and unjustly obtained property and assets that properly belong to Plaintiffs and which were misappropriated by the illegal conduct" alleged in the amended complaint. (R. 15-1, Am. Compl. ¶ 287.) They further allege that Defendants obtained Plaintiffs' property and assets "under circumstances in which it is not just, equitable, or conscionable for Defendants to retain the Plaintiffs' property and assets." (*Id.* ¶ 288.) These allegations state a claim for unjust enrichment against all Defendants under Rule 8(a).

All Defendants claim that ZCM has not specifically identified what property and assets they unjustly received to ZCM's detriment. Although Rule 8(a) does not require Plaintiffs to particularize the details of the property and assets, Plaintiffs have alleged that Defendants unjustly received ZCM's investment capital in M.J. Select through their fraud. Plaintiffs also have alleged that Defendants unjustly received "professional" fees for fraudulent services from funds beneficially owned by ZCM. They have alleged that Defendants unjustly received

50

payments from ZCM's wrongfully withheld redemption proceeds. These allegations meet ZCM's pleading requirements. The motions to dismiss Count X are denied.

## XI.  Count XIV – Fiduciary Relationship

In order to allege a breach of fiduciary duty claim, a plaintiff must allege the following elements: (1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) damages proximately resulting from the breach. *Romanek v. Connelly*, 324 Ill.App.3d 393, 404, 257 Ill.Dec. 436, 753 N.E.2d 1062, 1072 (2001). A fiduciary duty is the duty of an agent to treat his principal with the utmost candor, rectitude, care, loyalty, and good faith – in fact to treat the principal as well as the agent would treat himself." *Burdett v. Miller*, 957 F.2d 1375, 1381 (7th Cir. 1992). A fiduciary relationship may arise as a matter of law by virtue of the relationship between the parties, such as an attorney-client relationship. *Id.* It may also "arise from the facts of a particular situation, for example, where there is trust reposed on one side and resulting superiority and influence on the other." *In re Estate of Rothenberg*, 176 Ill.App.3d 176, 179, 125 Ill.Dec. 739, 741, 530 N.E.2d 1148, 1150 (1988).

In Count XIV, Plaintiffs allege that the Coglianese Defendants, the Landmark Defendants and others breached a fiduciary duty under Illinois common law. They allege that Defendants were fiduciaries of M.J. Select and owed fiduciary duties to ZCM Bermuda as a shareholder of M.J. Select. (R. 15-1, Am. Compl. ¶ 321.) Plaintiffs proceed to detail how they owed these duties to ZCM Bermuda. (*Id.*) As a result, Plaintiffs allege that ZCM Bermuda placed its trust and confidence in each of these Defendants. (¶ 322.)

### A. The Coglianese Defendants

The Coglianese Defendants argue that Plaintiffs have failed to allege the existence of a

fiduciary duty. They contend that "Plaintiffs do not allege clear, convincing unequivocal facts that would create a special fiduciary relationship." They challenge ZCM because they have not alleged the "why and how" of the fiduciary relationship. To the contrary, Plaintiffs have alleged sufficient facts to support the existence of a fiduciary duty. They allege that they placed trust and confidence in Coglianese based on the assignment confirmations he signed as an independent accountant. They relied on the integrity of accounting statements he allegedly prepared. Plaintiffs allege that Coglianese essentially controlled their assets given his role with M.J. Select. Plaintiffs have met their burden of alleging the existence of a fiduciary duty. *See Terrell v. Childers*, No. 93 C 2460, 1996 WL 385310, at *2 (N.D. Ill. July 3, 1996.) Accordingly, the Coglianese Defendants' motion to dismiss Count XIV is denied.

### B.  The Landmark Defendants

Defendants Millennium, Mahy, Caseley, Ambassador, and Ledger also contend that Plaintiffs have failed to allege a fiduciary relationship between ZCM and any of the Landmark Defendants.[16] Millennium argues that Plaintiffs have failed to allege "a single fact to support the contention that Millennium acted in any such role." ZCM alleges that GAD and Millennium acted as trading advisers and owed fiduciary duties to M.J. Select and Plaintiffs. In violation of their fiduciary duties, GAD and Millennium, as agents of Coglianese, made false and misleading statements through the M.J. Select Offering Memoranda upon which ZCM relied.

It is true that "the relation between an investment adviser and the people he advises" does

_____

[16] The Landmark Defendants also briefly raise, but do not develop, the argument that ZCM lacks standing to raise this claim. Although this argument appears to have merit, because the parties did not develop it and because ZCM has failed to state a claim, the Court need not address it.

not give rise to a fiduciary relationship as a matter of law. *Burdette,* 957 F.2d at 1381. A fiduciary relationship, however, can "arise as the result of special circumstances of the parties' relationship, where one party places trust in another so that the latter gains superiority and influence over the former." *Prime Leasing, Inc. v. Kendig,* 332 Ill.App.3d 300, 313, 265 Ill.Dec. 722, 773 N.E.2d 84 (Ill.App. 1st Dist. 2002). "[T]he touchstone of a fiduciary relationship is the presence of a significant degree of dominance and superiority of one party over another." *Lagen v. Balcor Co.,* 274 Ill.App.3d 11, 21, 653 N.E.2d 968, 975, 210 Ill.Dec. 773, 780 (Ill. App. 2nd Dist. 1995). ZCM does not allege any "special circumstances" or "dominance and superiority." ZCM has not alleged a fiduciary relationship between ZCM Bermuda and Millennium and/or GAD. This is especially true because Plaintiffs and Defendants were both sophisticated. *See Ogdon v. Hoyt,* 2004 WL 1610973, *4 (N.D. Ill. July 19, 2004)

Mahy, Caseley, Ambassador, and Ledger contend that ZCM has failed to allege *any* relationship with ZCM Bermuda, much less a fiduciary one. These Defendants served as the directors of Millennium and GAD, and claim that this role does not impose fiduciary duties owed to third parties such as ZCM under either Illinois law or the law of the Bahamas. The Court agrees. *See Brown Leasing, Inc. v. Stone,* 284 Ill.App.3d 1035, 1045, 673 N.E.2d 430, 220 Ill. Dec. 518, 525 (1996) ("[directors'] fiduciary duties pertain to their business relations within the bank itself and not to their business relations with outside third parties") (quoting *Bio-Scientific Clinical Lab., Inc. v. Todd,* 149 Ill.App.3d 845, 103 Ill.Dec. 171, 501 N.E.2d 192 (1986)). *See also Technic Engineering Ltd. v. Basic Envirotech, Inc.,* 53 F.Supp.2d 1007, 1010 (N.D. Ill.

1999). Although ZCM correctly notes that under Illinois law[17] a corporate officer or director may be jointly and severally liable for torts committed by the corporation if she authorized or participated in the alleged wrongful act, *Itofca, Inc. v. Hellhake*, 8 F.3d 1202, 1204 (7th Cir. 1993), this argument fails here because ZCM has not alleged a fiduciary duty on the part of Millennium or GAD.

## XII.    Count XVI – Breach of Contract

In Count XVI, Plaintiffs allege a breach of contract claim against Coglianese, MC C.P.A, CCS Inc., Oceanic Vorisek and Vorisek & Co.  Plaintiffs base their allegations on two contracts: 1) a contract between M.J. Select and the Coglianese Defendants, and 2) a contract between ZCM MFC and Michael Coglianese, Coglianese CPA and CCS.

### A.    Third Party Beneficiary

The "well-established rule in Illinois is that if a contract is entered into for the direct benefit of a third person, the third person may sue for a breach of the contract in his or her own name, even though the third person is a stranger to the contract and the consideration." *Olson v. Etheridge*, 177 Ill.2d 396, 404, 686 N.E.2d 563, 566, 226 Ill. Dec. 780, 783 (Ill. 1997). ZCM Bermuda alleges that it was a third party beneficiary to a contract that existed between M.J. Select and the Coglianese Defendants. (R. 15-1, Am. Compl. ¶ 344.) Specifically, ZCM Bermuda alleges that "the intention of the contracting parties was to confer a direct benefit on the shareholders of M.J. Select, including Plaintiff ZCM Bermuda." (*Id.* ¶ 345.) Coglianese argues that Plaintiffs have failed to allege any "facts that show M.J. Select and the Coglianese

---

[17] ZCM fails to address the law of the Bahamas and whether joint and several liability applies to corporate officers and directors participating in the tort.

Defendants entered into this contract for the direct benefit of ZCM Bermuda." (R. 51-1, Mot. To Dismiss, p. 19.) He further contends that Plaintiffs have failed to allege "facts that show Plaintiffs have any enforceable rights under these contracts." Plaintiffs, however, need not plead facts on a breach of contract claim. *See Kaplan v. Shure Bros.*, 153 F.3d 413, 419 (7th Cir. 1998) (complaint alleging breach of warranty need not plead facts showing that plaintiff satisfied the privity requirement, as long as he put the defendant on notice of the claim). Plaintiffs have pled that ZCM Bermuda was a third-party beneficiary to the contract and they have put Defendants on notice of this claim. Furthermore, it is clear under Illinois law that the contract does not have to specifically name the third-party beneficiary, as long ast it defines a third-party by description of class, and the plaintiff is identified at the time performance is due. *Altevogt v. Brinkoetter*, 85 Ill. 2d 44, 55-56, 421 N.E.2d 182, 187 (Ill. 1981). *See also Industrial Hard Chrome, Ltd. v. Hetran, Inc.*, 76 F.Supp.2d 903, 905 (N.D. Ill. Dec. 2, 1999)[18].

**B.      The Contract Between ZCM MFC and Coglianese**

Under Illinois law, a party claiming breach of contract must allege that: (1) a valid and enforceable contract existed; (2) the plaintiff performed according to the contract; (3) the defendant breached the contract; and (4) the breach resulted in damages. *D.S.A. Fin. Corp. v. County of Cook*, 345 Ill.App.3d 554, 280 Ill.Dec. 130, 801 N.E.2d 1075, 1078 (Ill.App.Ct. 2003) (citations omitted). The Amended Complaint alleges that Coglianese, MC C.P.A. and CCS Inc. executed written contracts with ZCM MFC on approximately May 31, 2000 in the form of two

---

[18] In contrast to Plaintiffs' third-party beneficiary allegations in Count VI regarding the alleged investment adviser contract between M.J. Select and Millennium, Plaintiffs' allegations here against Coglianese are sufficient. Furthermore, Plaintiffs' allegations in Count VI have to meet Rule 9(b)'s standard, not Rule 8's pleading requirements.

assignment agreements, and that they breached these agreements.

The Coglianese Defendants argue, without citing any law, that the May 31, 2000 letters do not constitute contracts. Based on the allegations in the Amended Complaint, the Court cannot hold that the May 31, 2000 letters do not constitute contracts as a matter of law. Accordingly, Coglianese's motion to dismiss is denied.

## CONCLUSION

The Coglianese Defendants' motion to dismiss ZCM's amended complaint is denied.
The Vorisek Defendants' motion to dismiss the ZCM amended complaint is granted in part and denied in part. The Landmark Defendants' motion to dismiss the ZCM amended complaint is also granted in part and denied in part. The motions are denied with respect to Counts I, II, III, VIII, IX (in part), X, XIV (in part) and XVI. They are granted without prejudice with respect to Counts IV, V, VI, IX (in part) and XIV (in part). Plaintiffs have until 30 days after the Court rules on Defendant Oceanic's motion to dismiss to file a Second Amended Complaint.

Dated:  August 2, 2004                        ENTERED:

_____
AMY J. ST. EVE
United States District Court Judge