# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 7960 | **DATE** | 9/22/2004 |
| **CASE TITLE** | Zurich Capital vs. Coglianese | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order. The Oceanic Defendants' motion to dismiss plaintiff's amended complaint (R. 34-1) is granted in part and denied in part. Plaintiff's have until 10/22/04 to file a second amended complaint addressing the deficiencies in this opinion and the Court's August 2, 2004 opinion.

*Amy J St. E*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | SEP 2 3 2004 | |
| ✓ | Docketing to mail notices. | date docketed | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| | | date mailed notice | |
| TH ✓ | courtroom deputy's initials | | |

number of notices
SEP 2 3 2004
date docketed
docketing deputy initials
CLERK, U.S. DISTRICT COURT
2004 SEP 22 PM 4: 17
Date/time received in central Clerk's Office
date mailed notice
mailing deputy initials
Document Number
80

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ZURICH CAPITAL MARKETS INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | No. 03 C 7960 |
| v. | ) ) | |
| MICHAEL COGLIANESE, et al., | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

This is a securities fraud action against multiple defendants in connection with Plaintiffs'

investment in an allegedly fraudulent scheme executed by Defendants through M.J. Select Global

Fund, Ltd. ("M.J. Select"), a Bahamian mutual fund. The Court previously addressed the

motions to dismiss filed by multiple Defendants. *See Zurich Capital Markets Inc. v. Coglianese,

et al.,* No. 03 C 7960, 2004 WL 1881782 (N.D. Ill. Aug. 2, 2004) (the "August 2, 2004

Opinion"). In this opinion, the Court rules on the issues raised by Defendants Oceanic Bank and

Trust Limited, Kenneth Clowes, and Terah Rahming (collectively, the "Oceanic Defendants") in

their motion to dismiss.

The Oceanic Defendants have moved to dismiss ZCM's Amended Complaint pursuant to

Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(6). Defendants claim that the

Court lacks subject matter jurisdiction over the Amended Complaint and personal jurisdiction

over each of the Oceanic Defendants. They also argue that ZCM lacks standing to assert the

claims, and that the Amended Complaint is untimely and fails to state a claim upon which relief

DOCKETED
SEP 2 3 2004

80

can be granted. As discussed in detail below, Defendants' motion is granted in part and denied in part.

## BACKGROUND

Plaintiffs allege that the Oceanic Defendants and their co-Defendants engaged in a complex scheme to defraud Plaintiffs out of over $24 million. The details of the alleged fraud are set forth in the Court's August 2, 2004 Opinion and will not be repeated here.

### I. Factual Allegations

Plaintiff Zurich Capital Markets Inc. ("ZCM Inc.") is a Delaware corporation and was one of the world's largest custodians of hedge funds. Plaintiff ZCM Matched Funding Corp., a Delaware corporation, ("ZCM MFC") is a wholly owned subsidiary of ZCM Inc., and specializes in the offering and sale of derivative instruments. ZCM Bermuda is a Bermuda corporation and an affiliate of ZCM Inc. that operates as a holding company for offshore investments. Plaintiff ZCM Asset Holding Company LLC ("ZCM Asset") is a Delaware corporation and a wholly owned subsidiary of ZCM Inc. that operates as a holding company for offshore investments. Collectively, Plaintiffs are referred to as "ZCM."

Defendant Oceanic is the administrator, registrar, and transfer agent of M.J. Select, with its principal place of business in the Bahamas. ZCM alleges that Oceanic transacted business through its agents in Illinois, and had systematic and continuous contacts with Illinois. (*Id.*)

Defendant Terah Rahming, a citizen of the Bahamas, was a director of M.J. Select and was employed by Oceanic as the Manager of the Funds Department. ZCM alleges that Rahming transacted business through her agents in Illinois and had systematic and continuous contacts with Illinois.

2

Defendant Kenneth Clowes, also a citizen of the Bahamas, was a director of M.J. Select and the Chief Operating Officer of Oceanic. ZCM alleges that he transacted business through his agents in Illinois, and had systematic and continuous contacts with Illinois, in his role as M.J. Select Director and Oceanic's Chief Operating Officer.

## A.    Oceanic's Role in the Scheme

ZCM alleges that the Oceanic Defendants were integral to the fraudulent scheme carried out by all of the defendants in connection with the investment scheme in M.J. Select. Plaintiffs allege that Oceanic became administrator, registrar and transfer agent of M.J. Select in 1998. In that role, Oceanic was responsible for the day-to-day administration of M.J. Select, including the transfer of assets into and out of M.J. Select and the processing of redemption requests.

Asset Allocation Fund, L.P. ("Asset Allocation") was M.J. Select's first and largest investor. Martin James Capital Management, Inc. ("Martin James") served as the general partner of Asset Allocation, and Martin Allamian was the sole owner and principal of Martin James. Martin James also invested two other partnerships under its control – M.J. Diversified Fund, L.P. ("MJD") and M.J. Financial Arbitrage, L.P. ("MJFA") – in M.J. Select.

ZCM alleges that Oceanic appointed M.J. Select's board of directors in 1999. It named its employees – Defendants Rahming and Clowes – as the sole directors. In this capacity, Rahming and Clowes assumed control over M.J. Select.

## B.    The Assignment Recognition Letter

As discussed in detail in the August 2, 2004 Opinion, in May 2000, ZCM MFC entered into a call option transaction with Asset Allocation which was a derivative instrument. Under the terms of the call option, ZCM MFC agreed to accept an assignment of Asset Allocations'

3

interests in various investments, including M.J. Select, MJD and MJFA, as an initial premium payment to acquire the option transaction. Before ZCM MFC would accept this assignment, however, it required, among other things, a written confirmation from Oceanic that it would recognize the assignments and ZCM MFC as the sole owner of 100% of the interests in these entities formerly held by Asset Allocation. In response, Coglianese arranged for Rahming to sign the confirmation on behalf of M.J. Select and Oceanic.

The confirmation – referred to as an "assignment recognition letter" – allegedly fraudulently induced ZCM into investing millions of dollars into M.J. Select. ZCM alleges that the May 31, 2000 "assignment recognition letter" falsely represented that Oceanic would recognize ZCM MFC as the sole owner of 100% of the shares in M.J. Select that had previously been invested under the name of Asset Allocation. They further allege that Oceanic and Rahming falsely represented that ZCM MFC "as sole owner . . . will have all of the rights and privileges that normally accompany such ownership." In addition, ZCM alleges that Rahming and Oceanic fraudulently omitted that M.J. Select had a discriminatory redemption policy and that ZCM's share interests were not effectively redeemable consistent with the offering documents.

Based, in part, on the assignment confirmation letter, ZCM MFC accepted an assignment of Asset Allocations interests in M.J. Select, MJD and MJFA. In 2001, ZCM instructed Oceanic to redeem its interests in M.J. Select. Contrary to its representations, Oceanic did not redeem ZCM's shares. Instead, Oceanic honored subsequently submitted redemption requests made on behalf of co-defendants Coglianese's and Martin James' friends, family and business associates. ZCM still has not received its redemptions.

## II.    The 2001 ZCM Action

On August 14, 2001, ZCM Bermuda filed a securities fraud action against Oceanic and various other defendants (the "2001 Action").  The 2001 Action was based on the defendants' "fraudulent offering, conversion, and transfer of limited partnership interests" in MJD, MJFA and M.J. Select.  ZCM Bermuda alleged that Oceanic "affirmatively represented in the offering documents that the partnership interests and shares would be readily redeemable on short notice, and Plaintiff relied upon those representations of liquidity in making its investments."

Count I of the 2001 Action alleged that Oceanic and other defendants misrepresented that the plaintiff's shares in M.J. Select were redeemable within 30 days written notice.  They alleged that defendants, including Oceanic, instead intended to control, convert, and transfer the plaintiff's interests regardless of Plaintiff's redemption demands.

On October 10, 2001, ZCM Bermuda filed an amended complaint adding ZCM, Inc., ZCM Matched Funding Corp. and ZCM Asset Holindg Company LLC as plaintiffs to the 2001 Action and numerous defendants to that case.  In addition, plaintiffs alleged in the amended complaint that Oceanic, with two of its co-defendants, controlled M.J. Select.  On January 1, 2002, ZCM filed a second amended complaint in the 2001 Action.

On March 25, 2002, Judge Lindberg granted Oceanic's motion to dismiss the second amended complaint in the 2001 ZCM Action.  The court dismissed the case with respect to Oceanic with prejudice on the ground that ZCM had failed to plead the Rule 10b-5 claim against Oceanic with particularity pursuant to Rule 9(b) and had failed to plead scienter under the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b) (the "PSLRA").  The court further found that ZCM had failed to plead that Oceanic had a duty to disclose.

On August 30, 2002, the 2001 Action was transferred to this Court. *See 766347 Ontario Ltd. v. Zurich Capital Markets, Inc.*, 249 F.Supp.2d 974 (N.D. Ill. 2003) for a discussion of the case.

## ANALYSIS

### I. Legal Standards

The Oceanic Defendants bring this motion pursuant to Rules 12(b)(1), 12(b)(2) and 12(b)(6). A Rule 12(b)(1) motion to dismiss tests the federal jurisdiction of a complaint. *See* Fed. R. Civ. P. 12(b)(1). Plaintiffs bear the burden of proving the existence of subject matter jurisdiction. *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980). In analyzing a Rule 12(b)(1) motion, the Court may look beyond the pleadings. *See Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999); *Int'l Harvester*, 623 F.2d at 1210. The Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Long*, 182 F.3d at 554.

A Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction tests whether a federal court has personal jurisdiction over a defendant. *See* Fed. R. Civ. P. 12(b)(2). Similar to subject matter jurisdiction, a plaintiff has the burden of demonstrating the existence of personal jurisdiction over a defendant. *Jennings v. AC Hydraulic A/S*, No. 03-2157, 2004 WL 1965661, at * 1 (7th Cir. Sept. 2, 2004); *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). A plaintiff need only make a prima facie case that jurisdiction over a defendant is proper. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). In determining whether a plaintiff has met this burden, a court may consider affidavits from both parties. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987). The court must accept as true all allegations in the complaint which are not

challenged by a defendant's affidavit; any conflicts in the affidavits must be resolved in favor of the plaintiff. *Id.*

The purpose of a motion to dismiss under Rule 12(b)(6) is to "test the sufficiency of the complaint, not to decide the merits" of the case. *Triad Assocs., Inc. v. Chicago Housing Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court views "the complaint in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor." *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003). Dismissal is appropriate only where it appears beyond doubt that under no set of facts would plaintiff's allegations entitle him or her to relief. *See Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999).

## II.     Subject Matter Jurisdiction

The Court will first address the issue of subject matter jurisdiction. The Oceanic Defendants argue that the Court lacks subject matter jurisdiction over ZCM's federal securities fraud claims because the dispute exists between ZCM Bermuda, a Bermuda corporation, and Oceanic, a Bahamian corporation. As addressed in the Court's August 2, 2004 Opinion, a securities fraud claim involving foreign transactions must comply with either the "conduct" or the "effects" approach in order to confer subject matter jurisdiction on a federal court. *See Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 665 (7th Cir. 1998). "These two approaches . . . focus on whether the activity in question has had a sufficient impact on or relation to the United States, its markets or its citizens to justify American regulation of the situation. Specifically, one approach focuses on the domestic conduct in question, and the other focuses on the domestic effects resulting from the transaction at issue." *Id.*

Under the effects approach, "courts have looked to whether conduct occurring in foreign countries had caused foreseeable and substantial harm to interests in the United States." *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 730 F.3d 1103, 1108 (7th Cir. 1984). As for the conduct approach, "federal courts have jurisdiction over an alleged violation of the antifraud provisions of the securities laws when the conduct occurring in the United States directly causes the plaintiff's alleged loss in that the conduct forms a substantial part of the alleged fraud and is material to its success. This conduct must be more than merely preparatory in nature; however, we do not go so far as to require that the conduct occurring domestically must itself satisfy the elements of a securities violation."[1] *Kauthar*, 149 F.3d at 667.

ZCM alleges in Count II that Rahming and Oceanic made false and misleading statements and omissions on or about May 31, 2000 in connection with the purchase and sale of securities issued by M.J. Select. ZCM alleges that M.J. Select's shares were offered and sold in the United States to United States' investors as a premium payment from Asset Allocation, an Illinois limited partnership. ZCM alleges that Coglianese and/or Martin James prepared the fraudulent assignment recognition agreement in Illinois, and that Martin James faxed a copy of the blank assignment confirmation to Coglianese, an Illinois resident, who arranged for Rahming to sign it. The Court draws the reasonable inference that one of these Illinois residents contacted Rahming for the purpose of signing it. ZCM further alleges that Oceanic and Rahming mailed the May 31, 2000 letter to ZCM in New York in order to induce them to invest in M.J. Select. They allege

---

[1] *See* August 2, 2004 Opinion for a comparison of the different approaches the Courts of Appeals have established regarding the extent of conduct in the United States that will trigger subject matter jurisdiction over foreign securities fraud claims. *Zurich Capital Markets Inc. v. Coglianese*, No. 03 C 7960, 2004 WL 1881782, at *29 n.10 (N.D. Ill. Aug. 2, 2004).

that Oceanic and Rahming had frequent communications with Coglianese, an Illinois resident, and the Coglianese Accounting Entities, one of which is an Illinois professional corporation and one is an Illinois corporation, regarding the promotion of M.J. Select securities and the daily operations of M.J. Select. Plaintiffs allege that Oceanic and Rahming conspired with Martin James in Illinois to treat Martin James and Asset Allocation, Illinois entities, as the owners of ZCM's shares and to improperly convert ZCM's redemption proceeds to insiders in the United States. These allegations are sufficient to confer subject matter jurisdiction over Count II.

Regarding ZCM's control person claim in Count III, ZCM has alleged both that Defendants caused foreseeable harm to United States' interests and that conduct within the United States was material to Defendants' successful completion of the allegedly fraudulent scheme. ZCM alleges that the Oceanic Defendants were control persons of M.J. Select. They allege that defendants in Illinois prepared and circulated the false misrepresentations in the M.J. Select offering materials, and that various co-defendants who are Illinois residents offered and sold M.J. Select's shares in the United States. ZCM alleges that Illinois accountants and auditors sent fraudulent M.J. Select financial statements to the Oceanic Defendants, who in turn sent them to United States' investors. ZCM further alleges that ZCM MFC, a Delaware corporation, accepted shares in M.J. Select as a premium payment from Asset Allocation, an Illinois limited partnership, in exchange for carrying out the call option transaction. Defendants, according to Plaintiffs, funneled substantial sums from the fraudulent scheme to the Coglianese Defendants in Illinois. Based on these allegations, this Court has subject matter jurisdiction over Count III.

## III.    Personal Jurisdiction

The Oceanic Defendants also seek to dismiss the complaint for lack of personal

9

jurisdiction. They argue that they did not have continuous and systematic business contacts that would provide this Court with personal jurisdiction over them.

## A. Federal Claims

Because Count III remains against Oceanic, Clowes, and Rahming[2], the jurisdictional provisions of the Securities Exchange Act apply. Specifically, Section 27 of the Act provides, in relevant part:

> Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any . . . district [wherein any act or transaction constituting the violation occurred] or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.

15 U.S.C. § 78aa (2000). "Service of process is how a court gets jurisdiction over the person." *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 671 (7th Cir. 1987). Because the Act provides for nationwide service of process, it confers personal jurisdiction in federal court over defendants with minimum contacts with the *United States*, as long as the mandates of constitutional due process are met. *Id.* (emphasis added); *Fitzsimmons v. Barton*, 589 F.2d 330, 332 (7th Cir. 1979). *See also Kundrat v. Chicago Bd. Options Exch.*, No. 01 C 9456, 2002 WL 31017808, at *3 (N.D. Ill. Sept. 6, 2002). *See also* Fed. R. Civ. P. 4(k)(2) ("If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons . . . is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general

---

[2] As discussed below, the Court is dismissing Count II against Oceanic with prejudice as untimely. The Court is dismissing Count II against Rahming without prejudice for failure to state a claim.

jurisdiction of any state"); *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004). Thus, the Court will analyze the limitations of federal constitutional due process to determine if personal jurisdiction exists over each of the Oceanic Defendants. *United Rope Distribs., Inc. v. Seatriumph Marine Corp.*, 930 F.2d 532, 534 (7th Cir. 1991).

Federal due process requires that each Defendant have "certain minimum contacts with [the United States] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *RAR*, 107 F.3d at 1277 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L.Ed. 95 (1945)). The Oceanic Defendants' contacts with the United States must be such that they "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 2183 (1985) (citations omitted). Each Defendant must have purposefully availed himself or herself of the privilege of conducting activities in the forum state, invoking the benefits and protections of its laws. *Id.* at 475, 105 S. Ct. at 2183. Given Section 78aa, the Court will focus its due process analysis on whether the Oceanic Defendants have minimum contacts with the United States. The minimum contacts standard varies depending on whether the plaintiff asserts general or specific jurisdiction. Here, Plaintiffs argue that the Court has both general and specific jurisdiction.

General jurisdiction is proper when the defendant has "continuous and systematic general business contacts" with the forum. *RAR*, 107 F.3d at 1277 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868, 1875, 80 L. Ed. 2d 404 (1984)). Specific jurisdiction exists if the claims "arise out of or relate to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414 n.8, 104 S. Ct. at 1872 n.8.

ZCM argues that Oceanic's minimum contacts with the United States are met through the

following: 1) Oceanic communicates with investment managers and related personnel in the United States regarding the funds at issue in this case; 2) Oceanic administers investment funds totaling approximately $5 billion in assets in the United States, including M.J. Select and two funds in New York; 3) Oceanic advertises through a Client Information Package that "Oceanic works with domestic advisors to preserve wealth and minimize estate taxes for U.S. residents;" 4) Oceanic derives approximately 20-25% of its overall income from administering funds with U.S. investment managers; 5) many of the trusts administered by Oceanic have United States beneficiaries; 6) Oceanic deals with major banks, money managers' dealers in the United States; 7) Oceanic advertises that it "works with domestic advisors to preserve wealth and minimize estate taxes for United States residents; 8) Clowes testified that "senior management [of Oceanic] are constantly making client relationship management trips to the USA;" 9) Oceanic maintains accounts at eight brokerage firms in the United States with monthly balances in each account exceeding $10,000; 10) many wire transfers to and from Oceanic were routed through a correspondent bank account in New York; and 11) Oceanic has an interactive website located at www.oceanic.bs on which it actively advertises and promotes its services to residents of the United States.[3] These contacts with the United States justify the Court's exercise of personal jurisdiction over Oceanic. *See Cromer Fin. Ltd. v. Berger*, 137 F.Supp.2d 452, 474-79

---

[3] This is not inconsistent with the Seventh Circuit's recent decision in *Jennings v. AC Hydraulic A/S*, No. 03-2157, 2004 WL 1965661, at * 2 (7th Cir. Sept. 2, 2004) where the court concluded that "a defendant's maintenance of a passive website does not support the exercise of personal jurisdiction over that defendant in a particular forum just because the website can be accessed there." Here, Oceanic has an "interactive" website, not a passive one. Although the Seventh Circuit has not decided "what level of 'interactivity' is sufficient to establish personal jurisdiction based on the operation of an interactive website," *id.*, Oceanic's interactive website, in combination with its numerous other contacts with the United States, gives this Court jurisdiction over it.

(S.D.N.Y. 2001); *Samuel H.Esterkyn, M.D., Inc. Pension Sharing and Profit Sharing Plan v. Van Hedge Fund Advisors, Inc.*, 108 F.Supp.2d 876, 890 (M.D. Tenn. 1999).

ZCM also has identified Rahming and Clowes' contacts with the United States. ZCM has established that Rahming has attended various conferences in the United States for business purposes. Rahming sent electronic mail to United States residents soliciting them to visit Oceanic's website; frequently communicated via telephone, e-mail, facsimile and mail with the Coglianese co-defendants in Illinois; is licensed by the Colorado Board of Accountancy as a Certified Public Accountant, sat for her Certified Public Accountant exam in California, attended Florida Memorial College in Florida, regularly visited the State of Floria; transmitted or caused to be transmitted information on redemption requests to the Coglianese defendants in Illinois for clearance and approval; contacted the Coglianese defendants and Martin James in Illinois to obtain contact information for the other M.J. Select shareholders; sent or caused to be sent performance evaluation and monthly and annual account statments and financial statements to M.J. Select shareholders residing in the United States; issued the fraudulent assignment recognition agreement to ZCM in New York; and communicated with ZCM in New York via faxes, phone calls and e-mails to falsely confirm that M.J. Select would honor ZCM's redemption requests.

ZCM argues that Clowes made seven trips to the United States from 1999 to the present, including one to Illinios. They also contend that Clowes sent e-mail to United States residents to advertise Oceanic's website and solicit them to visit the website; directed wire transfers through Oceanic's and M.J. Select's correspondent bank account at Barclays Bank in New York, including funds at issue in this case that originated and ended in Illinois; communicated with the

Coglianese Defendants in Illinois regarding the daily operations of M.J. Select, the termination of M.J. Select's trading advisor and the liquidation of M.J. Select; communicated with the Coglianese Defendants in Illinois regarding numerous other funds administered by Oceanic for which Clowes served as Director; and filed numerous declarations in the 2001 Action to conceal the true facts of this case. Clowes' actions were purposely directed toward the United States.

These contacts with the United States satisfy the due process clause and establish personal jurisdiction over the securities fraud claims with respect to Rahming and Clowes. *See San Mateo County Transit Dist. v. Dearman, Fitzgerald and Roberts, Inc.*, 979 F.2d 1356, 1358 (9th Cir. 1992); *United Phosphorous, Ltd. v. Angus Chem. Co.*, 43 F.Supp.2d 904, 912 (N.D. Ill. 1999).

**B.     Fair Play and Substantial Justice**

The Court must next determine whether its exercise of personal jurisdiction over the Oceanic Defendants comports with "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 113, 107 S. Ct. 1026, 1033, 94 L. Ed. 2d 92 (1987) *(quoting Int'l Shoe Co.*, 326 U.S. at 316). *See also Jennings*, 2004 WL 1965661, at *2. A party's assertion of jurisdiction must be reasonable in light of the burden on the defendant, the plaintiff's interest in obtaining relief, the interests of Illinois, the judicial system's interest in efficiently resolving controversies, and the "shared interest of the several States in furthering fundamental substantive social policies." *Asahi*, 480 U.S. at 113 (citations omitted). The Court must determine whether this is "one of these rare cases in which minimum requirements inherent in the concept of fair play and substantial justice . . . defeat the reasonableness of jurisdiction." *Id.* at 116, 107 S. Ct. at 1034 (Brennan, J., concurring) (citations

omitted).

Exercise of the Court's jurisdiction in this case is fair and just. "The United States has a substantial interest in the enforcement of its securities laws and the protection of investors in the United States securities markets." *Cromer Fin., Ltd.*, 137 F.Supp.2d at 479. Illinois also has an interest in enforcing its securities laws. Further, the burden on Oceanic is small given that it has continuous business in the United States. Given the Defendants' substantial contacts with the forum and their systematic and continuous business in the United States, the Court will exercise its jurisdiction over them.

### C. Fiduciary Shield Doctrine

Defendants Clowes and Rahming argue that they are protected under the fiduciary shield doctrine because their only connection to this case is through their work as Oceanic's employees. In Illinois, the "fiduciary shield doctrine" precludes courts from exercising jurisdiction over a non-resident corporate official when the only contacts that individual has with Illinois are made in his or her corporate capacity. *See Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1994) ("This doctrine . . . denies personal jurisdiction over an individual whose presence and activity in the state in which the suit is brought were solely on behalf of his employer or other principal.") (internal citations omitted). Where an individual defendant's conduct in Illinois "was a product of, and was motivated by, his employment situation and not his personal interests, . . . it would be unfair to use this conduct to assert personal jurisdiction over him as an individual." *Rollins v. Ellwood*, 141 Ill. 2d 244, 280, 152 Ill. Dec. 384, 400, 565 N.E.2d 1302, 1318 (1990). The fiduciary shield doctrine, however, "is a matter of state law only," not federal law. *Hardin Roller Corp. v. Universal Printing Mach., Inc.*, 236 F.3d 839, 842 (7th Cir. 2001).

15

Accordingly, it does not apply to ZCM's federal securities fraud claims.

Even if the doctrine applies, Clowes and Rahming are not protected by it based on the allegations in the Amended Complaint. It is clear that the fiduciary shield doctrine is discretionary or equitable, rather than an absolute entitlement. *See Burnhope v. National Mortgage Equity Corp.*, 208 Ill. App.3d 426, 439-40, 153 Ill. Dec. 398, 405-06, 567 N.E. 2d 356, 363-64 (1st Dist. 1990). There are two exceptions to the doctrine: "(1) the shield is removed if the individual's personal interests motivated his actions, and (2) the shield generally does not apply when the individual's actions are discretionary." *Jones v. Sabis Educ. Sys., Inc.*, 52 F.Supp.2d 868, 883 (N.D. Ill. 1999) (internal citations omitted). *But see Robinson v. Sabis Educ. Sys., Inc.*, 1999, No 98 C 4251, WL 412642, at *3 (N.D. Ill. May 28, 1999) (questioning whether these exceptions exist without the corporation also being a sham entity).

ZCM alleges that both Clowes and Rahming served as the two most senior persons in Oceanic's fund administration department. Rahming served as the Manager of the Fund, and Clowes served as the Chief Operating Officer of Oceanic. The allegations in the Amended Complaint are sufficient to infer that Rahming and Clowes had significant discretion at Oceanic, including discretion in determining whether to conduct business in the United States. Accordingly, the doctrine does not apply to them. *See Minkus v. Los Alamos Technical Assoc. Inc.*, No. 03 C 4216, 2004 WL 1459499, at *3 (N.D. Ill. June 28, 2004); *Brujis v. Shaw*, 876 F. Supp. 975, 978-80 (N.D. Ill. 1995).

### D.     Pendent Personal Jurisdiction

Because the Court has personal jurisdiction over the Oceanic Defendants, it also can assert personal jurisdiction over the state law claims under the doctrine of "supplemental" or

"pendent" personal jurisdiction. *Robinson Eng'g. Co., Ltd. Pension Plan & Trust v. George*, 223 F.3d 445, 449-50 (7th Cir. 2000). Oceanic's motion to dismiss for lack of personal jurisdiction is therefore denied.

## IV.    Statute of Limitations

In its August 2, 2004 Opinion, the Court set forth in detail the law governing statute of limitations in federal securities fraud actions. As the Court noted, if a "plaintiff pleads facts that show its suit [is] barred by a statute of limitations, it may plead itself out of court under a Rule 12(b)(6) analysis." *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995). "[B]ecause the question of whether a plaintiff had sufficient facts to place it on inquiry notice of a claim for securities fraud is one of fact, it may be 'inappropriate for resolution on a motion to dismiss under Rule 12(b)(6).'" *Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 669-70, (citing *Marks v. CDW Computer Ctrs., Inc.*, 122 F.3d 363, 367 (7th Cir. 1997)).

The Oceanic Defendants argue that Plaintiffs' federal securities law claims are barred by the statute of limitations because they are reasserting the same claims they filed against Defendant Oceanic in the 2001 action. Because ZCM filed the 2001 Action on November 7, 2003 – more than two years before they filed this case – the Oceanic Defendants argue that this case is time barred.

### A.    The Applicable Limitations Period

The Court must first determine the applicable statute of limitations period. Prior to July 30, 2002, a plaintiff had to file a Section 10(b) action "within one year after the discovery of the facts constituting the violation and within three years after such violation." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 364, 111 S. Ct. 2773, 2782, 115 L. Ed.

17

2d 321 (1991). On July 30, 2002, Congress enacted the Sarbanes-Oxley Act and expanded the limitations period for such claims involving "fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws" to two years after the discovery of the facts constituting the violation and within five years after such violation. Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, § 804, 116 Stat. 745, 801 (2002) (to be codified at 28 U.S.C. 1658(b)). Section 804(b) of the Sarbanes-Oxley Act specifically provides that the expanded limitations period "shall apply to all proceedings addressed by this section that are commenced on or after the date of enactment of this Act." *Id.*

The Seventh Circuit has embraced the concept that courts may not apply a statute that lengthens an applicable statute of limitations to revive claims that are otherwise time-barred under the old statute of limitations because "to do so would 'alter the substantive rights' of a party and 'increase a party's liability'" *Stone v. Hamilton,* 308 F.3d 751, 757 (7th Cir. 2002) (quoting *Chenault v. United States Postal Serv.*, 37 F.3d 535, 539 (9th Cir. 1994)). Numerous courts have applied this concept to the Sarbanes-Oxley extension of the statute of limitations in securities fraud cases, and held that the extended limitations period does not apply to claims that were time-barred when Congress enacted Sarbanes-Oxley. *See e.g., In re ADC Telecomm., Inc., Sec. Litig.*, No. CIV. 03-1194, 2004 WL 1898469, at **3-5 (D. Minn. May 17, 2004) (Sarbanes-Oxley does not apply retroactively to revive time-barred claims); *Ato Ram, II, Ltd. v. SMC Multimedia Corp.*, No. 03 Civ. 5569, 2004 WL 744792, at *5 (S.D.N.Y. Apr. 7, 2004) ("Plaintiff's claims were not yet barred when Sarbanes-Oxley was enacted and, accordingly, the amended statute of limitations applied"); *In re Enron Corp. Sec., Derivative & Erisa Litig.*, No. MDL-1446, Civ.A. H-01-3624, 2004 WL 405886, at *12 (S.D. Tex. Feb. 25, 2004) (same);

*Glaser v. Enzo Biochem, Inc.*, No. CIV.A. 02-1242-A, 2003 WL 21960613, at *5 (E.D. Va. July 16, 2003); *In re Heritage Bond Litig.*, 289 F.Supp. 2d 1132, 1148 (C.D. Cal. Jan. 6, 2003); *but see Roberts v. Dean Witter Reynolds, Inc.*, No. 8:02-CV-2125-T-26, 2003 WL 1936116, at *3 (M.D. Fla. Mar. 31, 2003) (applying Sarbanes-Oxley retroactively to all claims, including time-barred claims because "Congress intended to lengthen the statute of limitations to enable people who lost their life-savings to companies like Enron to recover some of their investments"). The Court agrees with the reasoning of these decisions. The plain language of the statute does not clearly reflect a Congressional intention to apply the extended limitations period retroactively to revive time-barred claims. *See INS v. St. Cyr*, 533 U.S. 289, 316, 121 S. Ct. 2271, 2288, 150 L. Ed 2d 347 (2001) ("A statute may not be applied retroactively [ ] absent a clear indication from Congress that it intended such a result").

As discussed in the next section of this opinion, the Court cannot conclude at this stage that Plaintiffs' claims were barred as a matter on law on July 31, 2002 when Congress passed Sarbanes-Oxley. Plaintiffs' Section 10b-5 claim accrued by August 14, 2001 when Plaintiffs filed the August 2001 Action. Under the one year statute of limitations, the period would not have expired until August 14, 2002 – *after* Congress passed the Sarbannes-Oxley Act. Because it was not time-barred as a matter of law at that time, the amended statute of limitations – and its two year time period – applies to Plaintiffs' securities fraud claims in this case.

Defendants' heavy reliance on *In re Enterprise Mortgage Acceptance Co. L.L.C. Sec. Litg.*, 295 F. Supp.2d 307, 312-17 (S.D.N.Y. 2003), is misplaced. In *Enterprise*, the court held that the two years statute of limitations under Sarbanes-Oxley did not apply to the plaintiff's securities fraud claims because such claims were already time-barred prior to the effective date of

Sarbanes-Oxley. Here, ZCM's claims were not time-barred as a matter of law when Sarbanes-Oxley became effective. The *Enterprise* reasoning, therefore, does not apply to this case.

### B.    Accrual

Because it is often difficult for a plaintiff to know that he or she has been the victim of securities fraud until years after the commission of the fraud, the statute of limitations for federal securities fraud claims commences under the doctrine of "inquiry notice." *Fujisawa Pharm. Co., Ltd., v. Kapoor*, 115 F.3d 1332, 1334 (7th Cir. 1997). Under inquiry notice, the "statute of limitations applicable to suits under Rule 10b-5 begins to run not when the fraud occurs, and not when the fraud is discovered, but when (often between the date of occurrence and the date of the discovery of the fraud) the plaintiff learns, or should have learned through the exercise of ordinary diligence in the protection of one's legal rights, enough facts to enable him by such further investigation as the facts would induce in a reasonable person to sue within a year." *Id.*, citing *Law v. Medco Research, Inc.*, 113 F.3d 781, 785 (7th Cir. 1997). For inquiry notice, more than "merely suspicious circumstances" must exist. *Fujisawa*, 115 F.3d at 1337. "The facts constituting such notice must be sufficiently probative of fraud – sufficiently advanced beyond the stage of a mere suspicion, sufficiently confirmed or substantiated – not only to incite the victim to investigate but also to enable him to tie up any loose ends and complete the investigation in time to file a timely suit." *Id.* at 1335.

One important factor courts consider in determining when the statute of limitations begins is a party's ease of access to evidence that would trigger an appropriate inquiry. *See Marks v. CDW Computer Ctrs., Inc.*, 122 F.3d 363, 368 (7th Cir. 1997). Additionally, "[t]here must also be a suspicious circumstance to trigger a duty to exploit the access; an open door is not by itself a

reason to enter a room . . . . *How* suspicious the circumstance need be to set the statute of limitations running . . . will depend on how easy it is to obtain the necessary proof by a diligent investigation aimed at confirming or dispelling the suspicion." *Fujisawa*, 45 F.3d at 1335.

### 1. Claims Against Oceanic

ZCM Bermuda sued Oceanic and others in the 2001 Action for securities fraud on August 14, 2001. The Oceanic Defendants argue that the 2001 Action clearly demonstrates that Plaintiffs had actual notice of the alleged violations as of August 14, 2001.

#### a. Section 10(b) Claim

Both the 2001 Action and this case are based on a complex fraudulent investment scheme involving M.J. Select. Both actions involve ZCM's injury arising from their investment in M.J. Select. ZCM alleges in both cases that it reasonably relied on alleged misrepresentations regarding redemption of interest in M.J. Select when it purchased the partnership interests. Similarly, ZCM alleges in both actions that it suffered its losses as a result of the defendants' failure to redeem ZCM's partnership interests and shares, and because the defendants fraudulently converted and transferred ZCM's interests.

The 2001 Action alleged that Oceanic had made false and material misrepresentations in M.J. Select's Private Placement Memorandum ("PPM"). Although ZCM bases the case before the Court on a May 31, 2000 "assignment recognition agreement," Plaintiffs had that agreement as early as September 2001. (2001 Action, 01 C 6250, R. 134-1, Ex.B3 at 568-69, Tr. Of 9/24/01 Martin Allamian Dep.). In the 2001 Action and this case, Plaintiffs allege that Oceanic was the administrator, registrar, and transfer agent of M.J. Select. In both cases, Plaintiffs allege they demanded that Oceanic pay ZCM the proceeds from the redemption of its limited partnership

interests, and that Oceanic failed to recognize ZCM Bermuda as the owner of certain shares because it failed to process ZCM Bermuda's redemption request.

Even though in 2001 ZCM did not have all of the details of the alleged fraud committed by Oceanic, the allegations in the 2001 Action demonstrate that it knew enough facts to enable it to further investigate when it filed the 2001 Action. ZCM was on inquiry notice of its Section 10(b) claim when it filed the 2001 Action. The allegations against Oceanic are based on the same fraudulent scheme, the same injury, the same theories, the same cause of action, and the same omissions. The Court holds that as a matter of law Plaintiffs were on inquiry notice of their Section 10(b) claim when they filed the 2001 Action.

Although Plaintiff claims that Oceanic fraudulently concealed some crucial facts in this case, "when knowledge or notice is required to start the statute of limitations running, there is no room for equitable tolling." *Tregenza v. Great Am. Communications Co.*, 12 F.3d 717, 721 (7th Cir. 1993) (emphasis omitted). Equitable tolling does not apply to the statute of limitations in the securities fraud case. *Whirlpool*, 67 F.3d at 610. *See Lampf*, 501 U.S. at 363-64 ("[T]he equitable tolling doctrine is fundamentally inconsistent with the 1- and 3-year structure [of the statute of limitations] . . .. The 3-year limit is a period of repose inconsistent with tolling . . .. Because the purpose of the 3- year limitation is clearly to serve as a cutoff, we hold that tolling principles do not apply to that period."); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 289 F.Supp.2d 416, 426 (S.D.N.Y. 2003) ("Equitable tolling is inconsistent with the discovery period because if a defendant actively conceals a fraud, then plaintiff will not discover the facts suggesting the violation and the statute will not begin to run, making tolling unnecessary . . .. Equitable tolling is also fundamentally inconsistent with the repose period because that limit

is 'clearly to serve as a cutoff' and it would have no significance as an outside limit if it could be tolled'").

### b. Section 20(a) Claim

A Section 20(a) claim includes different elements than a Section 10(b) claim. In the amended complaint to the 2001 Action, ZCM alleged that Oceanic controlled M.J. Select. Although this allegation suggests ZCM was on inquiry notice regarding the general control element of a Section 20(a) claim, the Court cannot conclude as a matter of law that ZCM was on inquiry notice two years in advance of November 7, 2003 when it filed this suit of the specific control element of its Section 20(a) claim against ZCM. The Court admits that this issue is a close one, but at this stage, the Court cannot conclude "definitively" that ZCM has pled itself out of court as to the Section 20(a) claim against Oceanic. *See Barry Aviation Inc. v. Land O'Lakes Municipal Airport Com'n*, 377 F.3d 682, 688 (7th Cir. 2004). Accordingly, that claim remains.

### 2. Claims Against Rahming and Clowes

In contrast to Oceanic, the 2001 Action does not demonstrate that ZCM was on inquiry notice regarding Rahming and Clowes. The 2001 Action does not mention either individual nor detail their roles in the alleged fraud. At this stage of the litigation, the Court cannot conclude that the statute of limitations accrued as to Rahming and Clowes when ZCM filed the 2001 Action.

### C. Statute of Repose

The Sarbanes-Oxley five year statute of repose applies at this stage of the litigation for the same reasons the two year statute of limitations applies. ZCM's securities fraud claims involve alleged misrepresentations on May 31, 2000 and April 1, 2000. Because ZCM filed this action

on November 7, 2003, these dates comfortably fall within the five year statute of repose.

## V.     Standing

The Court addressed the standing issue in its August 2, 2004 Opinion. Defendants'
motion to dismiss for lack of standing is denied for the reasons set forth in that Opinion.

## VI.    Plaintiffs Sufficiently Allege Federal Securities Fraud Violations

### A.     Count II – Section 10(b)

Although the Court is dismissing Count II against Oceanic as time-barred, Plaintiffs'
Count II claim for securities fraud under Section 10(b) and Rule 10b-5 remains against Rahming.
Plaintiffs must allege that Defendant Rahming (1) made a false statement or omission; (2) of a
material fact; (3) with scienter; (4) in connection with the purchase or sale of securities; (5) upon
which Plaintiffs justifiably relied; and (6) the reliance proximately caused Plaintiffs' damages. *In
re HealthCare Compare Corp. Sec. Litig.*, 75 F.3d 276, 280 (7th Cir. 1996).

Both Federal Rule of Civil Procedure 9(b) and the PSLRA apply to these allegations and
impose heightened pleading requirements on Plaintiffs. Rule 9(b) requires that Plaintiffs plead
fraud allegations with particularity. Fed. R. Civ. P. 9(b). In addition to Rule 9(b), the strict
pleading mandates of the PSLRA apply to Plaintiffs' complaint. In order to meet the PSLRA's
dictates for a securities fraud claim, "the complaint shall specify each statement alleged to have
been misleading, the reason or reasons why the statement is misleading, and, if an allegation
regarding the statement or omission is made on information and belief, the complaint shall state
with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1) (2000).

### 1.     Alleged Misrepresentations and Omissions

Count II against Rahming is premised on the May 31, 2000 "assignment recognition

agreement," signed by Rahming.  Plaintiffs allege that Rahming made false and misleading

statements in this May 31 letter in connection with the purchase and sale of securities issued by

M.J. Select.  Plaintiffs allege that the assignment recognition agreement is false and misleading

because 1) it falsely represented that Oceanic would recognize ZCM MFC as the sole owner of

100% of M.J. Select's shares assigned to ZCM MFC and subsequently ZCM Bermuda; 2) it

falsely represented that ZCM MFC, and subsequently ZCM Bermuda, would have all the rights

and privileges that normally accompany sole ownership; 3) it failed to disclose the existence of a

discriminatory redemption policy; and 4) it failed to disclose that ZCM's share interest were not

redeemable in accordance with the Offering Memoranda because Oceanic and Rahming intended

to retain control over them.  They further allege that ZCM MFC and ZCM Bermuda would not

have accepted the assignment of, or purchased, the M.J Select securities if they had known the

true facts or the existence of the omitted facts.  These allegations sufficiently state a

misrepresentation in Count II.  Although Rahming characterizes this letter as "a perfunctory two-

sentence form letter" that does not contain any misrepresentations, that issue is not properly

decided at this stage of the litigation.

Rahming, relying on *Chiarella v. United States*, 445 U.S. 222, 228, 100 S. Ct. 1108, 63

L.Ed.2d 348 (1980), argues that she did not have a duty to disclose the allegedly omitted

information in the assignment recognition letter.  Such a duty arises if a defendant makes a

statement that would be misleading without disclosing certain other information.  "If one speaks,

he must speak the whole truth." *Stransky v. Cummins Engine Co., Inc.*, 51 F.3d 1329, 1331 (7th

Cir. 1995) (citations omitted).  ZCM alleges that Rahming made certain representations in the

assignment agreement, and therefore had a duty to disclose the omitted information because such

information was necessary to make Rahming's statements not misleading. At this stage, these allegations are sufficient to survive a motion to dismiss.

### 2. Scienter

Rahming also argues that Plaintiffs have failed to adequately plead scienter in Count II. Plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2) (2000). Plaintiffs may use "motive and opportunity" or "circumstantial evidence" to establish scienter under the PSLRA, as long as the allegations support a strong inference that the defendants acted recklessly or knowingly when they made the alleged misrepresentations. *766347 Ontario Ltd. v. Zurich Capital Mkts., Inc.,* 249 F.Supp.2d 974, 987 (N.D. Ill. 2003). *See also Chu v. Sabratek Corp.,* 100 F.Supp.2d 815, 823 (N.D. Ill. 2000).

ZCM alleges that Rahming knew or recklessly disregarded the falsity of the misrepresentations because she knew that Defendant Michael Coglianese and representatives of Martin James controlled the redemptions of share interests, she had followed each and every direction of Coglianese and Martin James regarding redemption payments without questioning whether such redemptions complied with M.J. Select's Offering Memorandum, and she had authorized payments from M.J. Select's account at Coglianese's direction without approval from Oceanic or Martin James. ZCM also alleges that Rahming had a motive to make the alleged misrepresentations and omissions because she "had the opportunity to realize monetary gains from these investments."

These scienter allegations focus primarily on the alleged omissions in the assignment recognition letter. They fail to give rise to a strong inference that Rahming knew or recklessly

disregarded the alleged misrepresentations regarding recognizing ZCM MFC as the sole owner of the shares with all of the rights and privileges that normally accompany such ownership. Plaintiffs do not allege with any particularity how Rahming knew in May 2000 that statements about ZCM Bermuda's ownership rights were false. Furthermore, as Rahming points out, ZCM has not alleged with any particularity how increasing the investments of M.J. Select would motivate Rahming when Oceanic received a flat $5,000 fee per year for its administrative services.[4]

With regard to the omission regarding the alleged discriminatory redemption policy, ZCM also has not alleged facts that satisfy the scienter requirements regarding Rahming. Accordingly, Count II is dismissed without prejudice.

## B.    Control Person Liability (Count III)

In Count III, ZCM alleges that Oceanic, Rahming and Clowes were control persons pursuant to Section 20(a) of the Exchange Act.[5]  In order to allege a Section 20(a) claim, Plaintiffs must allege (1) a primary securities violation; (2) each of the individual defendants exercised general control over the operations of M.J. Select; and (3) each of the individual defendants "possessed the power or ability to control the specific transaction or activity upon which the primary violation was predicated, whether or not that power was exercised." *Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 881 (7th Cir. 1992).  Rule 9(b)'s particularity

_____

[4] The flat fee of $5,000 per year for administrative services is set forth in the Administration Agreement.  On this motion to dismiss, the Court can consider this document because it is referred to in the Amended Complaint and central to ZCM's claims. *Dans v. Potter,* 301 F.Supp.2d 850, 856 (N.D. Ill. 2004).

[5] ZCM also named Coglianese in this count.  The Court addressed Coglianese in its August 2, 2004 Opinion.

requirements apply to Count III.

## 1.   General Control

The Oceanic Defendants challenge Plaintiffs' allegations of general and specific control. General control requires ZCM to allege that the Oceanic Defendants "actually participated in, that is, exercised control over, the operations of [M.J. Select] in general." *Harrison v. Dean Witter Reynolds, Inc.*, 79 F.3d 609, 614 (7th Cir. 1996). Defendants correctly point out that alleging mere titles does not suffice to establish control person liability. ZCM's allegations, however, go beyond mere titles. ZCM alleges that Oceanic had the power to appoint and did appoint M.J. Select's entire Board of Directors. They contend that Oceanic issued account and financial statements for M.J. Select. ZCM also alleges that Oceanic had the responsibility for processing all subscriptions, redemptions, transfers and assignments of M.J. Select's shares and issuing monthly financial statements, had the authority to request checks drawn on M.J. Select's bank accounts and direct wire transfers from such accounts to redeem shares, had the authority to refuse to comply with redemption requests, and had the power to place (and in fact placed) M.J. Select into liquidation. These allegations satisfy ZCM's burden regarding Oceanic's general control over M.J. Select.

Regarding Rahming and Clowes, ZCM alleges that they served as directors of M.J. Select from 1999 forward. Rahming requested legal opinions for M.J. Select, issued account and financial statements, and issued audited financial statements confirming fraudulent results. ZCM alleges that Rahming had the authority to place M.J. Select into liquidation and to delegate M.J. Select's business affairs. These allegations particularize Rahming's general control over the operations of M.J. Select.

28

In addition to being an M.J Select director, ZCM alleges that Clowes was the Chief Operating Officer of Oceanic. ZCM alleges that Clowes maintained a correspondent bank account on behalf of M.J. Select in the United States and directed the wire transfer of funds through this bank account. Plaintiffs contend that Clowes communicated frequently with Michael Coglianese regarding the daily operations of M.J. Select, issued account and financial statements to M.J. Select's shareholders, and issued audited financial statements confirming fraudulent results. ZCM has alleged Clowes' general control over M.J. Select's operations.

The Oceanic Defendants ask the Court to consider a declaration from Defendant Clowes regarding Oceanic's role as administrator. At the motion to dismiss stage, the Court cannot consider this information.

## 2.    Specific Control

ZCM alleges that the Oceanic Defendants had specific control over M.J. Select's offering documents that are the focus of the alleged primary violation in Count III. ZCM does not allege that any of the Oceanic Defendants drafted M.J. Select's Offering Memoranda. Instead, ZCM contends that the Oceanic Defendants had the power and ability to suspend the operations of M.J. Select unless it corrected the false statements in M.J. Select's Offering Memoranda or discontinued their use in soliciting new investors. They allege that Rahming and Clowes, as sole directors of M.J. Select, had this control. ZCM alleges that each of the Oceanic Defendants had the power to control the day-to-day operations of M.J. Select which gave them control over the Offering Memoranda. ZCM also contends that Oceanic, Rahming, and Clowes had the statutory and common law duty under Bahamian law to require the issuance of corrected offering documents. The Oceanic Defendants argue that the Administration Agreement did not give them

the authority to do so. This contention, however, raises an issue of fact that is not appropriate for the Court to resolve at this stage. ZCM has met its pleading burden.

## VII.    Illinois Securities Law (Count VII)

Count VII alleges that Oceanic violated the Illinois Securities Law of 1953 (the "Act"). 5 ILCS 5/1-5/19 (2002). The Act provides that "[e]very sale of a security made in violation of the provisions of this Act shall be voidable at the election of the purchaser . . . and the issuer, controlling person, underwriter, dealer or other person by or on behalf of whom said sale was made, and each underwriter, dealer, or salesperson who shall have participated or aided in any way in making the sale . . . shall be jointly and severally liable to the purchaser." 815 ILCS 5/13A. Oceanic must fall within the definition of an "issuer, controlling person, underwriter, dealer or other person by or on behalf of whom said sale was made" or that of an "underwriter, dealer or salesperson" who participated in the sale. ZCM alleges that Oceanic is a "controlling person" or a "primary violator." Oceanic argues that because it merely served as the administrator of M.J. Select, it cannot be held liable as either a principal violator or a control person under the Act.

The Act defines a "controlling person" as "any person offering or selling a security, or group of persons acting in concert in the offer or sale of a security, owning beneficially . . . either (i) 25% or more of the outstanding voting securities of the issuer of such security" or (ii) "such number of outstanding securities of the issuer of such security as would enable such person, or group of persons, to elect a majority of the board of directors or other managing body of such issuer." 815 ILCS 5/2.4. "[U]nlike the 1934 Exchange Act, where 'controlling persons' may be read broadly to reach many parties, the Illinois Act has been applied only to persons playing

30

'central and specialized roles.'" *Carlson v. Bear, Stearns & Co. Inc.*, 906 F.2d 315, 318 (7th Cir. 1990) (citation omitted). Moreover, "[w]hile overt action by a member of a controlling group would not always be required, there must be some showing of assent, approval or concurrence, albeit tacit approval, in the action of the group in selling securities, before an individual will be held liable for the actions of the controlling group. A person is not liable merely because one can add his shareholding onto the holdings of a controlling group and they still remain a controlling group. Some connection with the sale, or decision to sell, securities is required under the statute . . . ." *Froehlich v. Matz*, 93 Ill. App. 3d 398, 406, 48 Ill. Dec. 781, 788, 417 N.E.2d 183, 190 (1981).

ZCM does not allege that Oceanic owned any shares in M.J. Select. Instead, they argue that because Oceanic selected the directors for M.J. Select, the Court can infer that it owned sufficient shares in M.J. Select to do so. Based on the allegations in the Amended Complaint, the Court will not make this jump in logic. *See Purmal v. Supreme Ct. of Ill.*, No. 03 C 6061, 2004 WL 542528 at *1 (N.D. Ill. Feb. 26, 2004). Count VII is dismissed without prejudice.

Oceanic correctly points out that the term "primary violator" does not appear in the statute. ZCM does not allege that Oceanic was an underwriter, issuer, dealer or salesperson. They have not satisfied the pleading requirements.

## VIII.    Fraud and Conspiracy to Defraud (Counts VIII and IX)

Count VIII alleges common law fraud and Count XI alleges a conspiracy to defraud. The Oceanic Defendants seek to dismiss Counts VIII and IX for failure to plead fraud with the requisite particularity required under Rule 9(b).

The elements of a claim for fraud in Illinois are: (1) a false statement of material fact;

(2) knowledge or belief of the falsity by the party making the statement; (3) intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statements; and (5) damage to the other party resulting from such reliance. *WTM, Inc. v. Henneck*, 125 F.Supp.2d 864, 869 (N.D. Ill. 2000). Plaintiffs have satisfied the mandates of Rule 9(b) with respect to each of the Oceanic Defendants in Count VIII.

Regarding Count IX, in order to state a claim for conspiracy to defraud in Illinois, ZCM must allege "(1) a conspiracy; (2) an overt act of fraud in furtherance of the conspiracy; and (3) damages to the plaintiff as a result of the fraud." *Bosak v. McDonough*, 192 Ill. App. 3d 799, 803, 139 Ill. Dec. 917, 920, 549 N.E. 2d 643 . 646 (1989). The Court agrees that the allegations in Count IX regarding Defendants Oceanic, Rahming and Clowes do not meet Rule 9(b)'s particularity requirements. Count IX is dismissed without prejudice.

## VIII.  Unjust Enrichment (Count X)

The Oceanic Defendants argue that the Court should dismiss Count X because Plaintiffs have failed to allege that they retained a benefit to Plaintiffs' detriment. The Court addressed this issue in its August 2, 2004 Opinion, and denies the motion on this basis.

In addition, the Oceanic Defendants argue that the Court should dismiss the unjust enrichment count because Plaintiffs allege that an express contract governs their relationship, and thus unjust enrichment does not apply. Even if the the Oceanic Defendants' premise is accurate, a plaintiff may plead in the alternative. *See* Fed. R. Civ. P. 8(e)(2); *Pickrel v. City of Springfield, Ill.*, 45 F.3d 1115, 1119 (7th Cir. 1995). If a contract did not exist between the parties, then, assuming Defendants are correct, Plaintiffs could proceed on this count.

## IX. Conversion (Count XI)

Plaintiffs allege conversion against Defendant Oceanic in Count XI. "A conversion is any unauthorized act that deprives a person of his or her or its property permanently or for an indefinite time." *Turner Investors v. Pirkl*, 338 Ill. App. 3d 676, 681, 273 Ill. Dec. 423, 427, 789 N.E. 2d 323, 327 (2003) (citations omitted). In order to state a claim for conversion in Illinois, Plaintiff must allege that (1) it has a right to the property at issue; (2) it has an absolute and unconditional right to the immediate possession of that property; (3) it made a demand on the defendant for possession of the property; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property. *Cirrincione v. Johnson*, 184 Ill. 2d 109, 114, 234 Ill. Dec. 455, 458, 703 N.E.2d 67, 70 (1998). As explained by the Seventh Circuit, "[a]n asserted right to money normally will not support a claim for conversion. Only if the money at issue can be described as 'specific chattel,' . . . in other words, 'a specific fund or specific money in coin or bills,' . . . will conversion lie. Moreover, the plaintiff's right to the money must be absolute. It must be shown that the money claimed, or its equivalent, at all times belonged to the plaintiff and that the defendant converted it to his own use." *Horbach v. Kaczmarek*, 288 F.3d 969, 978 (7th Cir. 2002) (citations and quotations and emphasis omitted).

Here, the money at issue was used to purchase share interests in M.J. Select. Plaintiffs' interests did not represent the only purchased shares of M.J. Select. Further, ZCM has not alleged that its interests were separated in a specific fund from other interests in M.J. Select. Its interests, therefore cannot be deemed specific for conversion purposes. *See Fogel v. Gordon & Glickson, P.C.*, No. 03 C 1617, 2003 WL 22057194, at *3 (N.D. Ill. Sept. 3, 2003). Count XI is

33

dismissed.

## X.  Breach of Contract (Count XII)

For the reasons set forth in the Court's August 2, 2004 Opinion, Count XII stands.

## XI.  Intentional Interference with Contract (Count XIII)

In order to state a claim in Illinois for tortious interference with a contract, a plaintiff must allege the following elements: (1) the existence of a valid and enforceable contract between plaintiffs and another, (2) the defendant's awareness of the contract; (3) an intentional interference by the defendant inducing breach of contract; (4) a breach of contract caused by the defendant's acts; and (5) damages to the plaintiff. *Smock v. Nolan*, 361 F.3d 367, 372 (7th Cir. 2004). *See also Fieldcrest Builders, Inc. v. Antonucci*, 311 Ill. App. 3d 597, 611, 243 Ill. Dec. 740, 752, 724 N.E.2d 49, 61 (1999). Plaintiffs have alleged each of these elements. Count XIII stands.

## XII.  Breach of Fiduciary Duty (Count XIV)

For the reasons set forth in the Court's August 2, 2004 Opinion regarding Defendant Coglianese, Count XIV stands.

## XIII.  Breach of Contract (Count XVI)

Plaintiffs allege that Defendant Oceanic entered into a written contract with ZCM MFC on May 31, 2000 in which it promised to recognize ZCM MFC as the sole owner of 100% of the shares that Martin James had invested with them, and confirmed that ZCM MFC would have all the rights and privileges that accompany such ownership. ZCM MFC thereafter transferred its rights under this contract to ZCM Bermuda, and Oceanic expressly recognized these assignments to ZCM Bermuda. Plaintiffs allege that Oceanic breached this contract with ZCM Bermuda by

refusing to honor its valid redemption requests and converting ZCM Bermuda's interests in M.J. Select at the request of Martin James. Plaintiffs sufficiently allege a breach of contract claim based on the May 31, 2000 assignment recognition agreement.

## XIV. Bahamian Law

ZCM premises Counts XVII and XVIII on violations of Bahamian law. In Count XVII, ZCM Bermuda alleges that the Oceanic Defendants violated the Bahamian Mutual Funds Act, 1995, and regulations thereunder. In Count XVIII, ZCM alleges that the Oceanic Defendants breached their common law duty of care under Bahamian law. The Oceanic Defendants argue that ZCM's Bahamian law claims do not apply outside the Bahamas.

Regarding Count XVII, the Oceanic Defendants argue that no legislation is presumed to operate outside the territorial jurisdiction of the country enacting it. Although "under international law, a state may not exercise authority to enforce law that it has no jurisdiction to prescribe," Restatement (Third) of Foreign Relations Law § 431 (1987) (comment a), for the purposes of this § 431, a "judgment of a court awarding or denying damages in a civil action would generally not be seen as enforcement." Restatement (Third) of Foreign Relations Law § 431 (comment b). Further, ZCM may raise, and this Court is authorized to determine, an issue concerning the law of a foreign country. Fed. R. Civ. P. 44.1; *See, e.g., Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842 (7th Cir. 1999) (Mexican law governed substantive issues); *Cummings v. Club Mediterranee, S.A.*, No. 01 C 6455, 2003 WL 22462625 (N.D. Ill. Oct. 29, 2003) (court applied Bahamian law on all substantive issues). Indeed, Federal Rule of Civil Procedure 44.1 provides that "[a] party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonable written notice." This rule contemplates that

federal courts can entertain questions of foreign law. Accordingly, ZCM may plead this cause of action.

Count XVIII alleges that Oceanic breached its common law duty of care. This cause of action is not based in statute, but the common law. Thus, Oceanic's argument regarding statutory effect does not apply to this cause of action. Additionally, as discussed in the previous paragraph, this Court is authorized to determine issues of foreign law. Accordingly, ZCM may plead this cause of action.

## CONCLUSION

The Oceanic Defendants' motion to dismiss is granted in part and denied in part. It is granted with respect to Count II. Count II is dismissed with prejudice as to Oceanic, and without prejudice as to Rahming. It is also granted without prejudice as to Counts VII, IX and XI. It is denied as to Counts III, VIII, X, XII through XV, XVII and XVIII. Plaintiffs have until October 22, 2004 to file a Second Amended Complaint consistent with this opinion and the Court's August 2, 2004 Opinion.

Dated:   September 22, 2004                    ENTERED:

_____

AMY J. ST. EVE
United States District Court Judge