IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ZURICH CAPITAL MARKETS INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | No. 03 C 7960 |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL COGLIANESE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Defendants Relms Limited, Millennium Fund I, Ltd., Marcus J. Mahy, Landmark Trust (Bermuda) Limited, John Caseley, Ambassador Directors Limited, Ian Ledger and Landmark Management, S.A.M. (collectively, the "Landmark Defendants") move to dismiss the Second Amended Complaint in its entirety as pled against them. For the reasons discussed below, the Court grants in part and denies in part the Landmark Defendants' motion.

## BACKGROUND

### I.    Procedural Background

On August 2, 2004, the Court granted in part and denied in part the Landmark Defendants' motion to dismiss the Amended Complaint. The Court gave ZCM leave to replead the claims it dismissed. On November 22, 2004, ZCM filed the Second Amended Complaint in this case. In the Second Amended Complaint, ZCM alleges the following claims against the Landmark Defendants: violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder against Millennium (Count IV); violation of Section 20(a) of the Exchange Act

against Relms, Landmark Bermuda, Landmark Monaco, Mahy, Caseley, Ledger, and

Ambassador (Count V); breach of investment advisory contracts against Millennium (Count VI);

conspiracy to defraud against all Landmark Defendants (Count IX); unjust enrichment against all

Landmark Defendants (Count X); and breach of fiduciary duty under common law of Illinois

against Millennium, Mahy, Caseley, Ambassador, Ledger, Landmark Monaco, and Landmark

Bermuda (Count XIV).

## II.     Factual Background

The Court provided a detailed discussion of ZCM's pleadings in the Amended Complaint

in *Zurich Capital Markets v. Coglianese et al.,* 332 F.Supp.2d 1087 (N.D. Ill. 2004).  To the

extent ZCM's pleadings in the Second Amended Complaint differ from the Amended Complaint,

the Court will address those differences in its Analysis below.

## ANALYSIS

## I.     Legal Standard

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

sufficiency of a complaint, not the merits of the case.  *Triad. Assocs, Inc. v. Chicago Hous.

Auth.,* 892 F.2d 583, 586 (7th Cir. 1989).  A court must accept as true all well-plead allegations of

a complaint.  *Thompson v. Illinois Dep't of Prof'l Regulation,* 300 F.3d 750, 753 (7th Cir. 2002).

Courts construe ambiguities in favor of the plaintiff.  *Id.*

## II.     ZCM's Section 10(b) Claim For Securities Fraud

Count IV is a securities fraud claim against Defendant Millennium pursuant to section

10(b) of the Securities Exchange Act and Rule 10b-5.  The "basic elements" of a section 10(b)

claim include:  (1) a material misrepresentation or omission, (2) "scienter, *i.e.*, a wrongful state

of mind," (3) a connection with the purchase or sale of a security, (4) "reliance, often referred to in cases involving public securities markets (fraud-on-the-market cases) as 'transaction causation,'" (5) economic loss, and (6) loss causation. *Dura Pharms., Inc. v. Broudo*, __ U.S. __, 125 S.Ct. 1627, 1631, 161 L.Ed.2d 577 (2005). The Landmark Defendants first argue that ZCM has failed to properly plead the agency relationship between Millennium and GAD as principals, and Coglianese and Martin James, as agents. Because ZCM has failed to properly allege agency, the Landmark Defendants argue, it has failed to properly allege that they either made any misrepresentation or acted with the required scienter. The Landmark Defendants next argue that ZCM has failed to allege that they had a duty to disclose. The Court addresses each of these arguments in turn.

### A. Whether ZCM Has Properly Pled Agency

In its Amended Complaint, ZCM alleged securities fraud against Millennium, GAD,[1] Delta, and Sonic based on an agency theory of liability under Rule 10b-5. In its August 2, 2004 opinion, the Court dismissed ZCM's securities fraud claims against the Landmark Defendants without prejudice because ZCM had failed to sufficiently allege an agency relationship. Specifically, the Court noted:

> The mere use of the label "agent" does not sufficiently establish an agency relationship in order to impose liability under Rule 9(b) or the PSLRA where the agency relationship and the fraud claims are intertwined. A plaintiff must plead facts showing the existence and scope of the agency relationship in order to establish primary liability under Section 10(b), especially where, as here, the agency relationship is not based on the classic corporation/employee model where

---

[1]Only Millennium, as a member of the Landmark Defendants, moves to dismiss this Count. The Court, nonetheless, addresses ZCM's allegations against GAD because ZCM partially bases its Section 20(a) control person allegations on GAD's alleged primary securities law violations.

> a corporation can only act[] through its employees and agents. *See Lachmund v. ADM Investor Services, Inc.,* 191 F.3d 777, 783 (7th Cir. 1999).

*ZCM,* 332 F.Supp.2d at 1106.

ZCM alleges that Millennium and GAD had an agency relationship with Michael Coglianese, whereby Millennium and GAD were principals and Coglianese was the agent. (R. 84-1; Sec. Am. Comp. ("SAC") ¶ 52.) In his agency role, ZCM alleges that Coglianese located sources of capital for Millennium and GAD. It alleges that GAD and Millennium entered into an agreement with Coglianese whereby he "agreed to raise capital for investment in the two funds through the formation and sale of 'feeder funds' which, included the offer and sale of M.J. Select shares." (SAC ¶ 64.) ZCM further alleges that pursuant to these agreements, "and in inconformity [sic] with customary industry practices, Coglianese was authorized to: (i) create or engage others to create the corporate entities for the feeder funds; (ii) manage or engage others to manage the day-to-day activities of the funds; (iii) promote the funds and actively solicit potential investors; and (iv) create offering memoranda and make other written and oral representations to potential investors." (*Id.*) Millennium, according to the Second Amended Complaint, "retained the right to direct the manner and method in which Coglianese performed each of these activities." (*Id.*) In addition, ZCM alleges supporting facts regarding Millennium and GAD's alleged agency relationship with Coglianese. (*Id.* ¶¶ 67, 69, 82, 89.)

ZCM also alleges that GAD and Martin James had an agency relationship where GAD was the principal and Martin James was the agent. (*Id.* ¶¶ 52, 65.) In operating as GAD's agent, ZCM alleges that Martin James found sources of capital for the fund. (*Id.* ¶ 65.) It alleges that GAD and Martin James entered into an agreement whereby James agreed to raise capital for investment in the funds through the sale of shares in M.J. Select. ZCM further alleges that,

under these agreements, James was authorized to "(i) create or engage others to create M.J. Select; (ii) promote M.J. Select and actively solicit potential investors; and (iii) create offering memoranda and make other written and oral representations to potential investors regarding M.J. Select." (*Id.*) According to the Second Amended Complaint, GAD "retained the right to direct the manner and method" in which James performed these activities. (*Id.*)

At this stage, these agency allegations, taken as a whole, sufficiently establish the existence and scope of the agency relationship as required under Rule 9(b) and the PSLRA.[2] An agency relationship results from the "manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Rest. 2d Agency § 1. When two parties have established an agency relationship, the principal "has the right to control the conduct of the agent with respect to matters entrusted to him." *Id.* § 14. "A principal is subject to liability for loss caused to another by the other's reliance upon a tortious representation of a servant or other agent, if the representation is: (a) authorized; (b) apparently authorized; or (c) within the power of the agent to make for the principal." *Id.* § 257. A court may impute an agent's knowledge to the principal when that knowledge relates to a matter as to which the agent acts within his or her power to bind the principal or upon which it is his or her duty to give the principal information. *Id.* § 272.

ZCM alleges the factual basis for Coglianese's and James' authority – an express

<hr>

[2]Neither party addresses whether the Court should look to the law of a certain state or federal common law in determining whether an agency relationship exists sufficient to impute an alleged 10b-5 violation to the principal. Nonetheless, the Seventh Circuit has recognized that Illinois law of agency, as well as the federal common law of agency, accord with the Restatement. *See Opp v. Wheaton Van Lines, Inc.,* 231 F.3d 1060, 1064 (7th Cir. 2000). Accordingly, the Court applies the law of agency expressed from the Restatement for purposes of deciding this motion.

agreement.  (SAC, ¶¶ 64, 65.)  ZCM alleges the scope of that authority, pursuant to the

agreement.  (*Id.*)  ZCM also alleges a factual basis for Millennium and GAD, as principals,

having the power to control the conduct of their agents.  (*Id.*)  Taken as true, these allegations set

forth the factual predicate for an agency relationship between Millennium, GAD, and Coglianese

and between GAD and Martin James.  *See Rand Bond of N. Am., Inc. v. Saul Stone & Co.,* 726

F.Supp. 684, 687 (N.D. Ill. 1989) ("though federal practice involves a notice-pleading regime

rather than the fact pleading demanded by Illinois courts, it remains incumbent on the pleader to

allege some factual predicate (even though generalized rather than evidentiary in nature) to

create the inference [of agency]").  Accordingly, ZCM has stated a claim for an agency

relationship between Millennium, GAD, and Coglianese and between GAD and Martin James.

### B.    Whether ZCM Has Properly Pled Scienter

The Landmark Defendants' sole basis for arguing that ZCM failed to allege scienter

against Millennium is that ZCM failed to properly allege agency, and therefore the Court cannot

impute Coglianese's scienter to Millennium.  Because the Court finds that ZCM has properly

alleged agency and that Coglianese prepared the Offering Memoranda in the scope of his agency

for Millennium, as discussed above, the Landmark Defendants' argument fails.  *See UCAR*

*Intern., Inc. v. Union Carbide Corp.,* 2004 WL 137073, at *13 (S.D.N.Y. Jan. 26, 2004)

(citations omitted) ("Knowledge and actions of a corporation's employees and agents are

generally imputed to the corporation where the acts are performed on behalf of the corporation

and are within the scope of their authority").

### C.    Whether ZCM Has Failed to Allege A Duty To Disclose

As set forth by the Landmark Defendants, a party has a duty to disclose when a failure to

speak renders its prior statements misleading. *Tricontinental Indus., Ltd v. Anixter,* 184 F.Supp.2d 786, 788 (N.D. Ill. 2002) (citation omitted); *Donovan v. ABC-NACO Inc.,* 2002 WL 1553259, at *5 (N.D. Ill. July 15, 2002). The Landmark Defendants argue, therefore, that because Plaintiffs do not properly allege any statement attributable to Millennium, there is no duty to disclose. As discussed above, ZCM has properly alleged an agency relationship between Coglianese and Millennium, such that the Court may impute the alleged misstatements by Coglianese (SAC, ¶¶ 94, 95, 112, 218) to Millennium. Accordingly, accepting ZCM's pleadings as true, because Millennium chose to speak, through Coglianese, it had a duty to disclose accurate information related to those statements. *Lennon v. Christoph,* No. 94 C 6152, 1997 WL 57150, at *6 (N.D. Ill. Feb. 7, 1997) (citing *Schlifke v. Seafirst Corp.,* 866 F.2d 935, 944 (7th Cir. 1989)).[3]

Further, as discussed in Section VI of this Analysis, below, ZCM alleges facts in its Second Amended Complaint sufficient to establish that a fiduciary relationship existed between ZCM and Millennium. Accordingly, ZCM has also alleged facts sufficient to establish a duty to disclose on the part of the Millennium, because those parties had a "fiduciary or other similar relation of trust and confidence." *Chiarella v. U.S.,* 445 U.S. 222, 228, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980).

III.    **Control Person Liability – Section 20(a)**

Count V is a securities fraud claim against Relms, Landmark Bermuda, Landmark

---

[3]The Landmark Defendants do not raise, and the Court does not address, the issue of whether Millennium must have been aware of Coglianese's alleged misrepresentations to Plaintiffs in order for such statements to place Millennium under a duty to disclose accurate information.

Monaco, Mahy, Caseley, Ledger, and Ambassador pursuant to Section 20(a) of the Securities Exchange Act. Section 20(a) provides: "Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a). In order to state a Section 20(a) claim, ZCM must allege the following: (1) a primary securities violation; (2) each of the individual defendants exercised general control over the operations of M.J. Select; and (3) each of the individual defendants "possessed the power or ability to control the specific transaction or activity upon which the primary violation was predicated, whether or not that power was exercised." *See Harrison v. Dean Witter Reynolds, Inc.,* 974 F.2d 873, 881 (7th Cir. 1992). In its Second Amended Complaint, ZCM alleges that Relms, Landmark Bermuda, Mahy, Landmark Monaco, Caseley, Ledger, and Ambassador, were control persons of Millennium, (SAC, ¶¶ 232, 235), and that Ambassador, Caseley, Landmark Monaco, and Ledger were control persons for GAD.[4] (*Id.* ¶¶ 238, 244). Defendants attack ZCM's pleadings of control person liability, arguing that as with their First Amended Complaint, ZCM has failed to allege any of the elements of control person liability.

## A.     Primary Violation

Regarding a primary violation, as discussed above, ZCM has properly pled the agency

---

[4]ZCM also alleges that John Does 6-30 are liable as control persons for both Millennium and GAD's conduct. (SAC, ¶ 244.)

relationship between Millennium and GAD, as principals, and Coglianese, as agent, and between GAD, as principal, and Martin James, as agent, and therefore has alleged a primary securities violation.

**B.      General Control**

Regarding general control, Defendants argue that ZCM merely "guesses" as to the responsibilities of these Defendants as directors and administrators that render them "control persons" under Section 20(a).  Defendants' argument fails.  While Defendants doubt ZCM's factual basis for making its allegations regarding control person liability, this argument is irrelevant for purposes of a Rule 12(b)(6) motion, where the Court accepts the plaintiff's allegations as truth.  ZCM alleges that Landmark Monaco formed Millennium, shared its place of business with Monaco until April 2000 (SAC ¶ 41), and provided administrative services to Millennium and GAD (*Id.* ¶ 45).  Further, ZCM alleges that the Administrative, Register & Transfer Agency Agreement between Millennium and Landmark Moncao and Landmark Bermuda provided that Landmark Monaco and Landmark Bermuda had responsibility for the following duties:

> (1) maintenance of Millennium's shareholder registry and other required corporate books and records; (2) processing all subscriptions, redemptions and transfers of Millennium shares; (3) opening and maintaining Millennium's bank accounts; (4) establishing and maintaining Millennium's principal office; (5) drawing funds from Millennium's bank accounts to pay legal and accounting fees, redemption requests and salaries and expenses; and (6) mailing and delivering annual and monthly reports to shareholders.

(*Id.* ¶ 236.)  Regarding Ambassador, Caseley, Ledger, and Mahy's[5] control of GAD and

_____

[5]ZCM only alleges control person liability against Mahy as to Millennium, and not GAD. (SAC ¶ 238.)

Millennium, ZCM alleges that, through their positions as directors, they had the duties of:

> (1) selecting, retaining, and monitoring the performance of GAD's [and Millennium's] administrator, registrar and transfer agent; (2) securing investors and other sources of capital for GAD [and Millennium]; (3) selecting and retaining GAD's [and Millennium's] investment manager and accountant; (4) ensuring that GAD [and Millennium] complied with all legal and regulatory requirements for private investment funds, which included satisfaction of al applicable tax obligations; (5) monitoring the safety and performance of GAD's [and Millennium's] investments and other assets; (6) ensuring that all required audits were adequately performed; and (7) preparing and approving annual and monthly reports to shareholders.

(SAC ¶¶ 239, 240.) Regarding Relms, ZCM alleges that, through:

> (1) its role as creator and majority, if not sole owner, of Millennium; (2) its selection of the directors, administrators and registered agent for Millennium; (3) its role as investment manager for Millennium; and (4) its participation in the day-to-day management and operations of Millennium, Relms had the power and ability to control and influence, and did control and influence, directly and indirectly, the general day-to-day operations, policies, and decisions of Millennium.

(*Id.* ¶ 233.) While mere allegations of titles are insufficient to state a claim for control person liability under Section 20(a), *Starr v. !Hey, Inc.,* 2003 WL 21212596, at *4 (N.D. Ill. May 23, 2003) (citing cases), allegations of both title and responsibilities may be sufficient to establish control. *See Zurich Capital Markets, Inc. v. Coglianese,* No. 03 C 7960, 2004 WL 2191596, *14 (N.D. Ill. Sep. 23, 2004); *Wafra Leasing Corp. 1999-A-1 v. Prime Capital Corp.,* No. 01 C 4313, 2004 WL 1977572, *9 (N.D. Ill. Aug. 31, 2004).[6] Accepted as true, as required by Rule 12(b)(6), these allegations sufficiently allege general control.

---

[6]*Also see Metawave Comms. Corp. Sec. Litig.,* 298 F.Supp.2d 1056, 1087 (W.D. Wash. 2003); *In re Adaptive Broadband Sec. Litig.,* No. 01-1092, 2002 WL 989478, at *18-19 (N.D. Cal. Apr. 2, 2002).

## C.      Specific Control

Regarding specific control, Defendants argue that ZCM has failed to allege that each of the Landmark Defendants "possessed the power or ability to control the specific transaction or activity upon which the primary violation was predicated, whether or not that power was exercised." *See Harrison,* 974 F.2d at 881.  ZCM alleges that Landmark Monaco, Landmark Bermuda, Mahy, Ledger, Caseley, and Ambassador "had a statutory duty under the laws of the Commonwealth of the Bahamas to ensure that Millennium's [and GAD's] activities fully complied with all applicable laws."  (SAC ¶¶ 237, 242.)  This general allegation of a statutory duty fails to satisfy the pleading requirements of Rule 9(b) that apply to Section 20(a) claims. *See Johnson v. Tellabs,* 303 F.Supp.2d 941, 969 (N.D. Ill. 2004).  Absent any further information about the alleged statute, including the specific identity of the statute, the Court is unable to determine whether such a duty in fact conferred upon these Defendants the power and ability to control the specific transaction at issue.  Generally, the existence of a statutory duty to make sure that an underlying transaction complies with the law is insufficient alone to prove that a party actually had the power and control over that underlying transaction.[7]  Accordingly, ZCM's argument that these Defendants' statutory duties gave them specific control over the underlying transaction fails.

ZCM also argues that it has alleged the responsibilities of Landmark Monaco, Landmark Bermuda, Mahy, Ledger, Caseley, and Ambassador, as discussed above regarding general

---

[7]Indeed, it seems probable that the alleged statute places a duty on any party to the extent that party has control or power over the underlying transaction.  If this is the case – which the Court cannot determine because it does not know the specific statute – ZCM's argument is circular, because it is using that statute to prove that these Defendants were in positions of power and control.

control, and that based on these responsibilities, these Defendants had the power to withhold either funding or services from Millennium and/or GAD in order to compel them to correct their misleading information.  (SAC ¶¶ 237, 242.)  Regarding ZCM's Section 20(a) claims against these Defendants, ZCM has sufficiently alleged specific control.  Given that ZCM has alleged the specific responsibilities of Landmark Monaco, Landmark Bermuda, Mahy, Ledger, Caseley, and Ambassador related to Millennium or GAD (SAC ¶¶ 236, 240),[8] ZCM's allegations that these Defendants had the power and control to compel Millennium or GAD to disclose corrected information as alleged in paragraph 218(d) are sufficient.

Regarding Relms, in its August 2, 2004 opinion, the Court found that ZCM had sufficiently pled control person liability against Relms.  The Landmark Defendants request that the Court reconsider this holding, arguing that ZCM's allegations of specific control regarding Relms were essentially identical to those regarding the other Landmark Defendants that the Court found to be insufficient.  The Court denies ZCM's request for reconsideration.  In its Amended Complaint, and in the Second Amended Complaint, ZCM alleges that Relms was the creator and majority owner of Millennium, selected the entire board of directors, selected the administrator and registered agent for Millennium, was the investment manager for Millennium, and participated in the day-to-day management and operations of Millennium.  (R. 15-1; Am.

---

[8]The Landmark Defendants argue in footnote 23 of their Reply Brief that the Court has already found insufficient ZCM's allegations that the alleged control persons could have stopped the operations of, or the acceptance of capital by, Millennium or GAD in order to compel those parties to disclose corrected information, which ZCM included in its Amended Complaint.  In its Amended Complaint, however, ZCM failed to allege the specific responsibilities of those alleged control persons that gave them the control or power to stop such operations or acceptance of capital.  Having alleged with particularity those job responsibilities of the alleged control persons, the existing allegations are now sufficient.

Compl. ¶¶ 229, 230.; SAC ¶¶ 233).  Based on these responsibilities, Relms had the power and control over the underlying failure of Millennium to disclose, because Relms "could have refused to provide additional capital or to perform all of the [above] services unless and until Millennium corrected the misrepresentations and cured the omissions in the M.J. Select offering documents."  (SAC ¶ 234.)  Accordingly, ZCM has sufficiently pled specific control of Relms over Millennium.

Accordingly, ZCM has sufficiently alleged control person liability under Section 20(a) against Relms, Landmark Monaco, Landmark Bermuda, Mahy, Ledger, Caseley, and Ambassador based on primary violations consisting of failures to disclose.  ZCM also alleges that Landmark Monaco is liable as a control person under Section 20(a) for GAD's violation under Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.  (*Id.* ¶ 244.)  ZCM, however, fails to offer any factual predicate for this conclusory allegation, and therefore fails to sufficiently state a claim under Section 20(a) against Landmark Monaco with respect to GAD.

## IV.     Breach of the Investment Advisory Contracts (Count VI)

In Count VI, ZCM brings a claim for breach of investment advisory contracts against Millennium.  Plaintiffs previously brought a claim under the Investment Advisers Act, (R. 15-1; First Am. Compl. ¶¶ 241-254), which the Court dismissed because ZCM lacked standing given that it was not a party to any contract at issue and had not alleged that it was a third party beneficiary.  The Court also dismissed ZCM's Investment Advisers Act claim because ZCM failed to meet any of the particularity requirements of Rule 23.1.  Plaintiffs now seek to impose liability as a third party beneficiary to a contract.

In Count VI, ZCM alleges that M.J. Select and Defendants Delta, GAD, Millennium, and

Sonic had entered investment advisory contracts.  (SAC ¶ 246.)  ZCM alleges that it was a third party beneficiary to each investment advisory contract between M.J. Select and these Defendants "because the intention of the contracting parties was to confer a direct benefit on the shareholders of M.J. Select, including Plaintiffs, in that the investment advisers' purpose and incentive was to increase the net asset value of the investors' shares by making and/or referring investments in accordance with M.J. Select's published trading strategy."  (*Id.* ¶ 248.)  ZCM alleges that Defendants Delta, GAD, Millennium, and Sonic breached their respective investment advisory agreements by "knowingly and intentionally advising M.J. Select to invest in, and investing or causing the investment of M.J. Select's capital in, Reg. D and other highly illiquid venture capital funds in direct contradiction to the trading strategy, liquidity, and other representations set forth in the offering documents."  (*Id.* ¶ 249.)  As a result, Defendants were enriched at Plaintiff's expense.  (*Id.*)

The Landmark Defendants argue that the Court's prior ruling regarding ZCM's standing to bring a claim under the Investment Advisers Act is determinative of their standing to bring this state law claim for breach of contract.  The Court disagrees.  ZCM's allegations in its Amended Complaint attempted to state a claim under the Investment Advisers Act, a different law with different requirements than state contract law claims.  A third party beneficiary's standing to bring a common law breach of contract claim is well-settled.  *Tradewinds Aviation, Inc. v. Jet Support Servs,, Inc.,* No. 04 C 1406, 2004 WL 2533728 (N.D. Ill. Sep. 28, 2004) (third party beneficiaries have standing to bring a breach of contract claim).  ZCM has sufficiently pled its standing as a third party beneficiary to bring its breach of contract claim.

The "well-established rule in Illinois is that if a contract is entered into for the direct

benefit of a third person, the third person may sue for a breach of the contract in his or her own name, even though the third person is a stranger to the contract and the consideration." *Olson v. Etheridge*, 177 Ill.2d 396, 404, 686 N.E.2d 563, 566, 226 Ill.Dec. 780, 783 (Ill.1997). To prevail on a breach of contract claim under Illinois law, a plaintiff must establish: (1) the existence of a valid and enforceable contract, (2) his own performance under the terms of the contract, (3) a breach of the contract by the defendant, and (4) an injury suffered as a result of the defendant's breach. *Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302, 311 (N.D. Ill.1995); *Aardvark Art, Inc. v. Lehigh/Steck-Warlick, Inc.*, 284 Ill.App.3d 627, 220 Ill.Dec. 259, 672 N.E.2d 1271, 1275 (Ill.App.Ct.1996). Federal court is a notice pleading jurisdiction, therefore, complaints need not contain elaborate factual recitations. *Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir.1994).

ZCM alleges that they were third party beneficiaries of each of the investment advisory contracts between M.J. Select and Delta, GAD, Millennium, and Sonic because "the intention of the contracting parties was to confer a direct benefit on the shareholders of M.J. Select, including Plaintiffs." (SAC ¶¶ 247-48.) Specifically, ZCM alleges that the agreements at issue provided that GAD and Millennium would "invest in accordance with the trading strategy outlined in M.J. Select's Offering Memoranda." (*Id.* ¶ 247.) ZCM further alleges that the Offering Memoranda provides: "(1) one of the "Advantages of the Fund" is the investors' ability to benefit from the "professional trading management" provided by the Fund's investment managers and trading advisers; and (2) investors recover such benefits by exercising their rights to redeem at the appropriate net asset value (NAV) per share - NAVs that are the investment advisers' jobs to increase." (*Id.* ¶ 248.) The Landmark Defendants contend that ZCM has failed to allege

sufficient facts regarding either the existence of an agreement or an intention under that agreement to benefit ZCM. Plaintiffs, however, need not plead facts on a breach of contract claim. *See Kaplan v. Shure Bros.*, 153 F.3d 413, 419 (7th Cir. 1998) (complaint alleging breach of warranty need not plead facts showing that plaintiff satisfied the privity requirement, as long as he put the defendant on notice of the claim). ZCM has pled both the existence and scope of the agreement and that ZCM was a third-party beneficiary to that agreement, putting Defendants on notice of this claim. Furthermore, it is clear under Illinois law that the contract does not have to specifically name the third-party beneficiary, as long as it defines a third-party by description of class, and the parties have identified the plaintiff at the time performance is due. *Altevogt v. Brinkoetter*, 85 Ill.2d 44, 55-56, 51 Ill.Dec. 674, 421 N.E.2d 182, 187 (Ill.1981). *See also Industrial Hard Chrome, Ltd. v. Hetran, Inc.*, 76 F.Supp.2d 903, 905 (N.D. Ill. 1999). Accepting, ZCM's pleadings as true under Rule 12(b)(6), the SAC, by incorporating the Offering Memoranda, identifies ZCM as an investor.[9] (SAC ¶¶ 247-48.)

The Landmark Defendants rely on *Wallace v. Chicago Hous. Auth.*, 298 F.Supp.2d 710, 724 (N.D. Ill. 2003) for the proposition that a court may dismiss an alleged third party beneficiary's breach of contract claim if the pleadings establish that the "language and structure" of the agreement do not demonstrate the parties' intent to confer explicit benefits on the plaintiff. The pleadings in *Wallace* confirmed that the parties to the agreement did not intend for the plaintiff to be a third party beneficiary to the contract. Unlike in *Wallace,* here, the pleadings are

---

[9]The Court does not rule as a matter of law that ZCM was a third party beneficiary. *See MCI Worldcom Network Servs. v. Atlas Excavating, Inc.,* 2005 WL 1300766, *12 (N.D. Ill. Feb. 23, 2005) (denying motion to dismiss third party beneficiary breach of contract claim, but noting that "[w]hether or not plaintiff is actually a third party beneficiary to the contract is an issue for another day.")

not conclusive on this issue, and the Court cannot determine as a matter of law that ZCM is not a third party beneficiary of the alleged agreements.[10]  Accordingly, ZCM has satisfied notice pleading standards for its breach of contract claim and the Court denies the Landmark Defendants' motion to dismiss this claim.

## V.        Conspiracy To Defraud (Count IX)

        In Count IX, ZCM brings a claim for conspiracy to defraud against all Landmark Defendants.  In its August 2, 2004 opinion, the Court dismissed ZCM's conspiracy to defraud claim because ZCM failed to allege an agreement to participate in a conspiracy.  In its Second Amended Complaint, ZCM alleges that Coglianese, Caseley, Ledger, GAD, Landmark Monaco, Delta, and Sonic entered into an agreement with each other and Martin James to participate in the conspiracy to defraud M.J. Select investors in or about 1993.  (SAC ¶ 283.)  Further, Millennium, Landmark Bermuda, and Mahy joined and agreed to participate in the conspiracy in or about 1998, including by authorizing their agent Coglianese to promulgate additional offering memoranda repeating the same fraudulent misrepresentations and omissions included in prior memoranda.  (*Id.* ¶ 283.)  ZCM sets forth specific details about each of the Landmark Defendants' knowledge and involvement in the fraud, either themselves, or through their agents. (*e.g., Id.* ¶¶ 529, 59, 64, 65, 67, 69, 92, 99-95, 108, 112, 218, 223, 224, 274.)  As ZCM points out, a plaintiff can prove the existence of a conspiracy through circumstantial evidence.  *State Farm Mut. Auto. Ins. Co. v. Abrams,* No. 96 C 6365, 2000 WL 574466, at *20 (N.D. Ill. May 11,

---

[10]The Landmark Defendants also rely on *Harris Bank Libertyville v. Romtech America Corp.,* 1992 WL 396775, at *3 (N.D. Ill. Dec. 23, 1992) and *Primavera Familienstiftung v. Askin,* 1996 WL 494904, at *17 (S.D.N.Y. Aug. 30, 1996).  While mere status as a shareholder does not allow one to sue for breach of the corporation's contract, here, ZCM alleges that the parties to the contracts intended to benefit ZCM.

2000) ("Because a conspiracy by nature is secretive, direct evidence is rarely available, and therefore a plaintiff is entitled to prove a conspiracy by circumstantial evidence") (citing *United States v. Nesbitt,* 852 F.2d 1502, 1510 (7th Cir. 1988)). Further, as discussed above, ZCM has sufficiently alleged the existence and scope of the agency relationship between Millennium and Coglianese. Accordingly, ZCM has sufficiently alleged its claim for a conspiracy to defraud.

## VI. ZCM's Unjust Enrichment Claim

ZCM's Count IX alleges unjust enrichment against the Landmark Defendants. The Landmark Defendants first argue that ZCM lacks standing to bring its unjust enrichment claim. Next, the Landmark Defendants argue that ZCM has failed to comply with the relevant pleading standards. The Landmark Defendants also argue that ZCM cannot base its claim on the receipt of professional fees for services. In the alternative, the Landmark Defendants request that the Court certify its Rule 12(b)(6) unjust enrichment order to the Seventh Circuit pursuant to 28 U.S.C. § 1292(b). The Court address each of these issues in turn.

### A. Standing

In its December 7, 2004 decision in the related *Waldock* matter, the Court granted the defendants motion to dismiss the *Waldock* plaintiffs' state law claims for lack of standing because the plaintiffs had failed to allege either any injury that was unique to them or a breach of any duty owed independently to them. (R. 190-1 (03-C-5293); Ct.'s Dec. 7, 2004 Order at 12.) The Court's ruling in the *Waldock* matter, however, does not govern ZCM's allegations against the Landmark Defendants in this matter because the *Waldock* plaintiffs and ZCM are not identically situated. As discussed below, ZCM alleges injuries that are unique from those suffered by other investors. The Landmark Defendants have failed to show how the deficiencies

in the *Waldock* allegations are also present in ZCM's allegations.

Even if the Court's holding in the *Waldock* matter does not govern ZCM's allegations, the Landmark Defendants argue that ZCM still lacks standing to bring its unjust enrichment claim against the Landmark Defendants. Under either Illinois or Bahamian law, ZCM has standing to sue the Landmark Defendants if it suffered an injury that is unique, or separate and distinct from the injury suffered by M.J. Select. *See Twohy v. First Nat. Bank of Chicago,* 758 F.2d 1185, 1194 (7th Cir. 1985) (finding such an exception to the shareholder loss rule under Illinois law); *See Street v. Coombes,* 2004 WL 1808911, ¶ 56(3) (Ch. July 28, 2004) (applying the above exception under English common law that is recognized by Bahamian law).[11] ZCM alleges that the Landmark Defendants were unjustly enriched through the unjust possession of ZCM's property and assets. (SAC ¶¶ 290-91). ZCM further alleges that its rights in these property and assets were unique. Specifically, ZCM alleges that its status as creditor entitled it to priority in redemptions over all remaining shareholders (*c* ¶ 143), that ZCM required that the Reference Portfolio consist solely of Eligible Interests that had certain redemption availability (*Id.* ¶ 117), that ZCM would be recognized as "sole owner of 100% of the interests" in certain entities formerly held by Asset Allocation (*Id.* ¶ 120), and that ZCM had "sole, absolute and unconditional right, title and interest to the limited partnership interests in MJD and MJFA, and share interests in M.J. Select" (*Id.* ¶ 129). Accordingly, accepting these allegations as true, ZCM has sufficiently alleged that its investments were unique and has properly alleged standing.

---

[11]The Court further addresses Illinois and Bahamian law on this issue in addressing the Oceanic Defendant's motion for reconsideration the Court's ruling that ZCM has standing to sue them.

## B.    Pleading Requirements For Unjust Enrichment Claims

The Landmark Defendants argue that ZCM's unjust enrichment allegations must comply with the heightened pleading requirements of Rule 9(b), but in any event those allegations fail under either Rule 9(b) or 8(a).  In its August 2, 2004 Rule 12(b)(6) ruling the Court held that Rule 8(a) governs Defendants unjust enrichment claims[12] and that ZCM's allegations were sufficient under that standard.  (R. 72-1; Aug. 2, 2004 Order at 50.)  The Court declines to reconsider its previous ruling on those same issues.  ZCM has met its pleading requirements for its unjust enrichment claim against the Landmark Defendants.

## C.    Professional Fees And Services

The Landmark Defendants argue that ZCM cannot base its unjust enrichment claim on the receipt of professional fees and services.  The Landmark Defendants' argument relies on the tentative draft of the American Law Institute's new Restatement of Restitution and Unjust Enrichment (2001), providing that persons who receive property in exchange for value who have no notice of the alleged fraud are treated like bona fide purchasers and are not subject to restitution claims based on an unjust enrichment theory.  As discussed above in Section II of this Analysis, ZCM sufficiently alleges that the Landmark Defendants, or their agents, participated in the fraud on ZCM.  Accordingly, the Landmark Defendants' argument fails.

## D.    28 U.S.C. § 1292(b)

Interlocutory appeal is appropriate when (1) the appeal presents a question of law; (2) it

---

[12]To the extent ZCM's unjust enrichment claims rely on theories of fraud, its averments of fraud must comply with Rule 9(b).  Because ZCM's allegations related to securities fraud comply with Rule 9(b) as discussed in Sections II and III of this Analysis, ZCM has sufficiently pled unjust enrichment, even to the extent it bases such allegations on fraud.

is controlling; (3) it is contestable; (4) its resolution will expedite the resolution of the litigation, and (5) the petition to appeal is filed in the district court within a reasonable amount of time after entry of the order sought to be appealed. *Ahrenholz v. Board of Trustees of the Univ. of Illinois*, 219 F.3d 674, 675 (7th Cir. 2000). As discussed above, the Court denies the Landmark Defendants' motion to dismiss several of ZCM's claims, other than its unjust enrichment claim. Therefore, regardless of the outcome of any appeal to the Seventh Circuit on the Court's Rule 12(b)(6) ruling on unjust enrichment, claims against the Landmark Defendants will remain in this case. Accordingly, resolution of the unjust enrichment issue will not expedite the resolution of the litigation against the Landmark Defendants and the Court denies their request to certify this issue for appeal under § 1292(b).

## VII.    Breach of Fiduciary Duty (Count XIV)

ZCM's Count XIV is a breach of fiduciary duty claim against Millennium, Mahy, Caseley, Ambassador, Ledger, Landmark Monaco, and Landmark Bermuda. In its August 2, 2004 opinion, the Court dismissed ZMC's breach of fiduciary duty count against these Defendants because ZCM had failed to allege a fiduciary relationship between ZCM and any Landmark Defendant. As the Court set forth in its earlier opinion, "the touchstone of a fiduciary relationship is the presence of a significant degree of dominance and superiority of one party over another." *Lagen v. Balcor Co.,* 274 Ill.App.3d 11, 21, 653 N.E.2d 968, 975, 210 Ill.Dec. 773, 780 (Ill.App.2d Dist. 1995). In its Second Amended Complaint, ZCM alleges that ZCM Bermuda placed its trust and confidence in each of these Defendants. (SAC ¶ 326.) Specifically, ZCM Bermuda was forced to place its trust in GAD, Delta, and Millennium, which gained superiority and influence over ZCM Bermuda because GAD, Delta, and Millennium were

not required to, and in fact did not, disclose the underlying investments made by them on behalf of ZCM Bermuda and M.J. Select. (*Id.*) ZCM further alleges that M.J. Select's failure to disclose that Delta, Sonic, and Millennium were acting as its trading advisors constitutes special circumstances. (*Id.*) Delta, Sonic, and Millennium had un-checked dominance and superiority over ZCM Bermuda because they had unsupervised control over ZCM Bermuda's investment capital and ZCM Bermuda could not have even attempted to obtain any knowledge of, or control over, their activities on its behalf. (*Id.*) ZCM alleges that according to the above, ZCM Bermuda was completely dependent on GAD, Delta, and Millennium to make investment decisions with respect to ZCM Bermuda's investment capital based on their professional knowledge expertise. (*Id.*) Taken as true, these allegations are sufficient to state a claim that a fiduciary relationship existed between ZCM Bermuda and Millennium. Even though status as an investment advisor does not place one under a fiduciary duty to one's clients, when the advisor cultivates a relation of trust in which the client unquestionably relies on the advisor's advise and expertise, a fiduciary relationship may exist. *See Burdett v. Miller,* 957 F.2d 1375, 1381-82 (7th Cir. 1992) (affirming a district court's finding that investment advisor had a fiduciary duty to his client where client was ignorant about the advisor's area of expertise in which he was providing insight). Although ZCM's sophistication in investing is relevant, because ZCM did not have access to all of Millennium's information, ZCM's allegations of superiority and dominance on the part of GAD, Millennium, and Delta state a claim for a fiduciary duty.

Regarding Mahy, Caseley, Ambassador, and Ledger, ZCM alleges that they were directors of Millennium or GAD and exercised control over ZCM's investments and ordered and implemented the transfer of assets and funds pursuant to the operation of the Fund. (SAC ¶ 328.)

Under Illinois law, ZCM's allegations that the directors of Millennium or GAD participated in and authorized conduct giving rise to liability state a claim for personal liability on the part of the directors. *See Itofka, Inc. v. Hellhake,* 8 F.3d 1202, 1204 (7th Cir. 1993); *Independence Tube Corp. v. Copperweld Corp.,* 74 F.R.D. 462, 467 (N.D. Ill. 1977) ("[I]t is the law in Illinois ... that a corporate office or director may be held jointly and severally liable ... if he authorized or participated in the alleged wrongful act"). Accordingly, ZCM states a claim for breach of fiduciary duty against Millennium, Mahy, Caseley, Ambassador, and Ledger.

The Landmark Defendants also argue that ZCM lacks standing to bring its fiduciary duty claim because any fiduciary duty on the part of the Landmark Defendants was owed to M.J. Select, not ZCM. As discussed in Section VI.A. above, ZCM sufficiently alleges that it suffered a unique injury and therefore has adequately alleged standing under either Illinois or Bahamian law.

Although the title of Count XIV purports to bring the breach of fiduciary duty claim against Landmark Monaco and Landmark Bermuda, ZCM does not make any allegations related to those two Defendants. The Court dismisses ZCM's breach of fiduciary duty claim against Landmark Monaco and Landmark Bermuda.

## CONCLUSION

For the reasons discussed above, the Court grants the Landmark Defendants' Motion as to ZCM's Section 20(a) claim against Landmark Monaco with respect to GAD and ZCM's breach of fiduciary duty claim against Landmark Monaco and Landmark Bermuda and dismisses those claims with prejudice. The Court denies the Landmark Defendants' Motion on all other counts.

Dated: August 12, 2005

**ENTERED**

_____
**AMY J. ST. EVE**
**United States District Court Judge**