IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ZURICH CAPITAL MARKETS INC., et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| MICHAEL COGLIANESE, et al., | ) ) |
| Defendants. | ) |

No. 03 C 7960

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Defendants Oceanic Bank and Trust Limited ("Oceanic"), Kenneth Clowes ("Clowes"), and Terah Rahming ("Rahming") (collectively "the Oceanic Defendants") move to dismiss the Second Amended Complaint ("SAC") in its entirety as pled against them. For the reasons discussed below, the Court grants in part and denies in part the Oceanic Defendants' motion.

## BACKGROUND

### I.     Procedural Background

#### A.     No. 01-C-6125

On August 14, 2001, ZCM brought suit against Oceanic and several other defendants. ZCM brought claims against Oceanic for securities fraud under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and several other state and Bahamian law claims. That case was assigned to Judge Lindberg, who on March 25, 2002, dismissed with prejudice, pursuant to Rule 12(b)(6), ZCM's Section 10(b) claim against Oceanic. Judge Lindberg declined to exercise supplemental jurisdiction over ZCM's state and Bahamian law claims

against Oceanic and dismissed those claims without prejudice. That action was eventually transferred to the Court, who entered a notice of dismissal of all defendants on October 19, 2004.

**B.      No. 03-C-7960**

ZCM filed suit against the Oceanic Defendants, as well as other defendants, on November 7, 2003. ZCM brought claims against the Oceanic Defendants for securities fraud under Section 20(a) of the Exchange Act, the same state and Bahamian law claims that Judge Lindberg had previously dismissed without prejudice, as well as additional state and Bahamian law claims that it had not asserted against Oceanic in the first action.

On August 2, 2004, the Court granted in part and denied in part the Oceanic Defendants' motion to dismiss the Amended Complaint. The Court gave ZCM leave to replead the claims it dismissed. On November 22, 2004, ZCM filed the Second Amended Complaint in this case, alleging the following claims against the Oceanic Defendants: violation of Section 20(a) of the Exchange Act against all Oceanic Defendants (Count III); violation of the Illinois Securities Law of 1953, 815 Ill. Comp. Stat. 5/12-13 against Oceanic (Count VII); common law fraud under Illinois law against all Oceanic Defendants (Count VIII); conspiracy to defraud against all Oceanic Defendants (Count IX); unjust enrichment against all Oceanic Defendants (Count X); conversion against Oceanic (Count XI); breach of M.J. Select's Subscription Agreement and Administration, Registrar & Transfer Agency Agreement against Oceanic (Count XII); intentional interference with contract against Oceanic and Rahming (Count XIII); breach of fiduciary duty under the common law of Illinois against all Oceanic Defendants (Count XIV); breach of contract against Oceanic (Count XVI); violation of the Bahamian Mutual Funds Act, 1995 and regulations thereunder against all Oceanic Defendants (Count XVII); and breach of

common law duty of care under Bahamian law against all Oceanic Defendants (Count XVIII).

## II.  Factual Background

The Court provided a detailed discussion of ZCM's pleadings in the Amended Complaint in *Zurich Capital Markets v. Coglianese et al.,* 332 F.Supp.2d 1087 (N.D. Ill. 2004) and in *Zurch Capital Markets v. Coglianese et al.,* No. 03 C 7960, 2004 WL 2191596 (N.D. Ill. Sept. 23, 2004).  To the extent ZCM's pleadings in the Second Amended Complaint differ from the Amended Complaint, the Court will address those differences in its Analysis below.

## ANALYSIS

## I.  Legal Standard

The Oceanic Defendants move to dismiss the Second Amended Complaint pursuant to Rule 12(b)(6).  In its motion, the Oceanic Defendants request that the Court reconsider certain of its rulings from its September 23, 2004 opinion granting in part and denying in part the Oceanic Defendants' motion to dismiss ZCM's Amended Complaint.

### A.  Rule 12(b)(6)

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of a complaint, not the merits of the case.  *Triad. Assocs, Inc. v. Chicago Hous. Auth.,* 892 F.2d 583, 586 (7th Cir. 1989).  A court must accept as true all well-plead allegations of a complaint.  *Thompson v. Illinois Dep't of Prof'l Regulation,* 300 F.3d 750, 753 (7th Cir. 2002).  Courts construe ambiguities in favor of the plaintiff.  *Id.*

### B.  Motions For Reconsideration

A court may exercise its inherent authority to reconsider an interlocutory order because such orders are "subject to revision at any time before the entry of judgment adjudicating all the claims."  *See* Fed.R.Civ.P. 54(b); *see also Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.,*

460 U.S. 1, 12 (1983) ("every order short of a final decree is subject to reopening at the discretion of the district judge").  Accordingly, under Rule 54(b), a court may correct clear errors of fact or law in an interlocutory order.  *See Young v. Murphy*, 161 F.R.D. 61, 62 (N.D. Ill. 1995).  The Seventh Circuit has repeatedly cautioned that "motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Publishers Resource Inc. v. Walker-Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985) (quotation omitted); *see also In re Oil Spill by "Amoco Cadiz" Off Coast of France on March 16, 1978*, 794 F.Supp. 261, 267 (N.D. Ill. 1992) ("Motions to reconsider are not at the disposal of parties who want to 'rehash' old arguments").  Thus, it is clear that motions to reconsider are not appropriate vehicles to advance arguments already rejected by the Court or new legal theories not argued before the ruling.  *Schartle v. Motorola, Inc.*, No. 93 C 5508, 1995 WL 323281 at *1 (N.D. Ill. June 24, 1994).

## II.    Res Judicata

The Oceanic Defendants argue that res judicata bars certain of ZCM's claims against them.  Res judicata bars a second lawsuit in federal court when there exists: "(1) an identity of the causes of actions; (2) an identity of the parties or their privies; and (3) a final judgment on the merits." *Kratville v. Runyon,* 90 F.3d 195, 197-98 (7th Cir. 1996).  Res judicata "bars not only those issues which were actually decided in a prior suit, but also all issues which could have been raised in that action."  *Id.* (quoting *Brzostowski v. Laidlaw Waste Sys., Inc.,* 49 F.3d 337, 338 (7th Cir. 1995)).

### A.    Identity Of The Causes Of Actions

The Oceanic Defendants contend that res judicata bars ZCM's claims against them

brought in Count III (Section 20(a)), Count X (unjust enrichment), Count XII (breach of M.J. Select's subscription agreement), Count XIII (intentional interference with contract), Count XIV (breach of fiduciary duty), Count XVI (breach of contract), Count XVII (Bahamian Mutual Funds Act), and Count XVIII (breach of Bahamian common law duty of care).[1]

ZCM argues that res judicata does not preclude its newly pled state and Bahamian law claims because the district court in the first action would not have exercised supplemental jurisdiction over those claims if asked. ZCM cites Wright & Miller for the proposition that where a "federal court refuses to accept supplemental jurisdiction [over state claims] – or if [a court in a subsequent action] is convinced that the federal court would have refused to exercise supplemental jurisdiction if asked – there would be no preclusion in a subsequent state proceeding." Wright & Miller, Fed. Prac. & Proc. § 4412. Had ZCM brought its Section 20(a) claim along with its newly pled state and Bahamian law claims in the first action, however, the court could have maintained supplemental subject matter jurisdiction over those claims and likely would not have dismissed them. Further, here, ZCM pleads diversity jurisdiction pursuant to 28 U.S.C. § 1332, along with supplemental jurisdiction pursuant to 28 U.S.C. § 1367, as its basis for subject matter jurisdiction for its state and Bahamian law claims. If ZCM had brought its newly pled state and Bahamian law claims in the first action, pleading diversity jurisdiction, the court would have had jurisdiction over those claims even after dismissing ZCM's Section 10(b) claim. *See Shaver v. F.W. Woolworth Co.,* 840 F.2d 1361, 1365-66 (7th Cir. 1988)

---

[1]Accordingly, the Oceanic Defendants do not seek to dismiss on grounds of res judicata Count VII (Illinois Securities Laws); Count VIII (common law fraud); Count IX (conspiracy to defraud); and Count XI (conversion). Judge Lindberg expressly dismissed these claims without prejudice in granting Oceanic's Rule 12(b)(6) motion regarding ZCM's Section 10(b) claim.

(holding that if diversity jurisdiction exists for a plaintiff's state law claims then it must bring those claims in the same action along with its federal claims). Accordingly, under either scenario, the Court is not convinced that Judge Lindberg would have dismissed ZCM's newly pled state and Bahamian law claims had they been brought in the first action.

The Seventh Circuit addressed a situation similar to this in *Harper Plastics, Inc. v. Amoco Chems. Corp.*, 657 F.2d 939, 945 (7th Cir. 1981). The court initially noted that "res judicata operates to bar litigation of matters that should have been raised in the prior proceeding." *Id.* The plaintiff, in *Harper Plastics*, brought state claims in state court after it had lost on a federal claim in federal court. Because those claims shared the same operative facts, the Seventh Circuit held that the law required the plaintiff to bring all of those claims in the same action. The court explained that:

> The uncertainty over whether a trial judge would exercise pendent jurisdiction does not justify permitting the institution of a multiplicity of proceedings which may have the effect of harassing defendants and wasting judicial resources. If appellant entertained any doubts at the pleading stage, they should have been resolved in favor of joinder.

*Id.* at 946. Indeed, had ZCM brought its newly pled state and Bahamian law claims in the initial action, one of three situations could have occurred. First, had ZCM pled diversity jurisdiction as it did here, the first district court could have maintained jurisdiction over these claims and resolved them in one action. Second, even absent diversity jurisdiction, had ZCM brought its Section 20(a) claim as it did here, the Court would have had supplemental jurisdiction over the newly pled state and Bahamian law claims even after it dismissed ZCM's Section 10(b) claim. And, third, if the district court had chosen not to exercise supplemental jurisdiction over the newly pled state and Bahamian law claims, it would have dismissed those claims without

prejudice, and therefore expressly reserved ZCM's right to bring those claims in the second action. Rather than allow for any of these three scenarios to occur, ZCM chose not to plead its newly pled state and Bahamian law claims in the first action. This is exactly the situation that res judicata is designed to prevent. *Id.* at 945.

ZCM also argues that res judicata does not preclude its newly pled claims because they could not have brought those claims in the original action. Specifically, ZCM contends that it zealously pursued discovery from Oceanic but was prevented from uncovering the factual basis for its new claims until the deposition of Terah Rahming on January 10, 2002. ZCM relies on the Seventh Circuit's decisions in *Doe v. Allied-Signal, Inc.,* 985 F.2d 908, 913-14 (7th Cir. 1993). In *Allied-Signal,* however, the court first found that there was no identity of the causes of action at issue. Only after finding that the causes of action derived from distinct operative facts did the court go on to find that the plaintiff could not have brought the second cause of action in the first suit. The *Allied-Signal* court relies heavily on the Seventh Circuit's earlier decision in *Himel v. Continental Ill. Nat'l Bank and Trust Co. of Chicago,* 596 F.2d 205. Just like in *Allied-Signal,* in *Himel,* the Seventh Circuit first found that the two causes of action at issue derived from separate sets of operative facts, and then found that the plaintiff could not have brought the second claims in the first action. Unlike in *Allied-Signal* and *Himel*, here, ZCM concedes that the newly pled claims derive from the same set of operative facts as the claims in the first action, and therefore identity of causes of action exists. Further, ZCM concedes that it discovered the factual basis for its newly pled claims while the first action was still pending. In fact, as the Oceanic Defendants point out, ZCM learned of the basis for its newly pled claims at the Rahming deposition on January 10, 2002, which was shortly after ZCM filed its Second

Amended Complaint in the first action and prior to Judge Lindberg dismissing ZCM's Section 10(b) claim against the Oceanic Defendants. Rather than add its claims to the first action after learning of their factual basis, ZCM sat on its claims and waited to bring those claims in a second suit.[2] This is the situation that res judicata is designed to prevent. *See Allied Signal,* 985 F.2d at 913 ("The inquiry, focusing on the facts of a situation, is intended to discover whether the plaintiff could have raised the issue in the first suit") (citing *Federated Dept. Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981)).[3]

In a situation scenario, the Seventh Circuit rejected a plaintiff's argument that res judicata does not bar "claims based on prejudgment facts which were unknown to the plaintiffs when they filed." *Car Carriers, Inc. v. Ford Motor Co.,* 789 F.2d 589, 596 (7th Cir. 1986). The

---

[2]In its Supplemental Memorandum in Opposition, ZCM for the first time argues that even after discovering the factual basis for its newly pled claims during the initial action, it could not have amended its pleadings to add those claims because Judge Lindberg had not granted ZCM leave to do so. ZCM failed to raise this argument in argument in its opposition brief and therefore waived this argument. *See FTC v. World Travel Vacation Brokers, Inc.,* 861 F.2d 1020, 1025-26 (7th Cir. 1988) ("The failure to raise a matter in the opening brief is not cured by addressing the issue in the reply brief.") Even absent such waiver, ZCM's argument still fails. Rule 15 permits a party to seek leave of court to amend its pleadings and provides that the court should freely grant such leave when justice requires. FED.R.CIV.P. 15(a). Given the fact that ZCM admits to learning the factual basis for its newly pled claims over two years prior to the Court entering final judgment in the first action, there is no indication in the pleadings that Judge Lindberg would not have granted leave.

[3]ZCM also relies on *EEOC v. City of Chicago,* No. 94 C 1086, 1994 WL 457229, at *2 (N.D. Ill. Aug. 19, 1994) and *McCarty v. First of Ga. Ins. Co.,* 713 F.2d 609, 612 (10th Cir. 1983). These cases are also distinguishable. In *EEOC,* the language that ZCM relies on is merely dicta. The court in that case ultimately analyzed the issue under a collateral estoppel theory, and not under a claim preclusion, or res judicata, theory. *EEOC,* 1994 WL 457229, at *2. In *McCarty,* the court found that the plaintiff pled sufficient facts to support its theory that the company wrongfully concealed facts and therefore prevented the plaintiff from asserting its newly pled claims in the first action. Here, ZCM has not pled such facts, and actually admits in its pleadings and briefing that it learned of the factual basis for its new claims during the early stages of the first action. (SAC ¶¶ 13-14.)

court found that all of the plaintiff's claims arose from the same core of operative facts. *Id.*

Accordingly, because "all claims arose from the same factual context and since the appellants

had sufficient knowledge to sue on one claim, they also had sufficient knowledge to sue on the

rest of their claims." *Id.* The court noted that it presumed that the plaintiff had done his or her

"legal and factual" homework before filing the initial action. Here, even absent such a

presumption, ZCM concedes that it knew of the basis for its newly pled claims while the first

action was pending, and well over two years prior to the Court entering final judgment in that

action. Accordingly, under the Seventh Circuit's analysis in *Car Carriers*, there is no merit to

ZCM's argument that res judicata does not bar its newly pled claims because it learned of those

claims after it filed the first action.[4]

### B. Identity Of The Parties

ZCM concedes that there is identity of the parties between this suit and the first action.[5]

---

[4]ZCM also argues that the Court already addressed this issue in deciding that it could not
rule as a matter of law that ZCM's Section 20(a) claims was barred by the statute of limitations
because the Court could not determine whether ZCM was on inquiry notice of its claim more
than two years prior to filing the complaint in this action. ZCM's argument fails. Whether ZCM
was on inquiry notice two years prior to filing its complain in this action is an entirely separate
inquiry from that relevant for the Oceanic Defendant's res judicata defense – whether ZCM
could have brought its newly pled claims in the first action.

[5]In its Supplemental Memorandum of Law in Opposition to the Oceanic Defendants'
motion to dismiss, ZCM for the first time argues that Rahming and Clowes are not in privity
with Oceanic. Even had ZCM not waived this argument by not raising it in its opposition brief,
*see World Travel Vacation Brokers, Inc.,* 861 F.2d at 1025-26, this argument fails. First, ZCM
argues that it could not have known of its claims against Rahling and Clowes until after it
received its document production from Oceanic and deposed Rahming. As the Court discusses
in Section II.A., because ZCM concedes that it knew of its claims against Oceanic and Rahming
during the course of the first action, it should have brought its newly pled claims in that suit.
Second, ZCM argues that because Rahming and Clowes are also directors of M.J. Select, "the
privity rule would not apply." The Oceanic Defendants cite no legal support for, and fail to
sufficiently develop this argument. As the Court discussed above, Rahming and Clowes are in
privity with Oceanic due to their capacities as officers and employees of Oceanic. The fact that

The plaintiffs in the first lawsuit are the same plaintiffs in this action. (Oceanic's Mot. Dismiss SAC, Ex. E.) Further, Oceanic was a defendant in both suits. (*Id.*) Although Clowes and Rahming were not defendants in the first action, the Oceanic Defendants contend, and ZCM concedes, that Clowes and Rahming are in privity with Oceanic. *See Henry v. Farmer City State Bank,* 808 F.2d 1228, 1235, n.6 (7th Cir. 1986) (holding that even though a bank was the only actual party in the first action, the other defendants in the second action were in privity with the bank for purposes of res judicata because they were directors, officers, employees, and attorneys of the bank); *Janusz v. Fasco Indus., Inc.,* No. 97 C 7976, 1999 WL 162793, *5 (N.D. Ill. Mar. 12, 1999) ("The Seventh Circuit has found that for res judicata purposes, a corporation, its officers, directors, and employees, are privies ).

**C.     A Final Judgment On The Merits**

ZCM argues that the Oceanic Defendants' res judicata argument violates Rule 12(g) because they could have raised it in their motion to dismiss ZCM's Amended Complaint, which they filed on February 11, 2004. According to ZCM, the Oceanic Defendants' res judicata argument is based "primarily" on the March 25, 2002 order from the original district court, granting Oceanic's motion to dismiss. Federal Rule of Civil Procedure 12(g) provides that "[i]f a party makes a motion under this rule but omits there from any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated." Fed.R.Civ.P. 12(g). Therefore, "Rule 12(g) generally precludes a defendant from bringing successive motions to dismiss raising

_____

they have additional responsibilities does not change the fact that privity exists.

arguments that the defendant failed to raise at the first available opportunity." *See 766347*

*Ontario Ltd. v. Zurich Cap'l Marets, Inc.,* 274 F.Supp.2d 926, 930 (N.D. Ill. 2003).[6] Also, ZCM

separately argues that the Oceanic Defendants thereby waived their res judicata argument.

In response, the Oceanic Defendants contend that they could not have raised their res

judicata argument in their first motion to dismiss because the Court did not enter a final

judgment in the first action until October 20, 2004, which was after they filed their first motion

to dismiss.  Federal Rule of Civil Procedure 54(b) provides that in the absence of the court

directing entry of final judgment as to fewer than all parties:

> any order or other form of decision, [] which adjudicates fewer than all the claims
> or the rights and liabilities of fewer than all the parties shall not terminate the
> action as to any of the claims or parties, and the order or other form of decision is
> subject to revision at any time before the entry of judgment adjudicating all the
> claims and the rights and liabilities of the parties.

FED.R.CIV.P. 54(b).  ZCM does not contend that there was a final judgment on the merits prior to

October 20, 2004.  It is clear that the Court did not enter a final judgmnet prior to that time.

Therefore, pursuant to Rule 54(b) there was not a final judgment on ZCM's claims against

Oceanic until October 20, 2004.  Because res judicata requires a final judgment, *Kratville,* 90

F.3d at 197-98, the Oceanic Defendants' res judicata argument was not ripe at the time they filed

their first motion to dismiss.  Accordingly, Rule 12(g) does not bar the Oceanic Defendants from

arguing res judicata in this motion, nor have the Oceanic Defendants waived that argument.

Only in its Supplemental Memorandum of Law in Opposition does ZCM argue that the

Court's order of October 20, 2004 was not a final judgment on the merits.  Because ZCM did not

---

[6]*See Albany Ins. Co. v. Almacenadora Somex,* 5 F.3d 907, 909 (5th Cir. 1993); *see also*
*Wright & Miller* §1388 ("The filing of an amended complaint will not revive the right to present
by motion defenses that were available but were not asserted in timely fashion prior to
amendment").

raise this argument in its opposition brief, it has waived this argument. *See World Travel Vacation Brokers, Inc.,* 861 F.2d at 1025-26. Even absent such a waiver, ZCM's argument fails. The Court's October 20, 2004 order plainly states that it terminates the case, with the exeption of ZCM's claims against M.J. Select. (R.472-1; (01-C-6250) Ct.'s Oct. 20, 2004 Order.) *See Tifft v. Commonwealth Edison Co.,* 366 F.3d 513, 516 n.3 (7th Cir. 2004) (noting that the issue of when a judgment is final is a practical one). Accordingly, the Court's October 20, 2004 order was a final judgment on the merits on ZCM's claims against Oceanic in the first action.

### D.    Whether Equity Prohibits Application Of Res Judicata

In its Supplemental Memorandum in Opposition, ZCM also raises for the first time its argument that equity prohibits the application of res judicata, even if the Oceanic Defendants have proven each of the elements of res judicata. Like its other arguments raised in its supplemental briefing regarding res judicata, ZCM waived this argument by not raising it in its opposition brief. *See World Travel Vacation Brokers, Inc.,* 861 F.2d at 1025-26. Even absent this waiver, ZCM's argument fails. Both the Seventh Circuit and Supreme Court have rejected policy arguments against applying res judicata to a particular fact situation when a defendant has proven the three elements of res judicata. *See Federated Dept. Stores, Inc. v. Moitie,* 452 U.S. 394, 401, 101 S.Ct. 2424, 2429, 69 L.Ed.2d 103 (1981) ("[the] doctrine of res judicata is not a mere mater of practice and procedure inherited from a more technical time than ours, it is a rule of fundamental and substantial justice, of public policy and of private peace, which should be cordially regarded and enforced by the courts") (internal quotations omitted); *Shaver,* 840 F.2d at 1364-64 (refusing to "depart from traditional res judicata doctrine when and if the requirements of the doctrine are met"). Accordingly, because the Oceanic Defendants have met

each of its elements, res judicata bars ZCM's newly pled claims in this action.

## III. The Illinois Securities Laws Of 1953 (Count VII)

Count VII is a claim against the Oceanic Defendants for violation of the Illinois Securities Laws of 1953 ("the Act"). Under Section 13 of the Act, only "the issuer, controlling person, underwriter, dealer or other person by or on behalf of whom the sale was made," is subject to liability. 815 ILCS 5/13(A)(1). The Act defines a "controlling person" as "any person offering or selling a security, or group of persons acting in concert in the offer or sale of a security, owning beneficially...either (i) 25% or more of the outstanding voting securities of the issuer..., or (ii) such number of outstanding securities of the issuer of such securities as would enable such person, or group of persons, to elect a majority of the board of directors..." 815 ILCS 5/2.4. The Oceanic Defendants argue that ZCM has failed to allege facts sufficient to establish that they were subject to liability under the Act as either a controlling person or otherwise. Specifically, the Oceanic Defendants contend that ZCM does not plead "straightforwardly" that Oceanic owned shares in M.J. Select. Rather, the Oceanic Defendants argue, that ZCM merely alleges that because Oceanic provided the directors for M.J. Select, it must have owned enough outstanding M.J. Select securities to enable it to elect the directors.

The Second Amended Complaint provides that "Oceanic beneficially owned such number of outstanding M.J. Select securities that enabled it to elect a majority (in fact, the entirety) of M.J. Select's board of directors." (SAC ¶ 257). While the Oceanic Defendants may dispute ZCM's factual basis for making this allegation, the accuracy of that basis is irrelevant for purposes of a Rule 12(b)(6) motion. Accepting ZCM's pleadings as true, as Rule 12(b)(6) requires the Court to do, ZCM has sufficiently alleged that Oceanic was a "controlling person"

for purposes of a violation of the Illinois Securities Law of 1953.

## IV.    Fraud (Count VIII)

Count VIII is a claim against all Oceanic Defendants.  The Court previously held that Count VIII satisfied Rule 9(b)'s pleading requirements.  (R. 34-1; Ct.'s Aug. 2 Order at 21.)  The Oceanic Defendants argue that ZCM has failed to allege each of the elements of their fraud claim.  Under Illinois law, the elements of fraud are: (1) a false statement of material fact; (2) knowledge or belief of the falsity by the party making the statement; (3) intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statements; and (5) damage to the other party resulting from such reliance.  *WTM, Inc. v. Henneck,* 125 F.Supp.2d 864, 869 (N.D. Ill. 2000).  In their motion to dismiss the Amended Complaint, the Oceanic Defendants did not argue that ZCM had failed to sufficiently allege intent or damages.  Under Rule 12(g), the Oceanic Defendants cannot raise those arguments in their second motion to dismiss.  In addressing the other elements of ZCM's fraud claim that the Court previously found ZCM had properly pled, the Oceanic Defendants merely restate the same arguments that the Court previously rejected.  The Court declines to reconsider its prior ruling that ZCM's fraud allegations meet the pleading requirements of Rule 9(b).

## V.    Conspiracy To Defraud (Count IX)

Count IX is a claim for conspiracy to defraud against all Oceanic Defendants.  In order to state a claim for conspiracy to defraud in Illinois, ZCM must allege "(1) a conspiracy; (2) an overt act of fraud in furtherance of the conspiracy; and (3) damages to the plaintiff as a result of the fraud."  *Bosak v. McDonogh,* 192 Ill.App.3d 799, 803, 139 Ill.Dec. 917, 920, 549 N.E.2d 643, 646 (1989).  In its September 23, 2004 opinion, the Court found that ZCM's allegations did

not meet Rule 9(b)'s particularity requirements and dismissed this claim without prejudice.

In its Second Amended Complaint, ZCM sufficiently alleges its conspiracy to defraud claim. As discussed above, ZCM has met the pleading requirements of Rule 9(b) for its fraud allegations. Further, ZCM has sufficiently alleged an agreement. Specifically, ZCM alleges that "each of the Defendants knowingly and intentionally entered into an agreement and conspired among themselves and with Southridge Entities and Martin James, to defraud Plaintiffs." (SAC ¶ 274.) ZCM further pleads numerous specific facts demonstrating the Oceanic Defendants' conduct in furtherance of that conspiracy. (SAC ¶¶ 237 - 146, 274 - 288.) Such facts circumstantially evidence the existence of the alleged agreement. *State Farm Mut. Auto. Ins. Co. v. Abrams,* No. 96 C 6365, 2000 WL 574466, at *20 (N.D. Ill. May 11, 2000) ("Because a conspiracy by nature is secretive, direct evidence is rarely available, and therefore a plaintiff is entitled to prove a conspiracy by circumstantial evidence") (citing *United States v. Nesbitt,* 852 F.2d 1502, 1510 (7th Cir. 1988)). Accordingly, the Oceanic Defendants' motion to dismiss ZCM's conspiracy to defraud allegations fails.

## VI.    Conversion (XI)

Count XI is a claim for conversion against Oceanic. ZCM identifies specific amounts of funds that it contends Oceanic converted. (SAC ¶ 295.) ZCM alleges that these funds "at all times as of June 30, 2001, belonged to Plaintiff ZCM Bermuda." (*Id.* ¶ 296.) Further, ZCM alleges that "ZCM Bermuda had the absolute and unconditional right to immediate possession of these proceeds" and that "[n]o one else had a superior right to these funds." (*Id.*) Additionally, ZCM alleges that Oceanic converted this property for its own use. (*Id.* ¶¶ 293, 298.) Taking these allegations as true, as Rule 12(b)(6) requires, these allegations are sufficient to state a

claim for conversion under Illinois law.  *See National Union Fire Ins. Co. of Pittsburgh v. Wilkins-Lowe & Co., Inc.,* 29 F.3d 337 (7th Cir. 1994) (in order for money to be the subject of conversion "[i]t must be shown that he money claimed, or its equivalent, at all times belonged to the plaintiff and that the defendant converted it to his own use") (quoting *In re Thebus,* 108 Ill.2d 255, 91 Ill.Dec. 623, 628-29, 483 N.E.2d 1258, 1260-61 (1985).

## VII.    ZCM's Unjust Enrichment And Breach Of Fiduciary Duty Claim

Count X is a claim for unjust enrichment against all Oceanic Defendants and Count XIV is a claim for breach of fiduciary duty against all Oceanic Defendants.  As discussed in Section II above, ZCM did not bring these claims against Oceanic in the first action and thus Judge Lindberg did not dismiss these claims without prejudice.  Therefore, res judicata bars ZCM from brining these claims against the Oceanic Defendants in this action.  Nonetheless, with respect to these two claims, the parties extensively argued whether these claims belonged to M.J. Select and not ZCM, such that ZCM lacked standing to bring these claims.  Because this issue impacts other claims in this case, and the Court has referenced its discussion of this issue in ruling on other Defendants' motions to dismiss, the Court addresses this issue here.

### A.    The Application of Foreign Law

Defendants contend that Bahamian law governs who may bring a case on behalf of M.J. Select against Oceanic because both entities are Bahamian corporations.  The Court, applying Illinois law, previously held that ZCM's alleged harm was not derivative of the harm suffered by M.J. Select, but was a unique claim and therefore justiciable.  *Zurich,* 332 F.Supp.2d at 1116. The Court will examine whether ZCM's claims would survive a motion to dismiss based upon Bahamian law rather than Illinois law.  Although "under international law, a state may not

exercise authority to enforce law that it has no jurisdiction to prescribe, ” Restatement (Third) of

Foreign Relations Law § 431 (1987) (comment a), a “judgment of a court awarding or denying

damages in a civil action would generally not be seen as enforcement.”  Restatement (Third) of

Foreign Relations Law § 431 (comment b).  Further, the Federal Rules authorize the Court to

determine an issue concerning the law of a foreign country.  FED.R.CIV.P. 44.1; *See, e.g.,*

*Spinozzi v. ITI Sheraton Corp.,* 174 F.3d 842 (7th Cir. 1999) (Mexican law governed substantive

issues); *Cummings v. Club Mediterranee, S.A.*, No. 01 C 6455, 2003 WL 22462625 (N.D. Ill.

Oct. 29, 2003) (court applied Bahamian law on all substantive issues).

> Indeed, Rule 44.1 provides that:

>> [a] party who intends to raise an issue concerning the law of a foreign country
>> shall give notice by pleadings or other reasonable written notice.  The court, in
>> determining foreign law, may consider any relevant material or source, including
>> testimony, whether or not submitted by a party or admissible under the Federal
>> Rules of Evidence.  The court’s determination shall be treated as a ruling on the
>> question of law.

FED.R.CIV.P. 44.1.  This rule contemplates that federal courts can entertain questions of foreign

law.  The Court has great discretion in choosing source materials when the application of foreign

law is necessary.  *See Pittway Corp. v. United States*, 88 F.3d 501, 504 (7th Cir. 1996).  The

Court is free to disregard expert affidavits under Rule 44.1.  *Riffe v.Magushi,* 859 F.Supp. 220,

223 (S.D.W.Va. 1994) (*citing Chantier Naval Voisin v. M/Y Daybreak,* 677 F.Supp. 1563, 1567

(S.D.Fla. 1988) ( holding that a court is not bound by evidence submitted by party’s expert on

foreign law).  In fact, a court may ignore even uncontradicted conclusions of an expert witness

and reach its own decision based upon an independent examination of foreign legal authorities.

*See Curtis v. Beatrice Foods Co.*, 481 F. Supp. 1275, 1285 (S.D.N.Y. 1980).

> The Oceanic Defendants contend that the Court should apply the Bahamian rule against

reflective loss to the case rather than the Illinois shareholder standing rule. Because the Oceanic Defendants have claimed in their pleadings that Bahamian law applies and have satisfied Rule 44.1, the Court will consider the Bahamian rule against reflective loss. "Before entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states." *Barron v. Ford Motor Co. of Canada*, 965 F.2d 195, 197 (7th Cir. 1992) (citing *International Administrators, Inc. v. Life Ins. Co.*, 753 F.2d 1373, 1376 (7th Cir. 1981). If the Court finds no conflict between the Illinois shareholder standing provision and the Bahamian rule against reflective loss, the laws of the forum state will apply. *Id.* Thus, the Court will examine the Illinois shareholder loss rule, the Bahamian rule against reflective loss, and then choose the appropriate law to govern this issue at the 12(b)(6) stage.

### B.       The Illinois Shareholder Loss Rule

The Illinois shareholder loss rule is a "longstanding equitable restriction that generally prohibits shareholders from initiating actions to enforce the rights of the corporation unless the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment." *Zurich,* 332 F.2d at 1116 (citing *Cashman v. Coopers and Lybrand*, 251 Ill.App.3d 730, 733, 623 N.E.2d 907, 909, 191 Ill.Dec. 317, 319 (1993)). Illinois recognizes two exceptions to the shareholder standing rule. First, if the shareholder's injuries are distinct from those of other shareholders, the shareholder has standing to sue. *See Twohy v. First Nat. Bank of Chicago*, 758 F.2d 1185, 1194 (7th Cir. 1985). The mere diminution in the value of corporate assets, however, does not suffice to give the shareholder standing. *Flynn v. Merrick,* 881 F.2d 446, 449 (7th Cir. 1985). Second, if the defendant breached a duty owed directly to the

shareholder, the shareholder can sue the defendant. *Mann v. Kempter Fin. Cos.*, 247 Ill.App.3d 966, 973, 187 Ill.Dec. 726, 618 N.E.2d 317,322 (1993). *See also Zokoych v. Spalding*, 36 Ill.App.3d 654, 663, 344 N.E.2d 805 (1976). Here, the Court already has held that based upon the allegations in ZCM's amended complaint, the harm suffered by ZCM was unique and not derivative of the harm suffered by M.J. Select and its other shareholders. *Zurich,* 332 F.Supp. at 1116.

### C.     The Bahamian Rule Against Reflective Loss

The Oceanic Defendants contend that the Court should apply Bahamian law because the Bahamian rule against reflective loss is broader than the Illinois shareholder standing provision. ZCM argues that Bahamian law does not differ from Illinois law with respect to shareholder standing. Both sides have presented expert affidavits interpreting the Bahamian rule against reflective loss. (*See* R. 122-3; Supplemental Mem. In Supp. Of Oceanic's Mot. to Dismiss Based on the Bahamian No Reflective Loss Rule at Ex. D.; and R. 127-2; Supplemental Mem. Of Law In Opp'n To Oceanic, Kenneth Clowes, and Terah Rahming's Mot. To Dismiss The Zurich Pl.'s Second Am. Compl. at Ex. A.). The Court, however, is free to conduct its own research into the Bahamian rule against reflective loss, rather than simply relying on the expert affidavits. *Curtis,* 481 F.Supp. at 1285.

First, Bahamian law uses English common law as authoritative law. (R. 122-3; Supplemental Mem. In Supp. Of Oceanic's Mot. to Dismiss Based on the Bahamian No Reflective Loss Rule at Ex. D and M.) Both ZCM's and the Oceanic Defendants' experts agree on this point. *Id.* English common law forbids shareholders or members of a company from suing a company for losses that reflect the losses suffered by the company. *Collins Stewart v.*

*The Financial Times, Ltd.,* 2005 E.M.L.R. 5, 84 (QB 2004) (*citing Prudential Assurance Co. Ltd. v. Newman Indus. Ltd.,* [1982] 1 Ch. 204, 222-23 (C.A. 1982)) (holding that a shareholder cannot recover a sum equal to the diminution in the market value of his shares, or equal to the likely reduction in dividend). In *Prudential*, the court provided the example that:

> if directors convene a meeting on the basis of a fraudulent circular, a shareholder will have a right of action to recover any loss which he has been personally caused in consequence of the fraudulent circular; this might include the expense of attending the meeting. But what he cannot do is to recover damages merely because the company in which he is interested has suffered damage. He cannot recover a sum equal to the diminution in the market value of his shares, or equal to the likely diminution in dividend, because such a "loss" is merely a reflection of the loss suffered by the company.

[1982] 1 Ch. at 222-23. The English court has set forth exceptions to this rule against reflective loss. *See generally Gardner v. Parker*, 2004 WL 1174334, [2004] 2 B.C.L.C. 554 ¶ 33 (outlining the rule against reflective loss and its exception). First, if a shareholder suffers a loss separate and distinct from that suffered by the company, the shareholder may bring an action to recover the loss that is unique from the loss suffered by other shareholders. *See Street v. Coombes*, 2004 WL 1808911 ¶56(3) (Ch. July 28, 2004) (*citing Johnson v. Gore Wood & Co.*, [2002] 2 A.C. 1, 35-36 (H.L. 2000)). The English court recognizes that when considering the rule against reflective loss it must be "astute to ensure that it does not arbitrarily deny fair compensation to a party who has in fact suffered loss." *Giles v. Rhind*, [2003] Ch. 618, 620 (C.A. 2002). Second, a shareholder may sue to recover a loss that a company suffers only if the company has no cause of action to recover that loss. *Diamantis Diamantides v. J.P. Morgan Chase Bank & Others ,* 2005 WL 46710 ¶25 (QB Feb. 25, 2005) (*citing Johnson*, [2002] 2 A.C. at 35). If an aggrieved shareholder believes that a company has not fully considered the shareholder's interest, the English system provides the shareholder with the remedy of suing in

the Companies Court, or the liquidators for negligence. *Giles,* [2003] Ch. at 631 (quoting *Johnson*, [2002] 2 A.C. at 66). Furthermore, if a company could recover its losses from a third party and chooses not to pursue the claim, the company's decision not to pursue the claim causes the loss to the shareholder, not the defendant's wrongdoing. *Id.* Therefore, when a company suffers a loss caused by a breach of duty, only the company may sue to recover the loss. *Id.* It makes no difference whether the company has declined or failed to make good its loss. *Id.*

The Oceanic Defendants claim that the exceptions to the rule against reflective loss do not apply in this case. First, Defendants argue that ZCM's shares were of the same net asset value as all other investors, regardless of whether ZCM overpaid for its shares. Furthermore, the Oceanic Defendants contend that ZCM lacks standing because M.J. Select's Official Liquidators are pursuing causes of action against Oceanic in the Bahamas. (R. 122-3; Supplemental Mem. In Supp. Of Oceanic's Mot. to Dismiss Based on the Bahamian No Reflective Loss Rule at Ex. A.)

Though the Oceanic Defendants are correct that ZCM's claims do not fall under the second exception to the rule against reflective loss, the Court finds, as it did when considering ZCM's claims under the Illinois shareholder loss rule, that ZCM suffered an injury unique from that of other shareholders. In its August 2, 2004 opinion, the Court held that based upon ZCM's allegations, ZCM's harm was unique and not derivative of the harm suffered by M.J. Select and its other shareholders. *Zurich,* 332 F.Supp.2d at 1116. ZCM alleges that its investment in M.J. Select was merely incidental to the call option transactions that provided capital to leverage investments in M.J. Select. *Id.* Furthermore, in its September 23, 2004 opinion, the Court denied the Oceanic Defendants' motion to dismiss for lack of standing for the reasons set forth in

the August 2, 2004 opinion.  *Zurich* 2004 WL 2191596 at *12.  The Court has already found that ZCM's allegations show a loss separate and distinct from the losses of the company.  For this reason, under Bahamian law, the Court finds that the rule against reflective loss does not apply because, based upon the pleadings, ZCM has suffered an injury unique from the losses suffered by other shareholders.  The liquidation proceeding in the Bahamas does not change this analysis – the exception still applies.

     **D.**      **Choice of Law**

     As discussed earlier in this opinion, if the Court finds no conflict between the applicable laws of two different states, the law of the forum state applies.  *Barron,* 965 F.2d at 197.  Under both the laws of Illinois and the laws of the Bahamas, based upon the allegations in its pleadings, ZCM has suffered a claim that is distinct from the injuries suffered by other shareholders.  Because the use of Bahamian law on this issue would not change the outcome, at least at the 12(b)(6) stage where the Court accepts ZCM's pleadings as true, the Court applies the Illinois shareholder loss rule and Defendants' argument fails.

**CONCLUSION**

For the reasons discussed above, res judicata bars ZCM's Count III (Section 20(a)),
Count X (unjust enrichment), Count XII (breach of M.J. Select's subscription agreement), Count
XIII (intentional interference with contract), Count XIV (breach of fiduciary duty), Count XVI
(breach of contract), Count XVII (Bahamian Mutual Funds Act), and Count XVIII (breach of
Bahamian common law duty of care), and the Court grants the Oceanic Defendants motion to
dismiss those claims.  The Court denies the Oceanic Defendants' motion to dismiss ZCM's
Count VII (Illinois Securities Laws), Count VIII (common law fraud), Count IX (conspiracy to
defraud), and Count XI (conversion).

Dated: August 22, 2005

**ENTERED**

**AMY J. ST. EVE**
**United States District Court Judge**